UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,          Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]      (Jointly Administered with
                                         Case No. 9:19-bk-1948)
          Debtors.                       Chapter 11 Cases

_____/

**MOTION PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE
FOR AN EXTENSION OF EXCLUSIVE RIGHT TO FILE A PLAN OF
REORGANIZATION AND TO SOLICIT ACCEPTANCES THERETO**

**(The Debtors respectfully request that the Court schedule the hearing on this Motion
concurrently with the preliminary hearing on the *Renewed Motion to Dismiss Chapter 11
Cases* [ECF No. 161], currently scheduled for July 24, 2019 at 10:30 a.m. in Fort Myers)**

Just One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH"
and together with JOMR, collectively, the "Debtors"), by and through their undersigned counsel,
hereby file this motion (the "Motion"), pursuant to section 1121(d) of title 11 of the United
States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), seeking the entry of an order
granting the Debtors a ninety (90) day extension of their exclusive right to file a plan of
reorganization and a ninety (90) day extension of their exclusive right to solicit acceptances
thereof, thereby: (a) extending the time during which the Debtors shall have the exclusive right
to file a plan of reorganization from July 5, 2019, to and including October 3, 2019; and (b)
extending the time during which the Debtors shall have the exclusive right to solicit acceptances
thereto for such plan from September 3, 2019, to and including December 2, 2019.  In support of
this Motion, the Debtors respectfully represent as follows:

---

[1]    The last four digits of each Debtor's federal tax identification number are Just One More Restaurant Corp.
       (5070) and Just One More Holding Corp. (6081).  The address of the Debtors is 8955 Fontana Del Sol Way, 2nd
       Floor, Naples, FL 34109.

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On March 7, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are managing their affairs as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

6.      On April 16, 2019, the Court entered an order authorizing the Debtors to appoint Gerard A. McHale, Jr. as Chief Restructuring Officer (the "CRO") [ECF No. 139].

7.      On May 13, 2019, the United States Trustee filed a notice with the Court indicating that the United States Trustee will not appoint a committee of unsecured creditors.

8.      For a detailed description of the Debtors and the reasons for the filing of these chapter 11 cases, the Debtors respectfully refer the Court and parties in interest to the *Declaration of Chief Restructuring Officer, Gerard A. McHale, in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 7] (the "First Day Declaration") filed on the Petition Date which the Debtors incorporate herein by reference.

9151955-14

## CRO'S PROPOSED GLOBAL SETTLEMENT

9.     On June 28, 2019, at 10:58 a.m. (Prevailing Eastern Time), the below named counsel, on behalf of the CRO, concurrently sent separate emails to counsel representing Gary Ganzi, Claire Breen, and the Estate of Charles Cook (collectively, the "Plaintiff Minority Shareholders"), and counsel representing Walter J. Ganzi and Bruce Bozzi, Sr. (collectively, the "Defendant Majority Shareholders").[2]

10.     These concurrently sent emails contained the exact same proposed global settlement of all disputes between and among the Debtors, the Plaintiff Minority Shareholders, and the Defendant Majority Shareholders (the "Global Settlement").

11.     The Global Settlement was developed independently by the CRO.

12.     The Global Settlement was proposed by the CRO due to the inability of the Plaintiff Minority Shareholders and the Defendant Majority Shareholders to negotiate amongst themselves a consensual and rational, global settlement framework of the Derivative Action in order to, *inter alia,* preserve the going concern value of the Palm restaurant group.

13.     The Global Settlement developed independently by the CRO represents the end-product of the following: (i) the CRO's extensive review and analysis of thousands of pages of documents relating to the Debtors and the Palm restaurant group; (ii) additional information provided by the Plaintiff Minority Shareholders; (iii) other data gathered independently by the CRO; (iv) the CRO's numerous discussions with counsel for the parties; (v) various confidential settlement proposals separately advanced by the Plaintiff Minority Shareholders and the Defendant Majority Shareholders; and (vi) the positions, both factual and legal, taken by the Plaintiff Minority Shareholders and the Defendant Majority

---

[2]     Capitalized terms not defined herein shall have the same meaning ascribed to such terms in the First Day Declaration.

9151955-14

Shareholders in extensive confidential settlement discussions between them which have been led and moderated by the CRO during the past few months.

14.    The CRO believes that the Global Settlement is in the best interests of the Debtors' bankruptcy estates, as well as the Plaintiff Minority Shareholders and the Defendant Majority Shareholders, and it will obviate litigation expenses and risk.

