UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| In re: | Case No. 9:19-bk-01947-FMD |
| JUST ONE MORE RESTAURANT CORP. and JUST ONE MORE HOLDING CORP., | (Jointly Administered with Case No. 9:19-bk-01948-FMD) Chapter 11 Cases |
| Debtors._____/ | |

## MOTION TO DISMISS

Gary Ganzi and Claire Breen, individually and as Attorneys-in-Fact for the Estate of Charles Cook (together, the "Minority Shareholders") and Hoguet Newman Regal & Kenney, LLP (the "Creditor," and together with the Minority Shareholders, the "Movants"), by their undersigned counsel, hereby move to dismiss the above-captioned cases, and state in support thereof as follows:

Preliminary Statement

When Bruce E. Bozzi, Sr. and Walter J. Ganzi, Jr. (together, the "Majority Shareholders" or "Chapter 7 Debtors") caused these cases to be filed over eight months ago, the objectives were clearly set forth in a first-day filing. The judgment creditors, Just One More Restaurant Corporation and Just One More Holding Corporation (together, the "Chapter 11 Debtors"), filed Chapter 11 petitions on March 7, 2019 "in order to gain the critically important 'breathing spell' afforded by the automatic stay provisions of the Bankruptcy Code"[1] from enforcement of the $119.5 million derivative judgment they hold against the Majority Shareholders. . According to the CRO's Declaration, the bankruptcy cases were filed to enable: (i) the Debtors to preserve their assets pending the Majority Shareholders' appeal of the judgment; (ii) the CRO to facilitate negotiations between the shareholders and determine what resources were available to fund a

---
[1] Doc. 7, pp. 13-14, ¶ 43.

global settlement between them; and (iii) the CRO to explore opportunities to monetize the derivative judgment. *See* Doc. 7, p. 14, ¶ 44. The strategy and objectives for these cases was also set forth in the Consolidated Chapter 11 Case Management Summary.[2]

Based on these objectives, the Court made the following salient remarks at a hearing conducted on April 5, 2019:

- "there was a benefit to being in a Chapter 11, a little time out for everyone, kind of retrench and figure out where you're going";

- "what Chapter 11 does is that it allows parties, to use Mr. Singerman's words, 'think outside the box' a little bit, come up with a resolution that people can live with";

- "Chapter 11 is a good place to resolve these kinds of issues"; and

- "And Mr. Lambers, you know, makes a good point and maybe this case ends up getting dismissed at the end of the day. Sometimes that happens. I don't judge the success or the failure of a case by whether it was dismissed or a Plan confirmed. The real question is whether the constituencies in the case leave the Bankruptcy Court in a better position than when they came into it. And that's, hopefully, what the goal is, I think, for everybody that's here in this courtroom today."[3]

The Minority Shareholders took these words to heart, voluntarily withdrew their *Motion To Dismiss Chapter 11 Cases Or, In The Alternative, To Appoint Chapter 11 Trustee* a mere five days later[4], and continually engaged in good faith settlement discussions with the CRO and Majority Shareholders. During a hearing on July 26, 2019, the Majority Shareholders' counsel indicated

---

[2] Doc. 9, p. 3, ¶ 5.
[3] Doc. 132, 68:4-7; 69:1-4; 70:18-19; and 72:15-23.
[4] Doc. 133.

that settlement documents were being drafted and a two-party settlement would be presented to the Court in the coming weeks.[5] This did not occur.

Despite this, the Movants continued to engage in good faith settlement discussions, which appeared to culminate successfully on October 10, 2019. On that date, the Movants traveled to Miami, Florida to participate in a settlement meeting with the CRO, the CRO's counsel, the Majority Shareholders' counsel, a third party, and the third party's counsel. At the conclusion of the meeting, the parties reached an agreement in principle that would become null-and-void unless settlement documents were executed by October 31, 2019. Unbeknownst to the Movants, however, the Majority Shareholders completed the required financial management courses to commence personal Chapter 7 cases *the day before the settlement meeting* and filed voluntary Chapter 7 petitions *the day after the settlement meeting*.[6] Shortly thereafter, Robert E. Tardif, Jr. (the "Chapter 7 Trustee") was appointed as the Chapter 7 Trustee of the Majority Shareholders' bankruptcy estates.

As a result of the Majority Shareholders' Chapter 7 filings, the stated objectives for the above-captioned cases cannot be accomplished. The derivative judgment cannot be appealed, settled, or enforced absent relief from the Chapter 7 stay and the Chapter 7 Trustee has stepped into the Majority Shareholders' shoes as officers, directors, and majority shareholders of the Chapter 11 Debtors. Moreover, the Chapter 11 Debtors are not being restructured or reorganized and there is no expectation that a Chapter 11 Plan will be filed anytime soon. The Chapter 11 Debtors are losing money month-after-month because revenue is not being collected and

---

[5] Doc. 176, 72:7-22.
[6] *See In re Bruce E. Bozzi, Sr.*, Case No. 9:19-bk-09677-FMD, Doc. 2 and *In re Walter J. Ganzi, Jr.*, Case No. 9:19-bk-09680-FMD, Doc. 2.

3

substantial administrative expenses are being incurred. For these reasons, the above-captioned cases should be dismissed forthwith.

Factual and Procedural Background

1.    At all relevant times, the Chapter 7 Debtors were the majority shareholders and sole directors of the Chapter 11 Debtors.