15.    Significantly, the CRO further believes that the Global Settlement will preserve the value of Debtor JOMR and the Palm restaurant group because the on-going and extensive litigation by these parties to the Derivative Action which, in the absence of a settlement, is expected to continue for many more years, has the very real potential of destroying the very assets which will be used to fund a substantial portion of any global settlement amongst these very same parties; that is, the going-concern value of the Palm restaurant group, and therefore, the value of the Palm-related intellectual property owned by Debtor JOMR.

**THE PLAINTIFF MINORITY SHAREHOLDERS'
RENEWED MOTION TO DISMISS THE CHAPTER 11 CASES**

16.    Approximately 75 minutes after receiving the email containing the Global Settlement, the Plaintiff Minority Shareholders filed a *Renewed Motion to Dismiss Chapter 11 Cases* [ECF No. 161] (the "Motion to Dismiss").[3]

17.    On July 1, 2019, the law firm representing the Plaintiff Minority Shareholders filed a joinder in support of the Motion to Dismiss [ECF No. 162].

18.    On July 1, 2019, the Court scheduled the preliminary hearing on the Motion to Dismiss for July 24, 2019 at 10:30 a.m.

---

[3]    The Motion to Dismiss was filed during a standstill period agreed to in writing by the Plaintiff Minority Shareholders which does not expire until 11:59.59 p.m. on July 8, 2019.

9151955-14

19.     The Debtors respectfully request the Court to schedule concurrently the hearing to consider this Motion and the preliminary hearing on the Motion to Dismiss.[4]

## RELIEF REQUESTED

20.     The Debtors request that, pursuant to section 1121(d) of the Bankruptcy Code, the Court enter the order attached hereto as **Exhibit "A"**, and without prejudice to the right of the Debtors to seek further extensions of such periods:

a.     extending the time during which the Debtors shall have the exclusive right to file a plan of reorganization from July 5, 2019, to and including October 3, 2019; and

b.     extending the time during which the Debtors shall have the exclusive right to solicit acceptances to said plan from September 3, 2019, to and including December 2, 2019.

## BASIS FOR RELIEF REQUESTED

21.     Section 1121 of the Bankruptcy Code is the statutory predicate for determining the time period within which only the debtor in possession may file a plan and solicit acceptances thereto.  11 U.S.C. §§ 1121(b), (c).  Pursuant to § 1121(b), a debtor is given the exclusive right to file a plan until the expiration of one hundred-twenty (120) days following the date of the order for relief (the "Exclusivity Period"), unless the Exclusivity Period is extended by order of the Bankruptcy Court.  In addition, § 1121(c)(3) of the Bankruptcy Code provides that a debtor in possession is given the exclusive right to solicit acceptances of its plan for one hundred-eighty (180) days following the date of the order for relief (the "Acceptance Period"), unless the Acceptance Period is extended by order of the Bankruptcy Court.

---

[4]     If necessary or useful, the Debtors request the Court to enter a bridge order granting the relief requested in this Motion through the date the Court ultimately decides whether to grant the relief requested in this Motion.

9151955-14

22.    Pursuant to § 1121(d)(1) of the Bankruptcy Code, upon the request of a party in interest and after notice and a hearing, this Court may, for cause shown, lengthen the Exclusivity Period and the Acceptance Period.  Section 1121(d)(1) states, in pertinent part:

> …on request of a party in interest made within the respective period specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause … increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

23.    The term "cause" is undefined in the Bankruptcy Code.  However, the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See In re McLean Indus.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), reprinted in U.S.C.C.A.N. 1978, pp. 5963, 6190) (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).   As will be shown below, the Debtors have demonstrated sufficient cause to extend the Exclusivity Period to October 3, 2019, and the Acceptance Period to December 2, 2019.

24.    In determining whether cause exists to extend the exclusive periods, courts generally consider a variety of factors to assess the facts and circumstances of each case.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (stating that the decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact specific); *McLean Indus.*, 87 B.R. at 834 (identifying the factors used by courts to determine whether cause exists to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664, 670 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).  The factors cited by courts include, without limitation:

9151955-14

(a)      the size and complexity of the debtor's case;

(b)      the fact that the debtor is paying its bills as they come due;

(c)      the existence of good-faith progress towards reorganization;

(d)      the existence of an unresolved contingency; and

(e)      a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtors'] reorganization demands."