2.    Over eight months ago, the Chapter 7 Debtors hired Gerard A. McHale to serve as Chief Restructuring Officer (the "CRO") of the Chapter 11 Debtors and determined it was appropriate to file the above-captioned cases.[7]

3.    Over the past eight months, Just One More Restaurant Corporation ("JOMR") has failed to collect substantial revenue for the use of its intellectual property and the Chapter 11 Debtors have incurred substantial administrative expenses.[8]

4.    Indeed, the Court was concerned over JOMR's failure to collect substantial revenue during the pendency of this case and stated as follows at a hearing conducted on September 13, 2019:

> THE COURT: I have signaled loudly and clearly, I think, that I think that IP royalty fee, commission, whatever they want to call it, I think that's an issue. That's something, I think, that should be addressed.[9]

5.    As a result of the Chapter 11 Debtors' failure to collect substantial revenue and incurrence of substantial administrative expense, the Chapter 11 Debtors have continued to lose money month-after-month during the pendency of these cases.[10]

---

[7] *See* Case No. 9:19-bk-01947-FMD, Doc. 1, CM/ECF pp. 8-11; Doc. 7, p. 7, ¶¶ 18-19; Doc. 72, p. 7, #28; Doc. 74; Doc. 76, p. 6, #28; Doc. 78; and Case No. 9:19-bk-01948-FMD, Doc. 1, CM/ECF pp. 7-10.
[8] *See, e.g.,* Doc. Nos. 156-157, 160, 172, 187, 214, 227, 236, and 239.
[9] *See* Transcript of September 13, 2019 hearing, Doc. 224, 83:22-25.
[10] *See, e.g.,* Doc. Nos. 147-148, 152-153, 158-159, 167-168, 204-205, 234-235, and 237-238.

6. Additionally, the Chapter 11 Debtors are not undergoing a financial restructuring or reorganization and there is no expectation that a Chapter 11 Plan will be filed any time soon.

7. Moreover, the Chapter 7 Debtors filed voluntary petitions for relief on October 11, 2019. Upon the filing of their cases, an automatic stay went into effect prohibiting:

(a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(b) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(c) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(d) any act to create, perfect, or enforce any lien against property of the estate;

(e) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(f) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(g) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(h) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

8. Additionally, the Chapter 7 Debtors' legal and equitable interests (including their stock in the Chapter 11 Debtors) constitutes property of their bankruptcy estates pursuant to Section 541(a) of the Bankruptcy Code. After notice and a hearing, the Trustee may use or sell the Chapter 7 Debtors' Stock in the Chapter 11 Debtors. *See* 11 U.S.C. §§ 363, 541(a)(1), *In re*

*Billingsley,* 338 B.R. 372, 376 (Bankr. C.D. Ill. 2006), and *Milden v. Joseph (In re Milden)*, 1997 WL 189302, at * 3 - 4 (9th Cir. 1997) (collecting cases and rejecting appeal challenging the bankruptcy court's jurisdiction to authorize a trustee's "use of property of the [individual debtors' bankruptcy] estate, *viz.*, the shares of stock in [a corporation] in order to obtain the execution of the requested [corporate] release" in favor of state court defendants in connection with a motion to compromise claims in the individual debtors' bankruptcy estate).  It has also been held that the act of voting shares of stock or membership interests which are property of the estate constitutes a "use" of estate property for purposes of Section 363 of the Bankruptcy Code. *See In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 130, 140 (Bankr. D. Me. 1991) ("Voting the shares was 'use' of them for purposes of section 363").

9.	In sum, the objectives for these cases cannot be accomplished because of the Chapter 7 filings.  The automatic stay precludes the Chapter 11 Debtors from enforcing the derivative judgment against the Chapter 7 Debtors and precludes the Chapter 7 Debtors from continuing their appeal of the derivative judgment.  The Trustee also has sole and exclusive authority over the Chapter 7 Debtors' stock in the Chapter 11 Debtors.

10.	Finally, dismissal of these cases would not result in any prejudice to creditors or parties-in-interest because they would continue to hold all of their claims, rights, interests, and defenses against the Chapter 11 Debtors.

WHEREFORE, the Movants respectfully request the Court to enter an Order dismissing these cases forthwith and providing such further relief as the Court may deem just and proper.

Respectfully submitted,

FOX ROTHSCHILD LLP
*Attorneys for the Movants*
2 South Biscayne Boulevard, Suite 2750
Miami, Florida 33131
Telephone: (305) 442-6540
Facsimile: (305) 442-6541

By:/s/ Robert F. Elgidely
    Robert F. Elgidely, Esq.
    Florida Bar No. 111856
    E-Mail: relgidely@foxrothschild.com

    and,

HOGUET NEWMAN
REGAL & KENNEY, LLP

By:/s/ Fredric S. Newman
    Fredric S. Newman
    *Specially admitted pro hac counsel*
    One Grand Central Place
    60 E. 42nd St., 48th Fl.
    New York, New York 10016
    Telephone: (212) 689-8808

DUNNING RIEVMAN & DAVIES, LLP

By: /s/ Joshua D. Rievman
    Joshua D. Rievman
    *Specially admitted pro hac counsel*
    434 W. 33d St.
    New York, New York 10001
    Telephone: (646) 435-0027

    *Filer's Attestation: Pursuant to Local Rule 1001-2(e)(3) regarding signatures, Robert F. Elgidely, Esq. attests that concurrence in the filing of this paper has been obtained.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2019, I electronically filed the foregoing *Motion To Dismiss* with the Clerk of the Court using the CM/ECF System. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means and a copy was also forwarded via first-class mail to all parties identified on the attached mailing matrix who are not registered users of the Court's CM/ECF system.

By: /s/ Robert F. Elgidely
Robert F. Elgidely, Esq.