*See, e.g., In re Borders Group, Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (citing factors and granting debtor's motion to extend exclusive periods by 120 days); *Express One Int'l*, 194 B.R. at 100 (citing *In re Grant Traverse Development Co., Ltd.*, 147 B.R. 418 (Bankr. W.D. Mich. 1992)) (citing factors and granting debtor's third request that extended exclusivity for one year); *McLean Indus.,* 87 B.R. at 834 (citing factors and approving second, 90-day extension request of debtor that had few creditors and where the case had been pending for less than a year); *see also In re Adelphia Comm. Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) (citing factors and denying motion to terminate exclusivity).  Under all of these factors, the Debtors have demonstrated cause to extend the Exclusivity Period through October 3, 2019, and the Acceptance Period through December 2, 2019.

25.      The most common basis upon which courts grant an extension of the exclusivity periods is the size and complexity of the chapter 11 case.  *See, e.g.*, *Express One Int'l*, 194 B.R. at 100.  Here, it is beyond dispute that the magnitude of the core issue involving the Debtors in these chapter 11 cases manifestly satisfies the first factor courts look to when deciding whether sufficient cause exists for granting an extension of the Exclusivity Period and Acceptance Period. For the past four months, the CRO has been working diligently with, on the one hand, counsel for the Plaintiff Minority Shareholders and, on the other hand, with the Defendant Majority Shareholders and their counsel, as well as a relative of Walter J. Ganzi, in an attempt to reach a

global settlement of a certain Derivative Action between and among these parties that has been on-going for almost seven years and is described in detail in the First Day Declaration (*see* First Day Declaration, ¶¶ 23-31), including with respect to a certain Judgment estimated as of the Petition Date at $119.5 million which was rendered in such Derivative Action and is currently on appeal, in order to negotiate a consensual resolution of the Debtors' bankruptcy cases. In their Motion to Dismiss, the Plaintiff Minority Shareholders agree that the CRO has been working diligently. *See* Motion to Dismiss, p. 4.

26.    Although the Debtors do not themselves have significant business operations, it is without question that the CRO's negotiations to date on behalf of the Debtors related to an attempt to reach a global settlement of the Derivative Action have been complex, including the fact that any settlement will meaningfully involve the assets of the Defendant Majority Shareholders, as well as the future, financial performance of the entire Palm restaurant group, a large and prestigious business comprising 24 restaurants spanning the United States and Mexico of which a substantial number are owned outright by the Defendant Majority Shareholders.[5] Given the numerous and significant, legal and business, issues facing the Debtors with respect to the settlement negotiations, including the size, nature, and truly national scope of the Palm restaurant group which will be a key component of a potential settlement, it is beyond dispute that the Debtors' cases are extremely complex.

---

[5]    *See* First Day Declaration at fn.7 which states, in full, as follows:

Upon information and belief, (i) 18 of the Palm Restaurants are owned 50%-50% by Bruce and Wally, (ii) the Palm Restaurants located in Philadelphia and Beverly Hills are owned 50% collectively by Bruce and Wally and 50% by other investors, (iii) the Palm Restaurant located in Chicago is owned 75% collectively by Bruce and Wally and 25% by other investors, (iv) the Palm Restaurant located at John F. Kennedy International Airport in New York operates under a license granted by an entity which I am informed is an affiliate of PMC (Palm Airport LLC) to SSP America (a business that operates airport food outlets), and (v) the two Palm Restaurants located in Mexico operate under license agreements granted by JOMR to Hoteles Presidente, S.A. de C.V.

27.     Second, cause may be shown to extend the exclusivity periods where the debtor is paying its debts as they become due. *See, e.g., In re Service Merchandise Co.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000); *In re Crescent Manufacturing*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990); *McLean Indus., Inc.*, 87 B.R. at 834.   To date, the Debtors have been paying their post-petition obligations in a timely fashion as shown in the monthly operating reports which the Debtors have been filing with the Court.  *See, e.g.*, ECF Nos. 147, 148, 152, 153, 158, 159.  As such, the Debtors have been managing their affairs effectively and preserving the value of their assets for the benefit of all creditors.  The Debtors are also in compliance with the U.S. Trustee's guidelines.  Accordingly, the Debtors submit that cause exists to extend the Exclusivity Period until October 3, 2019 and the Acceptance Period to December 2, 2019.

28.     Third, as stated by the CRO in the First Day Declaration, the Debtors filed these bankruptcy cases for the following reasons:

> 43.     The Debtors commenced these Chapter 11 Cases in order to gain the critically important "breathing spell" afforded by the automatic stay provisions of the Bankruptcy Code in order to preserve and to maximize the value of the Debtors' estates for the benefit of the Debtors' creditors and stakeholders.

> 44.     With the protections of the automatic stay in place, the Debtors, through myself as the CRO, will expeditiously pursue a three-part strategy during the Chapter 11 Cases.  Under my leadership and control as the CRO, the Debtors will insure the preservation of their assets pending the appeal of the Judgment in the Derivative Action by the Defendant Majority Shareholders which is currently pending in the Appellate Court.  Also, under my leadership and control as the CRO, the Debtors will engage in negotiations with the Defendant Majority Shareholders and the [Plaintiff] Minority Shareholders in an attempt to reach a global settlement in the Derivative Action.   As an integral part of those settlement negotiations, the Debtors under my leadership and control as the CRO will investigate and determine the resources which are available, on the part of the Palm Restaurants, the other licensees of the Palm IP and other sources, to fund a global settlement based upon, among other possible sources, renegotiated and new license agreements involving the Palm IP.   In

addition, under my leadership and control as the CRO, the Debtors will pursue possible alternate ways to monetize the Judgment.

45.    The Debtors' immediate objective is to preserve and to maximize the value of their estates by obtaining the relief requested in the First Day Pleadings to minimize any adverse effects that these Chapter 11 Cases might otherwise have on their estates and then proceed expeditiously towards the goals of protecting the assets of the estates pending the appeal of the Judgment by the Defendant Majority Shareholders and attempting to reach a global settlement in the Derivative Action for the benefit of their creditors and stakeholders.

*See* First Day Declaration, ¶¶ 43-45.

29.    On behalf of the Debtors, the CRO has been working diligently and collaboratively with, on the one hand, the counsel for the Plaintiff Minority Shareholders, and on the other, the Defendant Majority Shareholders and their counsel, as well as a relative of Mr. Walter Ganzi.  As reflected in the fee reports that the CRO has filed with the Court, the CRO has worked expeditiously during the past four months to undertake a substantial investigation involving the operations, assets and liabilities, and the current and future expected financial performance of JOMR and the Palm restaurant group, as well as into the available assets and liabilities of the Defendant Majority Shareholders, in order to determine the resources which are available to fund a global settlement, including the CRO obtaining and reviewing thousands of pages of documents, visiting the operations of the Palm restaurant group in Washington, D.C., analyzing the financial performance of the Palm restaurant group, engaging in extensive settlement discussions with the Defendant Majority Shareholders and their counsel, a relative of Mr. Ganzi, and counsel for the Plaintiff Minority Shareholders, as well as creating and proposing the Global Settlement which was circulated separately on June 28, 2019, to counsel for, respectively, the Plaintiff Minority Shareholders and the Defendant Majority Shareholders.  *See,*

9151955-14

*e.g.*, ECF Nos. 156 (CRO's monthly fee report for March), 157 (CRO's monthly fee report for April) and 160 (CRO's monthly fee report for May).

30.     As indicated herein, the CRO has independently developed the Global Settlement which the CRO has proposed due to the <u>inability</u> of the Plaintiff Minority Shareholders and the Defendant Majority Shareholders to negotiate amongst themselves a consensual and rational, global settlement framework of the Derivative Action.   The CRO believes that the Global Settlement is in the best interests of the Debtors' bankruptcy estates, as well as the Plaintiff Minority Shareholders and the Defendant Majority Shareholders, and it will obviate litigation expenses and risk because it will, among other things, preserve the value of Debtor JOMR and the Palm restaurant group.   Despite the filing of the Motion to Dismiss, the CRO will continue to engage the parties to the Derivative Action with respect to settlement discussions.

31.     Finally, a court may grant an extension of exclusivity where the case has been pending for a relatively brief period of time.   Here, the Debtors' bankruptcy cases are approximately four months old.   In addition, it is worth noting, in other chapter 11 cases of lesser size or complexity in this District courts have routinely granted similar extensions on the debtor's initial request for an extension of the exclusive periods.   *See, e.g., In re Gulf Coast Medical Park, LLC*, Case No. 9:18-bk-02446-FMD (Bankr. M.D. Fla. Sept. 5, 2018) (court approves initial request by debtors for an additional 120-day extension of the exclusive periods); *In re Sewell*, Case No. 8:19-bk-1766-CED (Bankr. M.D. Fla. June 5, 2019) (court grants debtors' initial request to extend exclusive periods by 90-days each in individual chapter 11 case). Accordingly, the Debtors submit that cause exists to extend the Exclusivity Period to and including October 3, 2019, and the Acceptance Period to and including December 2, 2019.

9151955-14

32.     This is the Debtors' first request for an extension of the exclusive periods.  The proposed extensions of the Exclusivity Period and Acceptance Period will advance the Debtors' efforts to negotiate a consensual global resolution of the Debtors' bankruptcy cases as expeditiously as possible, bring these cases to a resolution, preserve value and avoid unnecessary motion practice.

33.     The requested extension of the Exclusivity Period and the Acceptance Period is not unduly burdensome or prejudicial to any parties in interest in these cases.  Accordingly, the Debtors request a 90-day extension of the Exclusivity Period and Acceptance Period.

34.     The Debtors reached out to counsel representing, respectfully, the Defendant Majority Shareholders and the Plaintiff Minority Shareholders to inquire as to their positions regarding the relief requested in this Motion.  As of the date of the filing of this Motion, the Defendant Majority Shareholders support, and the Plaintiff Minority Shareholders oppose, the relief requested in this Motion.

**WHEREFORE**, the Debtors respectfully request the entry of an Order, in the form attached hereto as **Exhibit "A"**, extending the exclusive period within which the Debtors may file a plan through and including October 3, 2019, pursuant to 11 U.S.C. § 1121(d)(1), and the corresponding solicitation period through and including December 2, 2019 without prejudice to the right of the Debtors to seek further extensions of such periods, as well as granting any further

12

relief which the Court deems just and proper.

Dated:  July 2, 2019                              Respectfully submitted,

                                                 BERGER SINGERMAN LLP
                                                 *Counsel for Debtors in Possession*
                                                 1450 Brickell Avenue, Suite 1900
                                                 Miami, FL 33131
                                                 Telephone: (305) 755-9500
                                                 Facsimile: (305) 714-4340

                                                 By:   *Christopher Andrew Jarvinen*
                                                       Paul Steven Singerman
                                                       Florida Bar No. 0378860
                                                       singerman@bergersingerman.com
                                                       Christopher Andrew Jarvinen
                                                       Florida Bar No. 21745
                                                       cjarvinen@bergersingerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice in these cases as reflected on the attached Electronic Mail Notice List and via U.S. Regular Mail, postage prepaid, upon all parties on the attached Creditor Matrix, to the extent that such parties do not already receive notice electronically through the Court's CM/ECF system, on this 2nd day of July, 2019.

                                                 *Christopher Andrew Jarvinen*
                                                 Christopher Andrew Jarvinen

13

9151955-14

## **EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,      Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]   (Jointly Administered with
                                     Case No. 9:19-bk-1948)
      Debtors.                      Chapter 11 Cases

_____/

**ORDER GRANTING MOTION PURSUANT TO SECTION 1121(d) OF THE
BANKRUPTCY CODE FOR AN EXTENSION OF EXCLUSIVE RIGHT TO FILE A
PLAN OF REORGANIZATION AND TO SOLICIT ACCEPTANCES THERETO**

**THIS MATTER** came before the Court on _____, 2019 at _____ a.m./p.m. upon

the *Motion Pursuant to Section 1121(d) of the Bankruptcy Code for an Extension of Exclusive*

*Right to File a Plan of Reorganization and to Solicit Acceptances Thereto* [ECF No. ___] (the

"Motion").  In the Motion, the Debtors request the entry of an order (i) extending the time during

which the Debtors shall have the exclusive right to file a plan of reorganization from July 5, 2019

to and including October 3, 2019 (as defined in the Motion, the "Exclusivity Period")[2] and (ii)

extending the time during which the Debtors shall have the exclusive right to solicit acceptances

---

[1]    The last four digits of each Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081).  The address of the Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

[2]    All terms not explicitly defined herein shall have the meanings ascribed to them in the Motion.

to said plan from September 3, 2019 to and including December 2, 2019 (as defined in the

Motion, the "Acceptance Period").  The Court, having considered the Motion, finds that: (i) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core

proceeding pursuant to 28 U.S.C. § 157; (iii) venue is proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409; (iv) notice of the Motion was proper and sufficient under the

circumstances and no other or further notice is necessary; (v) the relief requested in the Motion is

in the best interests of the Debtors, their estates and creditors; and (vi) the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein, it is

     **ORDERED** that:

1.     The Motion is **GRANTED**.

2.     The Debtors' Exclusivity Period within which only the Debtors may file a plan is

extended, pursuant to section 1121(d) of the Bankruptcy Code, through and including October 3,

2019.

3.     The Debtors' Acceptance Period within which the Debtor may solicit acceptances

of a plan is extended, pursuant to section 1121(d) of the Bankruptcy Code, through and including

December 2, 2019.

4.     The extensions granted by this Order are without prejudice to the Debtors' right to

seek further extensions from this Court.

9162851-2

5.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

# # #

*(Christopher Andrew Jarvinen, Esq. is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)*

9162851-2