UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,          Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]      (Jointly Administered with
                                         Case No. 9:19-bk-1948)
        Debtors.                         Chapter 11 Cases
_____/

In re:

BRUCE E. BOZZI, SR.,                     Case No. 9:19-bk-09677-FMD
                                         Chapter 7
        Debtor.
_____/

In re:

WALTER J. GANZI, JR.,                    Case No. 9:19-bk-09680-FMD
                                         Chapter 7
        Debtor.
_____/

**JOINT APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF RAYMOND JAMES & ASSOCIATES, INC.
AS INVESTMENT BANKER FOR (I) JUST ONE MORE RESTAURANT CORP.,
(II) JUST ONE MORE HOLDING CORP., AND (III) THE CHAPTER 7 TRUSTEE
ON BEHALF OF THE PALM OPCOS OWNED BY THE CHAPTER 7 DEBTORS**
**(Expedited Hearing Requested)**

Just One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH"

and together with JOMR, collectively, the "Chapter 11 Debtors") through Gerard A. McHale, Jr. in

his capacity as the Chief Restructuring Officer of the Chapter 11 Debtors (the "CRO"), and Robert

E. Tardif, Jr., the trustee (the "Chapter 7 Trustee") appointed in the chapter 7 bankruptcy cases of

each of Bruce E. Bozzi, Sr. ("Bozzi") and Walter J. Ganzi, Jr. ("Ganzi" and together with Bozzi,

---

[1] The last four digits of each Debtor's federal tax identification number are Just One More Restaurant Corp. (5070)
   and Just One More Holding Corp. (6081).  The address of the Debtors is 8955 Fontana Del Sol Way, 2nd Floor,
   Naples, FL 34109.

collectively, the "Chapter 7 Debtors") (together, the Chapter 11 Debtors and the Chapter 7 Debtors, collectively, the "Debtors") on behalf of each of the business entities listed on the attached **Exhibit "A"** (collectively, the "Palm OpCos"[2] and together with the Chapter 11 Debtors, collectively, the "Company") by the authority granted to the Chapter 7 Trustee by title 11 of the United States Court (the "Bankruptcy Code") and orders of this Court,[3] by and through the undersigned counsel for the Chapter 11 Debtors and the Chapter 7 Trustee, file this *Joint Application for Entry of an Order Authorizing the Employment and Retention of Raymond James & Associates, Inc., as Investment Banker for (I) Just One More Restaurant Corp., (II) Just One More Holding Corp., and (III) the Chapter 7 Trustee on Behalf of the Palm OpCos Owned by the Chapter 7 Debtors* (the "Application") pursuant to 11 U.S.C. §§ 105, 327(a) and 328 and Fed. R. Bankr. P. 2014(a), seeking the approval of the employment of Raymond James & Associates, Inc. ("Raymond James") as the investment banker for the Company *nunc pro tunc* to December 12, 2019. In support of the Application, the Movants rely upon the *Declaration of Geoffrey Richards in Support of the Application for Entry of an Order Authorizing the Employment and Retention of Raymond James & Associates, Inc., as Investment Banker for (i) Just One More Restaurant Corp., (ii) Just One More Holding Corp., and (iii) the Chapter 7 Trustee on Behalf of the Palm OpCos Owned by the Chapter 7 Debtors* (the "Richards Declaration") attached hereto as **Exhibit "B"**, and respectfully represent as follows:

---

[2]   Unless otherwise indicated on Exhibit "A", the Chapter 7 Debtors have reported in their bankruptcy schedules filed with the Court that they own 100% of the equity interests in each of the Palm OpCos.

[3]   As explained herein, the Chapter 7 Trustee has been authorized to exercise the ownership interests and rights of the Chapter 7 Debtors in each of the Palm OpCos. *See Order Granting Amended Motion for Entry of An Order Authorizing the Trustee to Exercise Debtor's Rights and Interests in the Corporate Entity*" (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 58; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 55).

9470640-4

## JURISDICTION

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' bankruptcy cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 327 and 328 of the Bankruptcy Code, and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

-The Chapter 11 Debtors

2.      On March 7, 2019 (the "Chapter 11 Petition Date"), each of the Chapter 11 Debtors commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.      The Chapter 11 Debtors are managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On April 9, 2019, the Court entered an order approving the employment of Berger Singerman LLP as counsel to the Chapter 11 Debtors in their bankruptcy cases (Case No. 9:19-bk-01947-FMD, Doc. 121).

5.      On April 16, 2019, the Court entered an order authorizing the Chapter 11 Debtors to appoint Gerard A. McHale, Jr. as the CRO of each of the Chapter 11 Debtors (Case No. 9:19-bk-01947-FMD, Doc. 139).

6.      On May 13, 2019, the United States Trustee filed a notice with the Court indicating that the United States Trustee will not appoint a committee of unsecured creditors.

9470640-4

7.      For a detailed description of the Chapter 11 Debtors, the Chapter 11 Debtors respectfully refer the Court and parties in interest to the *Declaration of Chief Restructuring Officer, Gerard A. McHale, in Support of Chapter 11 Petitions and First Day Pleadings* (Case No. 9:19-bk-01947-FMD, Doc. 7) (the "First Day Declaration") filed on the Chapter 11 Petition Date which the Chapter 11 Debtors incorporate herein by reference.

-The Chapter 7 Debtors

8.      On October 11, 2019 (the "Chapter 7 Petition Date", and together with the Chapter 11 Petition Date, collectively, the "Petition Dates"), each of the Chapter 7 Debtors commenced their cases by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

9.      Robert E. Tardif, Jr. has been appointed the Chapter 7 Trustee of the estates of each of the Chapter 7 Debtors.

10.     On December 6, 2019, the Court entered orders granting the Chapter 7 Trustee's applications to employ Berger Singerman LLP as transaction counsel to the Chapter 7 Trustee (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 54; Ganzi, Case No. 9:19-bk-09677-FMD, Doc. 49).

11.     On December 4, 2019, the Chapter 7 Trustee filed in each of the Chapter 7 Cases an *Amended Motion for Entry of an Order Authorizing the Trustee to Exercise the Debtor's Rights and Interests in the Corporate Entity* (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 52; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 47) (the "Palm OpCos Authorization Motions").

12.     In the Palm OpCo Authorization Motion, the Chapter 7 Trustee sought authority to exercise the ownership interests of the Chapter 7 Debtors in, among other entities, the Palm OpCos, but not with respect to JOMR and JOMH.

13.     On December 11, 2019, the Court entered orders granting the Chapter 7 Trustee's motions to exercise the ownership interests and rights of the Chapter 7 Debtors in each of the Palm

4

OpCos (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 58; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 55) (the "Palm OpCos Authorization Orders").

## RELIEF REQUESTED

14.     By this Application, JOMR and JOMH through the Chief Restructuring Officer and the Chapter 7 Trustee on behalf of the Palm OpCos seek entry of an order, substantially in the form attached hereto as **Exhibit "C"**, authorizing the Company to retain and employ Raymond James as its investment banker in accordance with the terms and conditions of that certain engagement letter, dated as of December 12, 2019 (the "Engagement Letter"), attached hereto as "**Exhibit "D"**.

## SERVICES TO BE PROVIDED

15.     Pursuant to the Engagement Letter, Raymond James proposes to be employed by the Company to, among other things, provide the Company with certain investment banking advisory services (collectively, the "Services") related to three different types of potential transactions (each a "Transaction"), including a "Financing Transaction,"[4] "Restructuring Transaction" [5] and/or "Business Combination Transaction".[6]  *See* Engagement Letter, pp. 2-3, § 1(a).

---

[4]     *See* Engagement Letter, p. 2.  A "Financing Transaction" is defined therein as:  any transactions, arrangements or undertakings (however effectuated) involving the issuance of debt, securities exchangeable or convertible into common or preferred stock, or equity or equity-linked securities (including royalties, profit sharing and other similar financing transactions) for or on behalf of the Company or securing loans or credit facilities for the Company (whether to raise funds, refinance outstanding securities or exchange securities or any combination thereof, provided that any such transaction involves the receipt by the Company of new consideration as opposed to the restructuring, renegotiation, forgiveness, or exchange with or by the holder of any outstanding debt obligations or equity securities of the Company, which would constitute a Restructuring Transaction (as defined herein)) or such other financing of any type committed to complete any other Transaction, and further provided that any such transaction described in this paragraph is acceptable in form and substance to the Company and its counsel and is approved by the Bankruptcy Court.

[5]     *See* Engagement Letter, pp. 2-3.  A "Restructuring Transaction" is defined therein as: any recapitalization, reorganization, restructuring, sale or transfer (however effectuated) of the Company's existing equity and/or debt obligations (including, without limitation, bank debt, bond debt, trade claims, lease obligations (both on and off balance sheet), partnership interests, membership interests, unfunded pension and retiree medical liabilities, tax claims, litigation claims and other liabilities (collectively, "Existing Obligations")) that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations, amendment or renegotiation of terms, conditions or covenants, rescheduling of maturities, change in interest rates, repurchase,

16.     As outlined in the Engagement Letter, the Company proposes to retain Raymond

James to render, among other things, the following Services:

    a.    Assist the Company in reviewing and analyzing the Company's business, operations, properties, financial condition and Interested Parties;[7]

    b.    Assist the Company in evaluating potential Transaction alternatives and strategies;

    c.    Assist the Company in preparing documentation within Raymond James's area of expertise that is required in connection with a Transaction;

    d.    Assist the Company in identifying Interested Parties regarding one or more particular Transactions;

    e.    On behalf of the Company, contact Interested Parties which Raymond James, after consultation with the Chief Restructuring Officer, the Chapter 7 Trustee and their counsel, believe meet certain industry, financial, and strategic criteria and assist the Company in negotiating and structuring a Transaction;

    f.    Advise the Company as to potential Transactions;

    g.    Advise the Company on tactics and strategies for negotiating with holders of the Company's debt or other claims of the Company; and

---

settlement, cancellation or forgiveness of the Existing Obligations, conversion of the Existing Obligations into equity, an exchange offer involving new securities in exchange for the Existing Obligations, or other similar transaction or series of transactions, and provided that any such transaction described in this paragraph is acceptable in form and substance to the Company and its counsel and is approved by the Bankruptcy Court.

[6]   *See* Engagement Letter, p. 3.  A "Business Combination Transaction" is defined therein as: (i) the sale or transfer (however effectuated) of all or a substantial portion of the business, revenues, income, operations or assets (including the assignment of any executory contracts) of the Company or any its business units to, the sale or transfer (however effectuated) of a majority voting or economic interest in the Company's securities or control of the Company to, or the merger of the Company with, one or more Interested Parties (including, without limitation, existing creditors, employees, affiliates and/or securityholders), or any other possible strategic transactions, joint ventures, combinations or undertakings between or involving the Company and one or more Interested Parties; and/or (ii) the acquisition, directly or indirectly by an Interested Party (as defined below) (or by one or more persons or entities acting together with an Interested Party pursuant to a written agreement or otherwise), in a single transaction or a series of transactions, of (A) all or a substantial portion of the assets or operations of the Company or (B) any outstanding or newly-issued shares of the Company's equity securities (or any securities convertible into, or options, warrants or other rights to acquire such equity securities) (such equity securities and such other securities, options, warrants and other rights being collectively referred to as "Company Securities") that results in holders of shares of the Company's equity securities immediately prior thereto owning less than a majority voting or economic interest in the Company's securities or control of the Company immediately thereafter, and provided that any such transaction described in this paragraph is acceptable in form and substance to the Company and its counsel and is approved by the Bankruptcy Court.

[7]   Any term not explicitly defined in this Application shall have the meaning ascribed to it in the Engagement Letter.

6

      h.     Upon request, provide periodic status reports to the Company with respect to matters falling within the scope of Raymond James's retention.

## RAYMOND JAMES'S QUALIFICATIONS

17.    Raymond James is a subsidiary of Raymond James Financial, Inc. ("RJF"), a publicly traded (NYSE:RJF) full-service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and other service offerings to individual and institutional clients.  RJF and its subsidiaries employ over 10,000 individuals in the United States alone, of which approximately 400 provide investment banking advisory services to firm clients.  Since 2013, Raymond James has participated in raising $300 billion in capital for its corporate clients and completed more than 500 advisory assignments, including more than 400 M&A buy-side or sell-side advisory assignments.

18.    Raymond James has a dedicated restructuring investment banking group with extensive experience advising corporations, creditors' committees, and other constituents in complex situations involving underperforming or unsuitably-capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings.  Investment bankers at Raymond James have advised on, or been involved with, numerous restructuring-related or distressed transactions, both out-of-court and in chapter 11 cases, including, without limitation, sale, restructuring, financing, financial opinion, and special advisory transactions.

19.    The Chapter 11 Debtors, through the Chief Restructuring Officer, and the Chapter 7 Trustee on behalf of the Palm OpCos, selected Raymond James because Raymond James's professionals have considerable expertise and experience in providing investment banking services to financially-distressed companies and to creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out-of-court proceedings.  Representative engagements

7

that investment bankers at Raymond James have led in prior chapter 11 cases and restructurings include: American Eagle Energy Corporation; American IronHorse Motorcycles, Inc.; BI-LO, LLC; Buccaneer Energy; Calpine Energy; Color Spot Holdings, Inc.; Dakota Plains Holdings, Inc.; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; Halt Medical, Inc.; Hipcricket, Inc.; Hooper Holmes, Inc.; HMX Acquisition Corp.; International Garden Products, Inc.; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; Max & Erma's, Inc.; National Envelope Corporation; Renew Energy, Inc.; Response Genetics, Inc.; Robbins Bros. Corporation; Santa Fe Gold Corporation; SynCardia Systems, Inc.; CCNG Energy Partners; Phoenix Payment Systems, Inc.; ATLS Acquisition, LLC; Personal Communication Devices, LLC; SP Newsprint Holding LLC; and CB Holding Corp.

20.     Raymond James is well-suited to provide the Company with the investment banking services contemplated by the Engagement Letter.

21.     For the reasons stated on the record of the status conference held by the Court on November 13, 2019 and the separate hearings held by the Court on December 2, 2019 and December 9, 2019, the Chapter 7 Trustee and the Chief Restructuring Officer respectfully request that the Application be heard on an expedited basis.

### NO DUPLICATION OF SERVICES

22.     The Chief Restructuring Officer and the Chapter 7 Trustee believe that the services provided by Raymond James will not duplicate the services that other professionals will be providing to the Chapter 11 Debtors and the Chapter 7 Trustee in these bankruptcy cases. Specifically, Raymond James will carry out unique functions directly related to a potential Transaction and will use reasonable efforts to coordinate with the Chapter 7 Trustee and the Chief

8

Restructuring Officer and the other professionals retained in the Chapter 11 Cases and by the Chapter 7 Trustee to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

23.     Raymond James will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with these bankruptcy cases in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, the *Expense Reimbursement Guidelines* promulgated by the United States Bankruptcy Court for the Middle District of Florida (the "Expense Reimbursement Guidelines"), and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* promulgated by the United States Trustee (the "Guidelines"), and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Engagement Letter.

24.     Investment bankers such as Raymond James do not charge for their services on an hourly basis.  Instead, they customarily charge fees that are contingent upon the occurrence of a specified type of transaction.  As set forth more fully in the Engagement Letter, and subject thereto, Raymond James will be compensated, subject to Court approval, as follows (the "**Fee Structure**"):[8]

> a.      *Financing Transaction Fee*.   If any Financing Transaction closes, the Company shall pay Raymond James immediately and directly out of the proceeds of the placement, at closing, of each Financing Transaction as a cost of sale of each Financing Transaction, a cash transaction fee equal to (1) three percent (3.0%) of the Proceeds of any debt capital raised, and (2) five percent (5.0%) of the Proceeds of any equity or equity-linked securities raised.

---

[8]   Descriptions of the terms of Raymond James's engagement are for summary purposes only; to the extent of any discrepancy between the Application and the Engagement Letter, the Engagement Letter shall control.

b.    *Restructuring Transaction Fee.*  If any Restructuring Transaction closes, the Company shall pay Raymond James a cash transaction fee of $1,500,000.

c.    *Business Combination Transaction Fee.*  If any Business Combination Transaction closes, the Company shall pay Raymond James immediately and directly out of the proceeds at the closing, as a cost of such Business Combination Transaction, a cash transaction fee equal to the greater of (a) $1,500,000 or (b) the sum of (i) 2.0% of the Transaction Value up to and including $75,000,000, plus (ii) 2.5% of the Transaction Value greater than $75,000,000 and up to and including $125,000,000, plus (iii) 3.25% of the Transaction Value greater than $125,000,000.

d.    *Monthly Advisory Fee and Database Expense Amount.*  In accordance with the Engagement Letter, the Company will pay Raymond James an advisory fee of $35,000 per month on the first business day of each month during the term of the engagement.

e.    In the event that a Transaction qualifies as both a Restructuring Transaction and a Business Combination Transaction, the Company shall pay Raymond James the greater of the Business Combination Fee or the Restructuring Transaction Fee. If more than one of the same type of Transaction closes, such as two or more Business Combination Transactions or two or more Financing Transactions, the Company shall pay to Raymond James the applicable Transaction Fee based on the aggregate Transaction Value or Proceeds, as the case may be, for such Transactions.

25.    Further, subject to the Engagement Letter, the Company shall reimburse Raymond James, upon the earlier of (i) thirty (30) days of their receipt of an invoice from Raymond James or (ii) the closing of a Transaction, for all reasonable, actual, necessary and documented, expenses incurred in connection with the initiation and performance of the engagement pursuant to the Engagement Letter, and the enforcement of the Engagement Letter, including, without limitation, the reasonable, actual, necessary and documented fees, disbursements, and other charges of Raymond James's legal counsel that are not duplicative of services to be performed by the legal counsel for the Chapter 11 Debtors and the Chapter 7 Trustee.[9]

---

[9]    As reflected in Section 3(a) and Section 6(b) of the Engagement Letter, if Raymond James seeks reimbursement from the Company for attorney's fees and/or expenses, (i) Raymond James shall not charge an expense based upon a uniformly applied monthly assessment or percentage of fees due, but rather will only charge for the reasonable, actual, necessary and documented, expenses that are incurred, and (ii) the invoices and supporting

26.    The Chapter 7 Trustee and the Chief Restructuring Officer believe that the Fee

Structure set forth in the Engagement Letter is reasonable.  The Fee Structure appropriately reflects

the nature of the services to be provided by Raymond James and the fee structures typically

utilized by leading financial advisory and investment banking firms of similar stature to Raymond

James for comparable engagements, both in and out of court.  The Fee Structure is consistent with

Raymond James's normal and customary billing practices for cases of this size and complexity that

require the level and scope of services outlined herein.  Moreover, the Fee Structure is reasonable

in light of (a) industry practice, (b) market rates charged for comparable services both in and out of

the chapter 7 and chapter 11 contexts, (c) Raymond James's substantial experience with respect to

financial advisory and investment banking services, and (d) the nature and scope of work to be

performed by Raymond James in these bankruptcy cases.

27.    Raymond James intends to seek payment in accordance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, the

Engagement Letter, and any additional procedures that have been or may be established by the

Court in these bankruptcy cases.

28.    Raymond James has agreed to accept as compensation for its services in these

bankruptcy cases such sums as may be allowed by the Court.  Raymond James understands that

interim and final fee awards are subject to approval by the Court.

29.    In accordance with section 504 of the Bankruptcy Code, Raymond James has

informed the Chapter 7 Trustee and the Chief Restructuring Officer that there is no agreement or

---

time records for the legal counsel's fees and expenses shall be included in Raymond James's own interim and/or
final fee applications, and such invoices and time records shall be in compliance with the Bankruptcy Court's
guidelines and Local Rules, and, notwithstanding anything to the contrary in the Engagement Letter, these
invoices and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330 and
331 of the Bankruptcy Code, as the case may be, without regard to whether such legal counsel has been retained
under section 327 of the Bankruptcy Code, and without regard to whether such legal counsel's services satisfy
section 330(a)(3)(C) of the Bankruptcy Code.

11

understanding between Raymond James and any other entity, other than the members and employees of Raymond James, for the sharing of compensation received or to be received for services rendered in connection with these bankruptcy cases.

30.     Moreover, the allocation of the net proceeds from any Transaction with respect to the estates of the Chapter 7 Debtors and the Chapter 11 Debtors shall be determined by the Chapter 7 Trustee and the Chief Restructuring Officer pursuant to separate order(s) of the Bankruptcy Court.

### RAYMOND JAMES'S DISINTERESTEDNESS

31.     To the best of the knowledge, information, and belief of the Chief Restructuring Officer on behalf of the Chapter 11 Debtors' estate and the Chapter 7 Trustee on behalf of the Chapter 7 Debtors' estates, and except to the extent disclosed herein and in the Richards Declaration, Raymond James: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors or their respective creditors for the matters for which Raymond James is to be employed; and (c) has no connection to the Debtors, their creditors, or related parties herein except as disclosed in the Richards Declaration.

32.     As of the Petition Date, Raymond James does not hold a prepetition claim against any of the Debtors for services rendered.

33.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Raymond James's retention are discovered or arise, Raymond James will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

9470640-4

## RECORDKEEPING

34.     It is not the general practice of investment banking firms, including Raymond James, to keep detailed time records similar to those customarily kept by attorneys.  Raymond James does not maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals.  Moreover, the Fee Structure does not rely on the amount of time spent by Raymond James, but instead, is results-driven and will be determined by the ultimate success of Raymond James's efforts to successfully consummate a Transaction.  Instead, notwithstanding that Raymond James does not charge for its services on an hourly basis, Raymond James will maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professional rendering such services on behalf of the Trustee.

35.     Raymond James will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Raymond James's application for compensation and expenses will be paid by the Company pursuant to the terms of the Engagement Letter and any procedures established by the Court.

### INDEMNIFICATION, CONTRIBUTION, AND
### EXPENSE REIMBURSEMENT PROVISIONS

36.     The Company has agreed, among other things, to indemnify and to provide contribution and reimbursement to, Raymond James and certain related parties in accordance with the indemnification provisions attached as <u>Addendum A</u> to the Engagement Letter (the "<u>Indemnification Provisions</u>"), as modified by the terms of the proposed order attached hereto as **Exhibit "C"**.

37.     The Chapter 7 Trustee and the Chief Restructuring Officer believe such provisions are customary and reasonable for Raymond James's engagement.  Unlike the market for other

13

professionals that the Chapter 7 Trustee and the Chief Restructuring Officer may retain, such provisions are standard terms of the market for investment bankers.  Raymond James and the Chapter 7 Trustee and the Chief Restructuring Officer believe that such provisions are comparable to those generally obtained by investment banking and financial advisory firms of similar stature to Raymond James and for comparable engagements, both in and out of court.

38.    Accordingly, as part of this Application, the Chapter 7 Trustee and the Chief Restructuring Officer request that the Court approve the Indemnification Provisions subject to the modifications set forth herein.

## BASIS FOR RELIEF

39.    Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).  Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that the debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a).  Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of investment bankers on more flexible terms that reflect the nature of their services and market conditions.

40.    The Chief Restructuring Officer and the Chapter 7 Trustee submit that the Court's approval of the retention of Raymond James in accordance with the terms and conditions of the Engagement Letter is warranted.  First, the requirements of section 327 of the Bankruptcy Code are satisfied.  Raymond James is needed post-petition to assist with negotiations, as necessary, to

14

provide expert advice and testimony regarding financial matters related to the Transactions contemplated by the Engagement Letter.  Raymond James has extensive experience and an excellent reputation in providing high-quality investment banking and financial advisory services, both in and out of court.  The Trustee submits that Raymond James is well-qualified to provide its services to the Trustee in a cost-effective, efficient, and timely manner.

41.    Second, the Chief Restructuring Officer and the Chapter 7 Trustee believe that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  The Fee Structure reflects Raymond James's commitment to the variable level of time and effort necessary to perform the services to be provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the bankruptcy contexts.

42.    Indeed, Raymond James's industry and restructuring experience, its capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which may be required by the Chief Restructuring Officer and the Chapter 7 Trustee during the term of Raymond James's engagement, were important factors in determining the Fee Structure.  The ultimate benefit to the Chief Restructuring Officer and the Chapter 7 Trustee of Raymond James's services could not be measured merely by reference to the number of hours to be expended by Raymond James's professionals in the performance of such services.  Moreover, the Fee Structure takes into consideration Raymond James's anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties under the Engagement Letter and in light of the fact that such commitment may foreclose other opportunities for Raymond James.

9470640-4

43.     Thus, because of Raymond James's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that Raymond James has devoted and will continue to devote to this engagement, the Chief Restructuring Officer and the Chapter 7 Trustee jointly request that the Court approve the Fee Structure pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluates Raymond James's final compensation and reimbursement of expenses in these bankruptcy cases under the standards of section 328(a) of the Bankruptcy Code rather than under those of section 330 of the Bankruptcy Code, subject to Raymond James filing fee applications seeking approval of the payment of its fees and expenses.

44.     Third, the Indemnification Provisions are reasonable under the circumstances and reflect market conditions, and accordingly should be approved under section 328 of the Bankruptcy Code.

**WHEREFORE**, the Chapter 11 Debtors, through the Chief Restructuring Officer, and the Chapter 7 Trustee on behalf of the Chapter 7 Debtors in the Palm OpCos, respectfully request the Court to enter an order, in the form attached hereto as **Exhibit "C"** (i) authorizing the Company to employ Raymond James as investment bankers for the Company to perform the services described above; and (ii) granting such other and further relief as this Court deems just and proper.

Dated:  December 20, 2019                          Respectfully submitted,

BERGER SINGERMAN LLP
*Counsel for JOMR, JOMH and the Trustee*
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:  *Christopher Andrew Jarvinen*
              Christopher Andrew Jarvinen
              Florida Bar No. 021745
              cjarvinen@bergersingerman.com

9470640-4

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice in this case as reflected on the attached Electronic Mail Notice List on this 20th day of December, 2019.

<div align="right">

*Christopher Andrew Jarvinen*
Christopher Andrew Jarvinen

</div>

9470640-4

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Robert F Elgidely    relgidely@foxrothschild.com, mmiller-hayle@foxrothschild.com;kellis@foxrothschild.com;jdistanislao@foxrothschild.com
- Christopher A Jarvinen    cjarvinen@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- Andrew T. Jenkins    ajenkins@bushross.com, mlinares@bushross.com;ksprehn@bushross.com
- Fredric S. Newman    fnewman@hnrklaw.com, docket@hnrklaw.com
- Megan Preusker    mpreusker@mwe.com
- Joshua D Rievman    jrievman@drdllplaw.com
- Robert A. Schatzman    robert.schatzman@gray-robinson.com, Amador.Ruiz-Baliu@gray-robinson.com;lauren.rome@gray-robinson.com
- Paul Steven Singerman    singerman@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- Steven J Solomon    steven.solomon@gray-robinson.com, lauren.rome@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com
- Robert E Tardif    rtardif@comcast.net, graceheidkamp@gmail.com;blkenney2@comcast.net;rtardif@ecf.axosfs.com;ecf.alert+Tardif@titlexi.com
- Robert E Tardif, Attorney for Trustee    rtardif@comcast.net, graceheidkamp@gmail.com;blkenney2@comcast.net
- United States Trustee – FTM USTPRegion21.TP.EDF@USDOJ.GOV

**Exhibit "A"**

**The Palm OpCos**[1]

Atlanta Palm Food Corporation

Atlantic City Palm, LLC

Boston Palm Corporation

Charlotte Palm Corporation

Chicago Palm, Inc.[2]

Denver Palm Corporation

LA Downtown Palm, LLC

Miami Palm Restaurant, Inc.

Nashville Palm Restaurant, LLC

Palm Airport, LLC

Palm Beverly Hills Restaurant Manager, LLC

Palm Management Corporation

Palm New York Downtown, LLC

Palm Orlando Corporation

Palm Philadelphia Manager, LLC

Palm Restaurant, Inc.

Palm Restaurant of Las Vegas, Inc.

Palm Restaurant of Houston, Inc.

Palm Tysons Too, Inc.

Palm West Corporation

San Antonio Palm Restaurant, Inc.

Washington Palm, Inc.

Palm Philadelphia Investor, LLC

---

[1]   Sources: Schedules filed in the United States Bankruptcy Court for the Middle District of Florida by Bozzi (case no. 9:19-bk-09677-FMD, Doc. 35, pp. 11-13 out of 64) and Ganzi (case no. 9:19-bk-09680-FMD, docket no. 27, pp. 9-10 out of 58).

[2]   81.62% of the equity of this entity is collectively owned by Messrs. Ganzi and Bozzi.

9470640-4

**<u>Exhibit "B"</u>**

**Richards Declaration**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,          Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]        (Jointly Administered with
                                           Case No. 9:19-bk-1948)
        Debtors.                           Chapter 11 Cases
_____/

In re:

BRUCE E. BOZZI, SR.,                        Case No. 9:19-bk-09677-FMD
                                           Chapter 7
        Debtor.
_____/

In re:

WALTER J. GANZI, JR.,                       Case No. 9:19-bk-09680-FMD
                                           Chapter 7
        Debtor.
_____/

**DECLARATION OF GEOFFREY RICHARDS IN SUPPORT OF THE
JOINT APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF RAYMOND JAMES & ASSOCIATES, INC.
AS INVESTMENT BANKER FOR (I) JUST ONE MORE RESTAURANT CORP.,
(II) JUST ONE MORE HOLDING CORP., AND (III) THE CHAPTER 7 TRUSTEE
ON BEHALF OF THE PALM OPCOS OWNED BY THE CHAPTER 7 DEBTORS**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedures (the

"**Bankruptcy Rules**"), I, Geoffrey Richards, declare pursuant to 28 U.S.C. § 1746, under penalty

of perjury, to the best of my knowledge and belief, that:

---

[1]     The last four digits of each Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081). The address of the Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

1.      I am a Managing Director of Raymond James & Associates, Inc. ("**Raymond James**"), which has its principal office at 880 Carillon Parkway, St. Petersburg, Florida 33716.  I am authorized to make this declaration (this "**Declaration**") on behalf of Raymond James.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.[2]

2.      I submit this Declaration in support of the *Joint Application for Entry of an Order Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for (i) Just One Restaurant Corp., (ii) Just One More Holding Corp., and (iii) the Chapter 7 Trustee on Behalf of the Palm OpCos Owned by the Chapter 7 Debtors* (Doc. ___) (the "**Application**").[3]  I submit this Declaration in compliance with sections 105, 327(a), 328(a), and 1107(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016.

## RAYMOND JAMES'S QUALIFICATIONS

3.      Raymond James is a subsidiary of Raymond James Financial, Inc. ("**RJF**"), a publicly traded (NYSE:RJF) full-service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and other service offerings to individual and institutional clients.  RJF and its subsidiaries employ over 10,000 individuals in the United States alone, of which approximately 400 provide investment banking advisory services to firm clients.  Since 2013, Raymond James has participated in raising $300 billion in capital for its corporate clients and completed more than 500 advisory assignments, including more than 400 M&A buy-side or sell-side advisory assignments.

---

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Raymond James and are based on information provided by them.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

4.     Raymond James has extensive experience and an excellent reputation in providing high-quality financial advisory and investment banking services to debtors in bankruptcy reorganizations and other restructurings.

5.     Raymond James has a dedicated restructuring investment banking group with extensive experience advising corporations, creditors' committees and other constituents in complex situations involving underperforming or unsuitably capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings, or bankruptcy proceedings. Investment bankers at Raymond James have advised on, or been involved with, numerous restructuring-related or distressed transactions, both out-of-court and in chapter 11 cases, including, without limitation, sale, restructuring, financing, financial opinion, and special advisory transactions.

6.     Raymond James's professionals have considerable expertise and experience in providing investment banking services to financially distressed companies and to creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out-of-court proceedings.  Representative engagements that investment bankers at Raymond James have led in prior chapter 11 cases and restructurings include:  *American Eagle Energy Corporation; American IronHorse Motorcycles, Inc.; BI-LO, LLC; Buccaneer Energy; Calpine Energy; Color Spot Holdings, Inc.; Dakota Plains Holdings, Inc.; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; Halt Medical, Inc.; Hipcricket, Inc.; Hooper Holmes, Inc.; HMX Acquisition Corp.; International Garden Products, Inc.; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; Max & Erma's, Inc.; National Envelope Corporation; Renew Energy, Inc.; Response Genetics, Inc.; Robbins Bros. Corporation; Santa Fe Gold Corporation; SynCardia Systems, Inc.; CCNG Energy Partners, Phoenix Payment Systems, Inc.;*

3

*ATLS Acquisition, LLC; Personal Communication Devices; LLC, SP Newsprint Holding LLC; and CB Holding Corp.* In addition, I have taught the class "Corporate Restructuring" at Northwestern Pritzker School of Law as an adjunct professor since 2001.

7.      Due to the fact that Raymond James is an experienced investment banker, Raymond James fulfills a critical need that complements the services offered by the other professionals for the Chapter 11 Debtors and the Chapter 7 Trustee.

8.      Since its retention (subject to Court approval) on or about December 11, 2019, the Raymond James's team has provided services and advice to the Chief Restructuring Officer and the Chapter 7 Trustee, including: (a) familiarizing itself with the assets and operations of the Company; (b) analyzing the Company's liquidity and cash flow projections; (c) examining and seeking to implement various potential strategic and financing alternatives; (d) evaluating strategic alternatives for the Company; (e) assisting the Company in evaluating financing options; and (g) providing additional financial advisory and investment banking services. In providing these and other professional services to the Chief Restructuring Officer and the Chapter 7 Trustee, Raymond James has acquired significant knowledge of the Company and its business and is familiar with the Company's financial affairs, debt and capital structure, business operations, key stakeholders, financing documents, and other related material information. Additionally, Raymond James has worked closely with the Chief Restructuring Officer and the Chapter 7 Trustee, their advisors, and the Company's senior management and has familiarity with the major stakeholders that will be involved in these bankruptcy cases. Accordingly, Raymond James is both well-qualified and uniquely able to effectively represent the Company as investment banker in these bankruptcy cases pursuant to the terms of the Engagement Letter.

9.      I believe that Raymond James's services will not duplicate the services that other professionals are and will be providing to the Chapter 11 Debtors and the Chapter 7 Trustee in these bankruptcy cases.  Specifically, Raymond James will carry out unique functions and will use reasonable efforts to coordinate with the other retained professionals in these bankruptcy cases to avoid unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

10.      In consideration of the services to be provided by Raymond James, and as more fully described in the Engagement Letter, subject to the Court's approval, the Company has agreed to compensate Raymond James as follows (the "**Fee and Expense Structure**"):

a.      <u>Monthly Advisory Fee and Database Expense Amount</u>.  The Company will pay Raymond James a monthly advisory fee in the amount of $35,000 per month on the first business day of every month during the term of this Agreement.

b.      <u>Financing Transaction Fee</u>.  If any Financing Transaction closes, whether on a stand-alone basis or to consummate any other Transaction and regardless of whether Raymond James actually procured the agreement regarding the Financing Transaction, the Company shall pay Raymond James immediately and directly out of the proceeds of the placement, at closing, of each Financing Transaction as a cost of sale of each Financing Transaction, a cash transaction fee equal to (1) three percent (3.0%) of the Proceeds of any debt capital raised, and (2) five percent (5.0%) of the Proceeds of any equity or equity-linked securities raised (the "**Financing Transaction Fee**").

c.      <u>Restructuring Transaction Fee</u>.    In conjunction with the closing of any Restructuring Transaction, regardless of whether Raymond James actually procured the agreement regarding the Restructuring Transaction, the Debtors shall pay Raymond James a cash transaction fee of $1,500,000 (the "**Restructuring Transaction Fee**"). The Company shall pay the Restructuring Transaction Fee, as a cost of the Restructuring Transaction to Raymond James upon the earlier of (i) the closing of each Restructuring Transaction.

d.      <u>Business Combination Transaction Fee</u>. If any Business Combination Transaction closes, regardless of whether Raymond James actually procured the agreement regarding the Business Combination Transaction, the Company shall pay Raymond James immediately and directly out of the proceeds at the closing, as a cost of sale of such Transaction, a cash transaction fee of the greater of (a) $1,500,000 or (b) the sum of (i) 2.0% of the Transaction Value up to and including $75,000,000, plus (ii) 2.5% of the Transaction Value greater than $75,000,000 and up to and including

$125,000,000, plus (iii) 3.25% of the Transaction Value greater than $125,000,000 (the "**Business Combination Transaction Fee**").

e.  In the event that a Transaction qualifies as both a Restructuring Transaction and a Business Combination Transaction, the Company shall pay Raymond James the greater of the Business Combination Fee or the Restructuring Transaction Fee.  If more than one of the same type of Transaction closes, such as two or more Business Combination Transactions or two or more Financing Transactions, the Company shall pay to Raymond James the applicable Transaction Fee based on the aggregate Transaction Value or Proceeds, as the case may be, for such Transactions.

f.  Reimbursement of Expenses.  In addition to the fees described above, the Company agrees to reimburse Raymond James for the reasonable, actual, necessary and document expenses incurred by Raymond James in connection with the matters contemplated by the Engagement Letter.

11.  The Fee and Expense Structure is the result of arm's-length negotiations between and among the Chief Restructuring Officer on behalf of the Chapter 11 Debtors, the Chapter 7 Trustee on behalf of the Palm OpCos owned by the Chapter 7 Debtors, and Raymond James in which there was substantial dialogue and compromise.  The Chief Restructuring Officer and the Chapter 7 Trustee ultimately agreed to the Fee and Expense Structure because it is reasonable and appropriate in light of market conditions and because the Company requires the services that Raymond James has agreed to provide under the terms of the Engagement Letter.  The Fee and Expense Structure also reflects the scope and difficulty of the extensive mandate that Raymond James has undertaken and expects to undertake in connection with these bankruptcy cases and accounts for the potential of an unfavorable outcome resulting from factors outside of Raymond James's control.

12.  Raymond James believes that the Fee and Expense Structure is comparable to those generally charged by investment bankers of similar stature to Raymond James for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed monthly fee and a contingency amount, tied to the consummation and closing of the transactions

and services contemplated by the Chief Restructuring Officer, the Chapter 7 Trustee and Raymond James in the Engagement Letter.

13.     The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Raymond James's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these bankruptcy cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Raymond James and other investment banks in connection with the rendering of comparable services to clients such as the Company.

14.     The Chief Restructuring Officer, the Chapter 7 Trustee and Raymond James negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with Raymond James's services, which Raymond James renders not in parts, but as a whole. It would be contrary to the intention of Raymond James and the Company for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Raymond James's services. Instead, the Chief Restructuring Officer, the Chapter 7 Trustee and Raymond James intend that Raymond James's services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

15.     The Chief Restructuring Officer, the Chapter 7 Trustee and Raymond James also agreed upon the Fee and Expense Structure in anticipation that a substantial commitment of professional time and effort would be required of Raymond James and its professionals in connection with this engagement.

16.     Raymond James's strategic and financial expertise, as well as its significant capital-markets knowledge, financing skills, restructuring capabilities, and mergers-and-acquisitions

expertise were important factors in determining the Fee and Expense Structure.  Furthermore, the ultimate benefit to the Company, the Debtors' estates, creditors and other interested parties cannot be measured by reference to the mere number of hours to be expended by Raymond James's professionals in the performance of services.

17.     In light of the foregoing, Raymond James believes that the Fee and Expense Structure and the Indemnification Provisions set forth in the Engagement Letter are reasonable and should be approved under section 328(a) of the Bankruptcy Code.

### TIME-KEEPING AND ALLOWANCE OF FEES AND EXPENSES

18.     It is not the general practice of investment banking firms—including Raymond James—to keep detailed time records similar to those customarily kept by attorneys.  Raymond James does not ordinarily maintain contemporaneous time records in tenth-of-an-hour increments or provide or conform to a schedule of hourly rates for its professionals.  Moreover, the Fee Structure does not rely on the amount of time spent by Raymond James, but instead, is results-driven and will be determined by the ultimate success of Raymond James's efforts to successfully consummate a Transaction.  Instead, notwithstanding that Raymond James does not charge for its services on an hourly basis, Raymond James will maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professional rendering such services on behalf of the Trustee.

19.     Notwithstanding the foregoing, Raymond James intends to file a fee application for the allowance of compensation for services rendered and reimbursement of expenses incurred.  Such fee application will include time records setting forth, in a summary fashion, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour increments.  Raymond James will also maintain detailed records of any actual and necessary costs and expenses incurred in

8

connection with the services discussed above.  Raymond James's applications for compensation and expenses will be paid by the Company pursuant to the terms of the Engagement Letter and in accordance with any procedures established by the Court.

### RAYMOND JAMES'S DISINTERESTEDNESS

20.     In connection with its proposed retention in these bankruptcy cases, Raymond James undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  Specifically, Raymond James obtained from the Debtors and its representatives the names of individuals and entities that may be parties in interest in the bankruptcy cases of the Chapter 7 Debtors and the Chapter 11 Debtors (the "**Potential Parties in Interest**"), and such parties are listed on **Exhibit 1** attached hereto.[4]

21.     Raymond James has researched its electronic client databases to determine its connections with the Potential Parties in Interest (or their apparent affiliates or entities that Raymond James believes to be affiliates, as the case may be).  As Raymond James is the only entity being retained in this engagement, we have researched only the electronic client databases of Raymond James, not of all its affiliates, including RJF, to determine if Raymond James has connections with any Potential Parties in Interest, and Raymond James makes no representations as to the disinterestedness of its affiliates or their respective professionals or employees in respect of these bankruptcy cases.  To the best of my knowledge and belief, Raymond James has not represented any Potential Parties in Interest (or their apparent affiliates or entities that Raymond James believes to be affiliates, as the case may be) in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities that are creditors

---

[4]     Raymond James has not conducted a conflicts check with respect the Palm OpCos.

of, or have other relationships to, the Debtors in matters relating to these bankruptcy cases, except as set forth herein and in **Exhibit 2** attached hereto.

22.    To the best of my knowledge, no individual assignment described in **Exhibit 2** accounts for more than 1% of Raymond James's gross annual revenue.

23.    Raymond James did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Dates.

24.    The Debtors did not owe Raymond James for any fees or expenses incurred prior to the Petition Dates.

25.    Raymond James provides financial advisory and investment banking services to a wide variety of clients.  As a result, Raymond James has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to these bankruptcy cases, either individually or as part of representation of an ad hoc or official committee of creditors or interest holders.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

26.    To the best of my knowledge and belief, neither Raymond James nor I, nor any other employee of Raymond James that will provide services in connection with this engagement, has any connection with or holds any interest adverse to the Debtors, their estates, or the Potential Parties in Interest, except (i) as set forth in **Exhibit 2** and (ii) as otherwise set forth in this affidavit and below:

    a.    Raymond James is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and that may be creditors of the Debtors.  To the best of my knowledge, information, and belief, Raymond James's services to these parties were and are wholly unrelated to the Debtors, their estates, or these bankruptcy cases.

10

b.  As part of its practice, Raymond James appears in numerous cases, proceedings, and transactions involving many different professionals, some of which may represent claimants and parties in interest in these bankruptcy cases. Furthermore, Raymond James has in the past and will likely in the future be working with or against other professionals involved in these bankruptcy cases in matters unrelated to them. Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which Raymond James is to be engaged.

c.  As of the date hereof, Raymond James and its affiliates have approximately 7,500 financial advisors worldwide. It is possible that certain of Raymond James's and its affiliates' respective directors, officers, and employees may have had in the past, may currently have, or may in the future have connections to (i) the Debtors, (ii) Potential Parties in Interest in these bankruptcy cases, or (iii) funds or other investment vehicles that may own debt or securities of the Debtors or other Potential Parties in Interest.

27.  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, Raymond James has not been retained to assist any entity or person other than the Company on matters relating to, or in direct connection with, these bankruptcy cases. Raymond James will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in these bankruptcy cases; provided, however, that such services do not relate to, or have any direct connection with, these bankruptcy cases or the Debtors.

28.  Except as set forth in **Exhibit 2**, I am not related or connected to and, to the best of my knowledge, no other professional of Raymond James who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Middle District of Florida or any employee in the Office of the United States Trustee for Region 21.

29.  To the best of my knowledge, Raymond James has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

30.    Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of Raymond James, I, nor any employee of Raymond James that will work on the engagement, holds or represents any interest adverse to the Debtors or their estates, and Raymond James is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Raymond James, and its professionals and employees that will work on the engagement:

    a.    are not creditors, equity security holders, or insiders of the Debtors;

    b.    were not, within two years before the Petition Date, a director, officer, or employee of the Debtors; and

    c.    do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

31.    To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Raymond James's retention are discovered or arise, Raymond James will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: December 20, 2019
       New York, New York

                                          */s/ Geoffrey Richards*
                                          Geoffrey Richards

12

**Exhibit "1"**

**Potential Parties in Interest**

Creditor Matrix

In re Just One More Restaurant Corp.
Case No. 9:19-bk-01947-FMD

Label Matrix for local noticing
113A-9
Case 9:19-bk-01947-FMD
Middle District of Florida
Ft. Myers
Wed Dec 11 10:31:20 EST 2019

Michele L. Angell
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Bank of America, N.A.
c/o Andrew T. Jenkins, Esq.
Bush Ross, PA
PO Box 3913
Tampa, FL 33601-3913

Bruce E Bozzi, Sr.
Robert A. Schatzman, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Ave., #3200
Miami, FL 33131-2191

Caryl E. Delano
Tampa
, FL

David L. Eades
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003

Walter J Ganzi, Jr.
c/o Robert A. Schatzman, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Ave., #3200
Miami, FL 33131-2191

Stephen E. Gruendel
Moore & VanAllen
100 North Tryon St., Ste. 4700
Charlotte, NC 28202-4003

Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 E. 42nd Street
48th Floor
New York, NY 10165-3003

Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Corp.
Just One More Holding Corp.9:19-bk-01948
Jointly Administered
8955 Fontana Del Sol Way, 2nd Floor
Naples, FL 34109-4428

Marc E Kasowitz
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Sarmad M. Khojasteh
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

David S. Rosner
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Adam L. Shiff
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Adam L. Shiff, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Alan Levine, Esq.
Cooley LLP
1114 Avenue of the Americas
46th Floor
New York, NY 10036-7703

Atlanta Palm Food Corp.
c/o The Palm Atlanta
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Atlantic City Palm, LLC
c/o The Palm Atlantic City
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Bank of America, N.A.
P.O. Box 448
Location Code SC3-240-03-05
Columbia, SC 29202-0448

Bank of America, National Association
c/o Andrew T Jenkins, Esq
Bush Ross, PA
PO Box 3913
Tampa, FL  33601-3913

Boston Palm Corporation
c/o The Palm Boston
1730 Rhode Island AVe., N.W.
#900
Washington, DC 20036-3113

Bruce E Bozzi, Jr and Walter J Ganzi, Jr
c/o David S Rosner
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr
c/o Robert A Schatzman, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Bruce E Bozzi, Sr
c/o Steve J Solomon, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Bruce E Bozzi, Sr & Walter J Ganzi Jr
c/o Michele L Angell
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr and Walter J Ganzi, Jr
c/o Adam L Shiff
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr and Walter J Ganzi, Jr
c/o Marc E Kasowitz
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr and Walter J Ganzi, Jr
c/o Sarmad M Khojasteh
1633 Broadway
New York, NY 10019-6708

Bruce E. Bozzi, Sr.
2161 Gulf of Mexico Drive
Apt. 3B-1
Longboat Key, FL 34228-5230

Charlotte Palm Corporation
c/o The Palm Charlotte
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Chicago Palm, Inc.
c/o The Palm Chicago
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Claire Breen
7 Ryan Street
Syosset, NY 11791-2129

Cooley LLP
Attn: Alan Levine, Esq.
1114 Avenue of the Americas
16th Floor
New York, NY 10036-7772

Cooley LLP
Attn: Alan Levine, Esq.
1114 Avenue of the Americas
46th Floor
New York, NY 10036-7703

Cooley LLP
attn: J. Michael Kelly
101 California St., 5th Fl
San Francisco, CA 94111-5800

Coral Gables Palm Restaurant
4425 Ponce de Leon Blvd.
Ste. 140
Miami, FL 33146-1837

(c)CORPORATE CREATIONS
11380 PROSPERITY FARMS RD STE 221
PALM BEACH GARDENS FL  33410-3465

David Rosner, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

David S. Rosner, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Denver Palm Corporation
c/o The Palm Denver
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Estate of Charles Cook
c/o Meridithe Shields
58 Bluestone Court
Kingston, NY 12401-4323

Frederic S. Newman, Esq.
Hoguet Newman Regal & Kenney
10 East 40th Street
35th Floor
New York, NY 10016-0304

Gary Ganzi
74 Valleyfield Street
Lexington, MA 02421-7939

Gary Ganzi and Claire Breen
c/o Eric D. Jacobs, Esq.
 Genovese Joblove & Batista, P.A.
100 N. Tampa Street, Suite 2600
Tampa, FL 33602-5810

Gary Ganzi and Claire Breen
c/o Michael A. Friedman, Esq.
Genovese Joblove & Batista, P.A.
100 N. Tampa Street, Suite 2600
Tampa, FL 33602-5810

Gary Ganzi and Claire Breen
c/o Robert F Elgidely, Esq
Genovese Joblove & Batista, PA
200 East Broward Blv, Suite 1110
Fort Lauderdale, FL 33301-3535

Hoguet Newman Regal & Kenney, LLP
c/o Fredric S. Newman, Esq.
60 E. 42nd Street, 48th Floor
New York, NY 10165-3003

Hoteles Presidente, S.A.
Campos Eliseos 218 - 11th Fl
Polanco, CP 11560
Mexico

Ian Shapiro, Esq.
Cooley LLP
1114 Avenue of the Americas
46th Floor
New York, NY 10036-7703

Ian Shapiro, Esq.
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036-7703

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Just One More Restaurant Cor
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

LA Downtown Palm, LLC
c/o The Palm Los Angeles
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Los Angeles Palm, Inc.
c.o The Los Angeles Palm
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Miami Palm Restaurant Inc.
c/o The Palm Miami
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

NY Department of Finance
P.O. Box 3933
New York, NY 10008-3933

NYC Department of Finance
P.O. Box 3922
New York, NY 10085

NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

NYD Dept. of Health and
Mental Division of Permits
Church Street Station
P.O. Box 4081
New York, NY 10261-4081

NYS Department of Taxation
and Finance
WA Harrington Campus
Albany, NY 12227-0001

Nashville Palm Restaurant LL
c/o The Palm Nashville
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

New York State Department of Taxation &
New york State Tax & Finance Bankruptcy
Bankruptcy Section
P O Box 5300
Albany, NY 12205-0300

Northbrook Palm, LLC
2000 Northbrook Court
Northbrook, IL 60062-1411

PMC d/b/a Hedges Inn
c/o the James Lane Cafe Rest
73 James Lane
East Hampton, NY 11937

PMC d/b/a Huntting Inn
c/o The Palm East Hampton
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Beverly Hills
Restaurant, LLC
1730 Rhode Island Ave., N.W.
Suite 900
Washington, DC 20036-3113

Palm Management Corporation
1730 Rhode Island Ave., N.W.
Ste. 900
Washington, DC 20036-3113

Palm Management Corporation
1730 Rhode Island Avenue, NW
Ste. 900
Washington, DC 20036-3113

Palm New York Downtown LLC
c/o The Palm Tribeca
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Orlando Corporation
c/o The Palm Orlando
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant Puerto Rico
c/o The San Juan Palm Restau
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant of Houston
c/o The Palm Houston
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant of Las Vegas
c/o The Palm Las Vegas
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant of Philadelp
c/o The Palm Philadelphia
1730 Rhode Island Ave., N.W.
Washington, DC 20036-3101

Palm Restaurant, Inc.
c/o The Palm Too
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Troy Company, LLC
c/o The Troy Palm Restaurant
5600 Crooks Road
Troy, MI 48098-2811

Palm Tysons Too, Inc.
c/o The Palm Tysons Corner
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm West Corporation
c/o The Palm West Side
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Robert A. Schatzman, Esq.
GrayRobinson P.A.
333 S.E. 2nd Ave., Ste. 3200
Miami, FL 33131-2191

San Antonio Palm Restaurant
c/o The Palm San Antonio
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

San Diego Palm, LLC
c/o The San Diego Palm Resta
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Steven J. Solomon, Esq.
GrayRobinson P.A.
333 S.E. 2nd Ave., Ste. 3200
Miami, FL 33131-2191

Tampa Palm Restaurant, LLC
c/o The Tampa Palm Restauran
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

The Dallas Palm Restaurant
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

The Washington Palm, Inc.
c/o The Palm Washington DC
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Walter J Ganzi, Jr
c/o Robert A Schatzman, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Walter J Ganzi, Jr
c/o Steve J Solomon, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Walter J. Ganzi, Jr.
8171 Bay Colony Drive
Apt. 1902
Naples, FL 34108-7567

Benjamin E. Lambers +
Timberlake Annex
501 E. Polk Street, Suite 1200
Tampa, FL 33602-3945

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

United States Trustee - FTM +
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, FL 33602-3949

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Robert F Elgidely +
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131-1833

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Paul A Avron +
Berger Singerman LLP
One Town Center Road
Suite 301
Boca Raton, FL 33486-1014

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Gerard A McHale Jr+
McHale PA
1601 Jackson St. Suite 200
Fort Myers, FL 33901-2968

Eric D Jacobs +
Genovese Joblove & Batista, P.A.
100 North Tampa Street, Suite 2600
Tampa, FL 33602-5810

Joshua D Rievman +
Dunning Rievman & Davies, LLP
434 West 33rd Street
New York, NY 10001-2601

Fredric S. Newman +
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165-3003

Julia A May +
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Corporate Creations
11380 Prosperity Farms Road
#221E
Palm Beach Gardens, FL 33410

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Claire Breen

(u)Gary Ganzi

(u)Gary Ganzi and Claire Breen as Attorneys-i

(d)Cooley LLP
Attn: Alan Levine, Esq.
1114 Avenue of the Americas, 46th Floor
New York, NY 10036-7703

(d)Frederic S. Newman, Esq.
Hoguet Newman Regal & Kenney
10 East 40th Street, 35th Fl
New York, NY 10016-0304

(d)Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

End of Label Matrix
Mailable recipients    103
Bypassed recipients      6
Total                  109

Creditor Matrix

In re Just One More Holding Corp.
Case No. 9:19-bk-01948-FMD

Label Matrix for local noticing
113A-9
Case 9:19-bk-01948-FMD
Middle District of Florida
Ft. Myers
Wed Dec 11 10:31:56 EST 2019

Bruce E Bozzi, Sr
c/o Robert A. Schatzman, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Ave., #3200
Miami, FL 33131-2191

Caryl E. Delano
Tampa
, FL

Walter J Ganzi, Jr.
c/o Robert A. Schatzman, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Ave., #3200
Miami, FL 33131-2191

Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Bruce E Bozzi, Sr
c/o Robert A Schatzman, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Bruce E Bozzi, Sr
c/o Steve J Solomon, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Cooley LLP
Attn: Alan Levine, Esq.
1114 Avenue of the Americas, 46th Floor
New York, NY 10036-7703

Cooley LLP
attn: J. Michael Kelly
101 California St., 5th Fl
San Francisco, CA 94111-5800

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Palm Management Corporation
1730 Rhode Island Avenue, NW
Ste. 900
Washington, DC 20036-3113

Benjamin E. Lambers +
Timberlake Annex
501 E. Polk Street, Suite 1200
Tampa, FL 33602-3945

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

United States Trustee - FTM +
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, FL 33602-3949

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

End of Label Matrix
Mailable recipients    17
Bypassed recipients     0
Total                  17

Creditor Matrix

In re Bruce E. Bozzi, Sr.
Case No. 9:19-bk-09677-FMD

Label Matrix for local noticing
113A-9
Case 9:19-bk-09677-FMD
Middle District of Florida
Ft. Myers
Wed Dec 11 10:27:22 EST 2019

Bank of America, N.A.
Bush Ross PA
c/o Andrew T. Jenkins, Esq.
PO Box 3913
Tampa, FL 33601-3913

Bruce E. Bozzi Sr.
2161 Gulf of Mexico Drive
Longboat Key, FL 34228-5230

Caryl E. Delano
Tampa
, FL

Bank of America
Global Commercial Banking
1301 Gervais Street, Suite 2020
SC3-230-20-02
Columbia, SC 29201-3354

Bank of America
PO Box 660576
Dallas, TX 75266-0576

Bank of America, N.A.
c/o Andrew T. Jenkins
Post Office Box 3913
Tampa, Florida 33601-3913

Briargrove Retail LP
One Riverway, Suite 100
Houston, TX 77056-1962

Claire Breen
c/o Frederic Newman, Esq.
Hoguett Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Cooley LLP
101 California Street, 5th F
San Francisco, CA 94111-5800

Estate of Charles Cook
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60E. 42nd St., 48th Floor
New York, NY 10165-3003

Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Gary Ganzi
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

INTERNAL REVENUE SERVICE
P O BOX 7346
PHILADELPHIA,PA 19101-7346

Just One More Restaurant Corp.
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Holdings
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

Kasowitz Benson Torres LLP
16 Broadway
New York, NY 10004-1703

Victor Ganzi
126 East 56th Street, 14th Floor
New York, NY 10022-3077

Robert E Tardif Jr.+
Trustee
Post Office Box 2140
Fort Myers, FL 33902-2140

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Steven J Solomon +
GrayRobinson, PA
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Robert E Tardif, Attorney for Trustee +
Robert E. Tardif, Jr., P.A.
Post Office Box 2140
Fort Myers, FL 33902-2140

United States Trustee - TPA7/13 +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Robert F Elgidely +
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131-1833

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Joshua D Rievman +
Dunning Rievman & Davies, LLP
434 West 33rd Street
New York, NY 10001-2601

Fredric S. Newman +
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165-3003

Megan Preusker +
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Claire Breen                              (u)Gary Ganzi                              (u)Victor F. Ganzi


(u)Gary Ganzi and Claire Breen as Attorneys-i     (d)Internal Revenue Service          End of Label Matrix
                                                  P.O. Box 7346                        Mailable recipients    30
                                                  Philadelphia, PA 19101-7346          Bypassed recipients     5
                                                                                       Total                  35

Creditor Matrix

In re Walter J. Ganzi, Jr.
Case No. 9:19-bk-09680-FMD

Label Matrix for local noticing
113A-9
Case 9:19-bk-09680-FMD
Middle District of Florida
Ft. Myers
Wed Dec 11 10:30:28 EST 2019

Bank of America, N.A.
Bush Ross PA
c/o Andrew T. Jenkins, Esq.
PO Box 3913
Tampa, FL 33601-3913

Tom Crouch
Benson & Mangold
116 N. Talbot Street, Suite A
Saint Michaels, MD 21663-2144

Caryl E. Delano
Tampa
, FL

Walter J. Ganzi Jr
8171 Bay Colony Drive
#1902
Naples, FL 34108-7567

Soneet R Kapila
Kapila & Company
1000 S. Federal Highway
Suite 200
Ft. Lauderdale
FL, FL 33316-1237

Bank of America
Global Commercial Banking
1301 Gervais Street, Suite 2020
SC3-230-20-02
Columbia, SC 29201-3354

Bank of America
PO Box 660576
Dallas, TX 75266-0576

Briargrove Retail LP
One Riverway, Suite 100
Houston, TX 77056-1962

Claire Breen
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Cooley LLP
101 California Street, 5th F
San Francisco, CA 94111-5800

Estate of Charles Cook
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Gary Ganzi
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Just One More Restaurant Corp.
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Holdings
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Land Rover Financial Group
1820 East Sky Harbour Circle #150
Phoenix, AZ 85034-4875

Victor Ganzi
126 Eaast 56th Street, 14th Floor
New York, NY 10022

Robert E Tardif Jr.+
Trustee
Post Office Box 2140
Fort Myers, FL 33902-2140

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Steven J Solomon +
GrayRobinson, PA
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Robert E Tardif, Attorney for Trustee +
Robert E. Tardif, Jr., P.A.
Post Office Box 2140
Fort Myers, FL 33902-2140

United States Trustee - FTM7/13 +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Robert F Elgidely +
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131-1833

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Joshua D Rievman +
Dunning Rievman & Davies, LLP
434 West 33rd Street
New York, NY 10001-2601

Fredric S. Newman +
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East, 42nd Street, 28th Floor
New York, NY 10165-3003

Megan Preusker +
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Claire Breen                     (u)Gary Ganzi                          (u)Victor F. Ganzi




(u)Gary Ganzi and Claire Breen as Attorneys-i      End of Label Matrix
                                                   Mailable recipients    32
                                                   Bypassed recipients     4
                                                   Total                  36

**Exhibit "2"**

December 19, 2019

| Company | Symbol | Deal Status | Relationship to Debtors | Raymond James Relationship |
|---|---|---|---|---|
| Berger Singerman | Private | Active | Counsel | No connection other than professional relationship with Berger Singerman law firm which is disclosed in the Raymond James standard affidavit. |
| Bank of America | BAC | Active | Lender | 1) Raymond James Bankers have standard professional relationships with Bank of America. 2) Bank of America is an investor in nine propietary funds with Raymond James in which it is the sole investor. RJTCF receives acquisition fees related to Bank of America's investment in the low-income housing projects fund. 3) GEIB has a current business relationship with Bank of America N.A in which it has received commissions 4) Bank of America is one of Raymond James Corporate Banking's largest Agent Banks 5) Covered by Fixed Income Group |
| The Internal Revenue Service (IRS) | Private | Active | IRS | Company tax returns and audits |
| Cooley LLP | Private | Active | Counsel | Professional relationship with Cooley LLP |
| Kasowitz Benson Torres | Private | Active | Counsel | Professional relationship with Kasowitz Benson Torres |

**Exhibit "C"**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,          Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]       (Jointly Administered with
                                          Case No. 9:19-bk-1948)
      Debtors.                            Chapter 11 Cases
_____/

In re:

BRUCE E. BOZZI, SR.,                      Case No. 9:19-bk-09677-FMD
                                          Chapter 7
      Debtor.
_____/

In re:

WALTER J. GANZI, JR.,                     Case No. 9:19-bk-09680-FMD
                                          Chapter 7
      Debtor.
_____/

---

[1]    The last four digits of each Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081).  The address of the Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

9470816-5

**ORDER GRANTING**
**JOINT APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF RAYMOND JAMES & ASSOCIATES, INC.**
**AS INVESTMENT BANKER FOR (I) JUST ONE MORE RESTAURANT CORP.,**
**(II) JUST ONE MORE HOLDING CORP., AND (III) THE CHAPTER 7 TRUSTEE**
**ON BEHALF OF THE PALM OPCOS OWNED BY THE CHAPTER 7 DEBTORS**

**THIS MATTER** came before the Court on _____, 2019 at ____ a.m./p.m. in _____,

Florida, upon the *Joint Application for Entry of an Order Authorizing the Employment and*

*Retention of Raymond James & Associates, Inc. as Investment Banker for (i) Just One Restaurant*

*Corp., (ii) Just One More Holding Corp., and (iii) the Chapter 7 Trustee on Behalf of the Palm*

*OpCos Owned by the Chapter 7 Debtors* (Doc. ___) (the "Application")[2] and the *Declaration of*

*Geoffrey Richards in Support of the Application for Entry of an Order Authorizing the Employment*

*and Retention of Raymond James & Associates, Inc., as Investment Banker for (i) Just One More*

*Restaurant Corp., (ii) Just One More Holding Corp., and (iii) the Chapter 7 Trustee on Behalf of*

*the Palm OpCos Owned by the Chapter 7 Debtors* (the "Richards Declaration") attached to the

Application as Exhibit "B" filed by Just One More Restaurant Corp. ("JOMR") and Just One More

Holding Corp. ("JOMH" and together with JOMR, collectively, the "Chapter 11 Debtors") through

Gerard A. McHale, Jr. in his capacity as the Chief Restructuring Officer of the Chapter 11 Debtors

(the "CRO"), and Robert E. Tardif, Jr., the trustee (the "Chapter 7 Trustee") appointed in the

chapter 7 bankruptcy cases of each of Bruce E. Bozzi, Sr. ("Bozzi") and Walter J. Ganzi, Jr.

("Ganzi" and together with Bozzi, collectively, the "Chapter 7 Debtors") (together, the Chapter 11

Debtors and the Chapter 7 Debtors, collectively, the "Debtors") on behalf of each of the business

entities listed on Exhibit "A" attached to the Application (collectively, the "Palm OpCos" and

together with the Chapter 11 Debtors, collectively, the "Company") by the authority granted to the

---

[2]    Any term not explicitly defined herein shall have the meaning ascribed to it in the Application or Engagement
Letter, as applicable.

Chapter 7 Trustee by the Bankruptcy Code and the Palm OpCos Authorization Orders.   The Application requests entry of an order approving the employment of Raymond James & Associates, Inc. ("Raymond James") to, among other things, provide investment banking advisory services to the Company *nunc pro tunc* to December 12, 2019.

The Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334(b).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).   The Trustee asserts that venue is proper before this Court pursuant to 28 U.S.C. § 1408.   The Court finding that Raymond James does not hold or represent interests adverse to the Debtors' estates and is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and the relief requested in the Application being in the best interests of the Debtors, their respective estates and creditors; and after due deliberation and sufficient cause appearing therefor, does

**ORDER** as follows:

1.      The Application is GRANTED as set forth herein.

2.      The Chapter 11 Debtors and the Chapter 7 Trustee are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to employ and retain Raymond James as the Company's investment banker in accordance with the terms and conditions set forth in the Application and the Engagement Letter[3], which terms and conditions of the Engagement Letter are approved and incorporated herein by reference, subject to the terms of this Order, *nunc pro tunc* to December 12, 2019.

---

[3]    Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Application.

3

3.       The Chapter 11 Debtors and the Chapter 7 Trustee shall allocate the net proceeds from any Transaction amongst the Debtors' estates so that Raymond James's fees and expenses are paid from the respective bankruptcy estates of the Debtors pursuant to such allocation.  Any dispute as to allocation shall be determined by separate order(s) of this Court.

4.       Raymond James shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code from the respective bankruptcy estates of the Debtors on an administrative expense claim basis *pari passu* with other allowed administrative expense claims and in accordance with the terms of the Engagement Letter, subject to Raymond James filing a fee application, as applicable, seeking approval of the payment of its fees and expenses, pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and any other interim compensation order of this Court; provided, however that the Chapter 7 Trustee and/or the Chief Restructuring Officer, as the case may be, shall cause to be placed in an escrow account from the net proceeds obtained from the Transaction(s) the amount(s) of the Transaction Fee(s) due to Raymond James pending the Bankruptcy Court's approval of Raymond James's fee application (if applicable), and upon approval of Raymond James's fee application by the Bankruptcy Court (if applicable), Raymond James shall be paid the amount(s) awarded by the Bankruptcy Court from the funds held in the escrow account.  Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, Raymond James shall be excused from: (a) the requirement to maintain or provide detailed time records for services rendered post-petition in accordance with Local Rule 2016-1, and (b) providing or conforming to any schedule of hourly rates.  Instead, notwithstanding that Raymond James does not charge for its services on an hourly basis, Raymond James will

maintain time records in half-hour (0.5) increments, setting forth, in a summary format, a description of the services rendered and the professional rendering such services.

5.      Notwithstanding the preceding paragraph of this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right to object to Raymond James's request for compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; *provided*, *however*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in this case to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 7 and 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria.

6.      The Indemnification Provisions set forth in the Engagement Letter are approved, subject during the pendency of these chapter 7 and 11 cases to the following:

    a.      Subject to the provisions of subparagraphs (b) and (c) below, the Company is authorized to indemnify, contribute, or reimburse, and shall indemnify, contribute, or reimburse Raymond James for any claims arising from, related to, or in connection with services to be provided by Raymond James as specified in the Application, but not for any claim arising from, related to, or in connection with Raymond James's post-petition performance of any other services other than those in connection with the engagement, unless such post-petition services and the indemnification, contribution, or reimbursement therefor are approved by this Court;

    b.      The Company shall have no obligation to indemnify Raymond James, or provide contribution or reimbursement to Raymond James, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Raymond James's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith, or self-dealing; (ii) for a contractual dispute in which the Company alleges the breach of Raymond James's contractual obligations, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to relevant law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) below, to be a claim or expense for which Raymond James

5

should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

c.  If, before the entry of an order closing these chapter 7 and chapter 11 cases, Raymond James believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Raymond James must file an application in this Court, and the Company may not pay any such amounts to Raymond James before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Raymond James for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Company's obligation to indemnify Raymond James. All parties in interest shall retain the right to object to any demand by Raymond James for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the obligation to indemnify Raymond James.

7.  Notwithstanding any provision in the Engagement Letter to the contrary, the contribution obligations of the Indemnified Parties (as such term is defined in the Engagement Letter) shall not be limited to the amount of fees actually received by Raymond James pursuant to the Engagement Letter, this Order, or subsequent orders of this Court.

8.  To the extent that there may be any inconsistency between the terms of the Application, the Richards Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

9.  The terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.  JOMR and JOMH through the Chief Restructuring Officer and the Chapter 7 Trustee on behalf of the Palm OpCos are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

*(Christopher Andrew Jarvinen, Esq. is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)*

6

<u>**Exhibit "D"**</u>

**The Engagement Letter**

# RAYMOND JAMES®

December 12, 2019

Just One More Restaurant Corp.
Just One More Holding Corp.
c/o Gerard A. McHale, Jr.
Chief Restructuring Officer
McHale, P.A.
1601 Jackson Street, Suite 200
Fort Myers, FL 33901

-and-

Each of the business entities listed on the attached Addendum C
c/o Robert E. Tardif Jr.
Trustee
P.O. Box No. 2140
Fort Myers, FL 33902

Dear Messrs. McHale and Tardif:

This letter agreement (this "Agreement") will confirm the terms pursuant to which (i) the chapter 11 debtor, Just One More Restaurant Corp. ("JOMR") through its Chief Restructuring Officer (defined herein), (ii) the chapter 11 debtor, Just One More Holding Corp. ("JOMH") through its Chief Restructuring Officer, and (iii) each of the business entities listed on the attached Addendum C through the Trustee (defined herein) who is authorized by title 11 of the United States Code (the "Bankruptcy Code") and orders of the Bankruptcy Court (defined herein) to exercise the ownership interests and rights of Bruce E. Bozzi, Sr. and Walter J. Ganzi, Jr. in such business entities, have jointly retained Raymond James & Associates, Inc. (as further defined below, "Raymond James," "we" or "us," and together with the Company (defined herein), each a "Party" and collectively, the "Parties") to provide the Company with certain investment banking advisory services outlined in Section 1(a) below, relating to a Transaction (as defined in this Agreement), including the terms of any such services provided by Raymond James before the date of this Agreement.

For purposes of this Agreement:

-Certain Parties:

(a) "Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Florida having jurisdiction over the chapter 11 bankruptcy cases of JOMR and JOMH (Bankruptcy Court, Case Nos. 9:19-bk-1947-FMD and 9:19-bk-1948-FMD) and the chapter 7 bankruptcy cases of Bruce E. Bozzi, Sr and Walter J. Ganzi, Jr. (Bankruptcy Court, Case Nos. 9:19-bk-09677-FMD and 9:19-bk-09680-FMD).

(b) "Chief Restructuring Officer" means Gerard A. McHale, Jr. and McHale, P.A., the Chief Restructuring Officer of the jointly-administered chapter 11 cases of JOMR (Bankruptcy Court, Case No. 9:19-bk-1947-FMD) and JOMH (Bankruptcy Court, Case No. 9:19-bk-1948-FMD).

(c) "Company" means, each and collectively, (i) the chapter 11 debtor, JOMR, through its Chief Restructuring Officer, (ii) the chapter 11 debtor, JOMH, through its Chief Restructuring Officer, and (iii) each of the business entities listed on the attached Addendum C through the chapter 7 Trustee who

December 12, 2019
Page 2

has been authorized to exercise the ownership interests and rights of Bruce E. Bozzi, Sr and Walter J. Ganzi, Jr. in such entities by the Bankruptcy Code and orders entered by the Bankruptcy Court.[1]

(d)  "Interested Party" means any financial and/or strategic institutional investors or other investors or third parties who may be interested in participating in the particular Transaction.

(e)  "Raymond James" means Raymond James & Associates, Inc. and any non-U.S. affiliate of Raymond James & Associates, Inc. that may assist in the provision of Services (as defined below) under this Agreement.

(f)  "Trustee" means Robert E. Tardif, Jr., the trustee appointed in the chapter 7 bankruptcy cases of Bruce E. Bozzi, Sr. (Bankruptcy Court, Case No. 9:19-bk-09677-FMD) and Walter J. Ganzi, Jr. (Bankruptcy Court, Case No. 9:19-bk-09680-FMD).

-Certain Transaction-Related Terms:

(a)  "Definitive Agreement" means the definitive written agreement regarding a Transaction.

(b)  "Financing Transaction" means any transactions, arrangements or undertakings (however effectuated) involving the issuance of debt, securities exchangeable or convertible into common or preferred stock, or equity or equity-linked securities (including royalties, profit sharing and other similar financing transactions) for or on behalf of the Company or securing loans or credit facilities for the Company (whether to raise funds, refinance outstanding securities or exchange securities or any combination thereof, provided that any such transaction involves the receipt by the Company of new consideration as opposed to the restructuring, renegotiation, forgiveness, or exchange with or by the holder of any outstanding debt obligations or equity securities of the Company, which would constitute a Restructuring Transaction (as defined herein)) or such other financing of any type committed to complete any other Transaction, and further provided that any such transaction described in this paragraph is acceptable in form and substance to the Company and its counsel and is approved by the Bankruptcy Court.

(c)  "Restructuring Transaction" means any recapitalization, reorganization, restructuring, sale or transfer (however effectuated) of the Company's existing equity and/or debt obligations (including, without limitation, bank debt, bond debt, trade claims, lease obligations (both on and off balance sheet), partnership interests, membership interests, unfunded pension and retiree medical liabilities, tax claims, litigation claims and other liabilities (collectively, "Existing Obligations")) that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations, amendment or renegotiation of terms, conditions or covenants, rescheduling of maturities, change in

---

[1] *See* "Order Granting Amended Motion for Entry of An Order Authorizing the Trustee to Exercise Debtor's Rights and Interests in Corporate Entity" entered by the Bankruptcy Court in the separate chapter 7 cases of Bruce E. Bozzi Sr. (Case No. 9:19-bk-09677-FMD, Doc. 58) and Walter J. Ganzi, Jr. (Case No. 9:19-bk-09680-FMD, Doc. 55).

For the avoidance of doubt, it is within the scope of Raymond James' engagement in this Agreement to market and to sell the respective ownership interests of Bruce E. Bozzi, Sr. and/or Walter J. Ganzi, Jr. in, and/or the assets of, (i) JOMR, (ii) JOMH, and/or (iii) the entities owned entirely or in part by Bruce E. Bozzi, Sr. and Walter J. Ganzi, Jr. which are listed on the attached Addendum C, as the case may be, in one or more Transactions pursuant to the business judgment of the Chief Restructuring Officer and the Trustee and as effectuated through one or more orders of the Bankruptcy Court. Moreover, the allocation of the net sale proceeds from all Transactions (as defined herein) with respect to the estates of JOMR, JOMH, Bruce E. Bozzi, Sr. and Walter J. Ganzi, Jr. shall be determined by separate order(s) of the Bankruptcy Court.

December 12, 2019
Page 3

interest rates, repurchase, settlement, cancellation or forgiveness of the Existing Obligations, conversion of the Existing Obligations into equity, an exchange offer involving new securities in exchange for the Existing Obligations, or other similar transaction or series of transactions, and provided that any such transaction described in this paragraph is acceptable in form and substance to the Company and its counsel and is approved by the Bankruptcy Court.

(d)     "Business Combination Transaction" means (i) the sale or transfer (however effectuated) of all or a substantial portion of the business, revenues, income, operations or assets (including the assignment of any executory contracts) of the Company or any its business units to, the sale or transfer (however effectuated) of a majority voting or economic interest in the Company's securities or control of the Company to, or the merger of the Company with, one or more Interested Parties (including, without limitation, existing creditors, employees, affiliates and/or securityholders), or any other possible strategic transactions, joint ventures, combinations or undertakings between or involving the Company and one or more Interested Parties; and/or (ii) the acquisition, directly or indirectly by an Interested Party (as defined below) (or by one or more persons or entities acting together with an Interested Party pursuant to a written agreement or otherwise), in a single transaction or a series of transactions, of (A) all or a substantial portion of the assets or operations of the Company or (B) any outstanding or newly-issued shares of the Company's equity securities (or any securities convertible into, or options, warrants or other rights to acquire such equity securities) (such equity securities and such other securities, options, warrants and other rights being collectively referred to as "Company Securities") that results in holders of shares of the Company's equity securities immediately prior thereto owning less than a majority voting or economic interest in the Company's securities or control of the Company immediately thereafter, and provided that any such transaction described in this paragraph is acceptable in form and substance to the Company and its counsel and is approved by the Bankruptcy Court.

(e)     "Transaction" means any Financing Transaction, Restructuring Transaction, or Business Combination Transaction.

(f)     "Transaction Fee" means any Financing Transaction Fee, Restructuring Transaction Fee, and/or Business Combination Transaction Fee (as such terms are defined in Section 2 below).

1.     **Investment Banking Advisory Services**

(a)     The Company hereby engages Raymond James as its sole and exclusive investment banking advisor regarding a potential Transaction, and Raymond James will provide the following services to the extent requested by the Company (the "Services"):

(i)     Assist the Company in reviewing and analyzing the Company's business, operations, properties, financial condition and Interested Parties;

(ii)     Assist the Company in evaluating potential Transaction alternatives and strategies;

(iii)     Assist the Company in preparing documentation within our area of expertise that is required in connection with a Transaction;

(iv)     Assist the Company in identifying Interested Parties regarding one or more particular Transactions;

(v)     On behalf of the Company, contact Interested Parties which Raymond James, after consultation with the Chief Restructuring Officer, the Trustee and their counsel, believe

December 12, 2019
Page 4

<div style="margin-left:4em">meet certain industry, financial, and strategic criteria and assist the Company in negotiating and structuring a Transaction;</div>

(vi)    Advise the Company as to potential Transactions;

(vii)    Advise the Company on tactics and strategies for negotiating with holders of the Company's debt or other claims of the Company ("Stakeholders"); and

(viii)    Upon request, provide periodic status reports to the Company with respect to matters falling within the scope of Raymond James' retention.

(b)    The Chief Restructuring Officer, on behalf of JOMR and JOMH, shall file an application jointly with the Trustee (per Section 1(c) below) to retain Raymond James and to request such application to be considered on an expedited basis. Such application shall seek authorization from the Bankruptcy Court to retain Raymond James pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code in accordance with the terms hereof and Addendum A attached to this Agreement and not subject to any other standard or review under Section 330 of the Bankruptcy Code. JOMR and JOMH shall supply Raymond James with a draft of such application and any proposed order authorizing Raymond James' retention sufficiently in advance of their filing to enable Raymond James and its counsel to review and comment thereon. Services under this Agreement shall be subject to the entry of a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition (the "Retention Order") approving the retention of Raymond James and this Agreement under Section 328(a) of the Bankruptcy Code, and Raymond James shall not be required to perform any services in a Chapter 11 bankruptcy case pursuant to this Agreement until the entry of the Retention Order. In any event, the Retention Order must be reasonably acceptable to Raymond James in all respects, and at a minimum shall approve the terms of this Agreement, including, without limitation, our agreement that: (i) none of the fees shall constitute a "bonus" under applicable law; (ii) Raymond James shall not be required to maintain time records; and (iii) Raymond James shall be entitled to be paid in accordance with the terms of this Agreement, without further application to the Court. If the Retention Order is not obtained (or is later terminated or set aside for any reason), either party may terminate this Agreement and the Company shall reimburse Raymond James for all professional fees and out of pocket expenses reasonably incurred prior to such date of termination, unless prohibited from doing so by applicable law and/or the Bankruptcy Court.

(c)    The Trustee shall file an application jointly with the Chief Restructuring Officer (per Section 1(b) above) to retain Raymond James and to request such application to be considered on an expedited basis. Such application shall seek authorization from the Bankruptcy Court to retain Raymond James pursuant to (and subject to the standard of review of) Section 328(a) of the Bankruptcy Code in accordance with the terms hereof and Addendum A attached to this Agreement and not subject to any other standard or review under Section 330 of the Bankruptcy Code. The Trustee shall supply Raymond James with a draft of such application and any proposed order authorizing Raymond James' retention sufficiently in advance of their filing to enable Raymond James and its counsel to review and comment thereon. Services under this Agreement shall be subject to the entry of a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition (the "Retention Order") approving the retention of Raymond James and this Agreement under Section 328(a) of the Bankruptcy Code, and Raymond James shall not be required to perform any services in a Chapter 11 bankruptcy case pursuant to this Agreement until the entry of the Retention Order. In any event, the Retention Order must be reasonably acceptable to Raymond James in all respects, and at a minimum shall approve the terms of this Agreement, including, without limitation, our agreement that: (i) none of the fees shall constitute a "bonus" under applicable law; (ii) Raymond James shall

December 12, 2019
Page 5

not be required to maintain time records; and (iii) Raymond James shall be entitled to be paid in accordance with the terms of this Agreement, without further application to the Court. If the Retention Order is not obtained (or is later terminated or set aside for any reason), either party may terminate this Agreement and the Company shall reimburse Raymond James for all professional fees and out of pocket expenses reasonably incurred prior to such date of termination, unless prohibited from doing so by applicable law and/or the Bankruptcy Court.

(d)     Raymond James will not provide any legal, regulatory, accounting, appraisal, or tax advice, or develop any tax strategies, or provide any opinion, for the Company. If the Company requests that Raymond James provide any services other than those Services expressly set out in Section 1(a), the Company and Raymond James will enter into an additional agreement that will set forth the nature and scope of such services, appropriate compensation and other customary matters, as mutually agreed between the Company and Raymond James.

(e)     Each of the entities included within the meaning of the term "Company" shall be jointly and severally liable for the obligations of the Company under this Agreement; provided, however, that for the avoidance of doubt, neither the Chief Restructuring Officer nor the Trustee shall have any personal liability for the obligations of the Company under this Agreement. The Company expressly acknowledges that Raymond James does not guarantee, warrant or otherwise provide assurance that the Company will be able to implement or consummate any Transaction or achieve any other result.

(f)     During the term of this Agreement, the Company will proceed only through Raymond James and will not directly or through others negotiate any Transaction, unless agreed in writing by Raymond James (an email being sufficient). If, during the term of this Agreement, the Chief Restructuring Officer or the Trustee receives any inquiry or offer from any third party concerning a potential Transaction involving the Company, the Chief Restructuring Officer or the Trustee, as the case may be, will refer all such inquiries or offers to Raymond James and promptly provide Raymond James with the names and contact information in his possession of all inquirers or offerors.

(g)     In connection with Raymond James rendering the Services under this Agreement, the Company will, as Raymond James may reasonably request, (i) provide the necessary assistance, participation, and information reasonably required at all steps and shall cause management to be reasonably available, and (ii) furnish, and cause management to furnish, Raymond James such information, data and cooperation relating to the Company and any potential or actual Transaction as Raymond James may reasonably request, including, but not limited to, providing assistance, participation and cooperation in disseminating descriptive materials and participation in conference calls, meetings and other communications with Interested Parties and their advisors and representatives.

(h)     Anti-Money Laundering (AML) and Customer Due Diligence (CDD) Compliance: U.S. federal laws and regulations, including, but not limited to, Section 326 of the USA PATRIOT Act of 2001, as amended, and regulations promulgated thereunder, require Raymond James to collect certain identification elements and perform certain subsequent screening (the "AML/CDD Search Process") before engaging in investment banking engagements with the Company. Accordingly, upon the Company's execution and delivery of this Agreement, the Company shall deliver to Raymond James a completed and signed form, as set forth in Addendum B attached to this Agreement (the "AML/CDD Form"), together with all applicable supporting documentation called for under the AML/CDD Form. After conducting the AML/CDD Search Process, Raymond James shall promptly notify the Company in writing if Raymond James determines in its sole discretion that it cannot provide the Services contemplated under this Agreement. In such event, this Agreement and our engagement with the Company shall be void and of no force or effect ab initio. The Parties acknowledge and agree that (i) the effectiveness of this Agreement is contingent upon Raymond James's receipt of the AML/CDD

December 12, 2019
Page 6

> Form and Raymond James's satisfactory completion in its reasonable determination of the AML/CDD Search Process and (ii) Raymond James shall not be responsible for any losses or damages (including, but not limited to, lost opportunities) that may result if this Agreement and our engagement hereunder are terminated for the Company's or its beneficial owners' failure to provide aforementioned AML/CDD Form or other required or information documentation upon request.

2. **Fees** - In consideration of Raymond James's agreement to provide the Services as described in Section 1(a), the Company shall pay Raymond James as set forth in this Section 2, by wire transfer of immediately available funds via wire transfer instructions set forth in Raymond James's invoice for such amounts to the Company:

   (a) <u>Monthly Advisory Fee and Database Expense Amount</u> – The Company will pay Raymond James a monthly advisory fee in the amount of $35,000 per month on the first business day of every month hereafter during the term of this Agreement (collectively, the "<u>Advisory Fees</u>").

   (b) <u>Financing Transaction Fee</u>[2] –

       (i) If any Financing Transaction closes, whether on a stand-alone basis or to consummate any other Transaction and regardless of whether Raymond James actually procured the agreement regarding the Financing Transaction, the Company shall pay Raymond James immediately and directly out of the proceeds of the placement, at closing, of each Financing Transaction as a cost of sale of each Financing Transaction, a cash transaction fee (the "<u>Financing Transaction Fee</u>") equal to (1) three percent (3.0%) of the Proceeds of any debt capital raised, and (2) five percent (5.0%) of the Proceeds of any equity or equity-linked securities raised.

       (ii) For the purposes of this Agreement:

           (A) A "<u>commitment</u>" shall occur if either (1) the Interested Party(ies) is contractually obligated to provide funds in connection with a Financing Transaction, or (2) the Interested Party(ies) assesses a commitment fee or loan fee in connection with a Financing Transaction; provided, however, that any commitments described in this paragraph must be acceptable in form and substance to the Company and its counsel and approved by the Bankruptcy Court.

           (B) "<u>Proceeds</u>" means the gross consideration, before the deduction of any fees (including any Financing Transaction Fee), expenses (including any Expenses, as defined below) or other costs, received by, contributed to or invested in the Company, or the amounts of binding commitments (not based on the amount actually drawn or available at close) received for such Financing Transaction, in any form (including, but not limited to, cash or securities of any other party to such Financing Transaction, including the exercise price of any options or warrants received by or contributed to the Company). If such consideration is not in the form of cash then for the purpose of calculating the Proceeds, such consideration shall be valued at its then fair market value. For the avoidance of doubt, "<u>Proceeds</u>" shall include any subsequent increase in Proceeds received by or committed to the Company in an initial or secondary Financing Transaction, during the

---

[2]    For the limitation of the total Transaction Fee due to Raymond James for a Financing Transaction, Restructuring Transaction or Business Combination Transaction, please see Section 2(e).

December 12, 2019
Page 7

term of this Agreement and the Tail Period (as defined below), whether pursuant to an amendment and/or any accordion, a replacement credit facility, or otherwise, in which any Interested Party participates.

(c)   Restructuring Transaction Fee[3] – In conjunction with the closing of any Restructuring Transaction, regardless of whether Raymond James actually procured the agreement regarding the Restructuring Transaction, the Company shall pay Raymond James a cash transaction fee of $1,500,000 (the "Restructuring Transaction Fee"). The Company shall pay the Restructuring Transaction Fee, as a cost of the Restructuring Transaction to Raymond James upon the earlier of the closing of each Restructuring Transaction.

(d)   Business Combination Transaction Fee[4] –

(i)     If any Business Combination Transaction closes, regardless of whether Raymond James actually procured the agreement regarding the Business Combination Transaction, the Company shall pay Raymond James immediately and directly out of the proceeds at the closing, as a cost of sale of such Transaction, a cash transaction fee of the greater of (a) $1,500,000 or (b) the sum of (i) 2.0% of the Transaction Value up to and including $75,000,000, plus (ii) 2.5% of the Transaction Value greater than $75,000,000 and up to and including $125,000,000, plus (iii) 3.25% of the Transaction Value greater than $125,000,000 (the "Business Combination Transaction Fee").

(ii)    As used in this Agreement, "Transaction Value" means the total gross consideration paid, payable or received directly or indirectly, in connection with a Business Combination Transaction, regardless of the form of consideration or how any consideration is allocated or distributed in connection with a Business Combination Transaction, including, without limitation or duplication: (A) cash, notes, and debt; (B) equity securities or other non-cash consideration, including any warrants and convertible securities, as well as options or stock appreciation rights, whether or not vested, which have the value determined in accordance with Section 2(d)(iv) below; (C) the total amount of any indebtedness for borrowed money or similar non-trade debt-like liabilities (including preferred securities, pension liabilities, guarantees, capitalized leases and the like) as well as trade or accounts payable of the Company repaid, retired, extinguished, discounted, redeemed, refinanced, credit-bid, or assumed in connection with a Business Combination Transaction, or which otherwise remain outstanding as of the closing (other than such liabilities that are not assumed by the Interested Party in an asset sale Business Combination Transaction); and (D) any Future Contingent Payments or Fixed Deferred Payments, as such terms are defined below.

(iii)   Transaction Value shall also include, without duplication: (A) amounts paid to the Company's equity holders in connection with a Business Combination Transaction, but not in the ordinary course of business, in the form of dividends, capital distributions, or partial or liquidating distributions; (B) any extraordinary payments made in connection with a Business Combination Transaction to management executives and/or other employees of the Company (regardless of whether they are holders of equity interests), including but not limited to bonuses (including "stay" bonuses), non-compete payments or similar payments made in in connection to the

---

[3]   For the limitation of the total Transaction Fee due to Raymond James for a Financing Transaction, Restructuring Transaction or Business Combination Transaction, please see Section 2(e).

[4]   For the limitation of the total Transaction Fee due to Raymond James for a Financing Transaction, Restructuring Transaction or Business Combination Transaction, please see Section 2(e).

December 12, 2019
Page 8

Business Combination Transaction; and (C) any payments made to the Company or its affiliates under a transition services agreement or licensing agreement entered into in connection with the Business Combination Transaction.

(iv) For the purpose of calculating Transaction Value, any securities (other than a promissory note) will be valued as follows (without regard to any restrictions on transferability): (A) if such securities are traded on a securities exchange, the securities will be valued at the greater of (x) the fair market value of such securities as of the date on which the Definitive Agreement is executed by all parties to the Definitive Agreement and (y) the average last sale or closing price for the 20 trading days immediately before the closing of the Business Combination Transaction; (B) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a 20 trading-day period immediately before the closing of the Business Combination Transaction; and (C) if such securities have not been traded before the closing of the Business Combination Transaction, the securities will be valued at the fair market value thereof as of the day before the closing of the Business Combination Transaction, as such fair market value shall be mutually agreed by Raymond James and the Company acting in good faith. The value of any purchase money or other promissory notes, installment sales contracts or other deferred non-contingent consideration shall be deemed to be the face amount thereof, and shall be included as part of the Transaction Value for the purpose of determining the Business Combination Transaction Fee. Any other non-cash consideration shall be valued at the fair market value thereof as of the day before the closing of the Business Combination Transaction, as such fair market value shall be mutually agreed by Raymond James and the Company acting in good faith.

(v) Transaction Value shall also include any payments made in connection with any separate but related transaction or transactions with or affecting any securityholder or another business entity or any of its assets or securities (e.g., a purchase or lease of any real estate or other assets), but in the case of a lease of any real estate or other assets, Transaction Value shall include only sums in excess of current rentals paid to unrelated or unaffiliated third-parties.

(vi) If a Business Combination Transaction is effected as a merger between the Company and the Interested Party, Transaction Value shall refer only to the Company and not to the combined entity.

(vii) If any portion of the Transaction Value consists of contingent payments, including earnouts, payments based upon future contingencies (but not including any Fixed Deferred Payments (as defined in this Agreement) not contingent on future performance) or promissory notes contingent on future events (as applicable, "Future Contingent Payments"), then that portion of the Business Combination Transaction Fee attributable to the Future Contingent Payments shall be payable (A) at the closing, based on the present fair market value of such Future Contingent Payments if mutually agreed upon in writing by the Company and Raymond James, or (B) if the Parties cannot mutually agree on such present fair market value, then when and if such Future Contingent Payments are received by the securityholders of the Company (or by the Company in an asset sale Business Combination Transaction).

(viii) The Business Combination Transaction Fee attributable to any Transaction Value fixed at the closing, including any Transaction Value placed or held in escrow, payable under an installment sale arrangement, or represented by the principal amount of any promissory notes issued at the closing ("Fixed Deferred Payments"), shall be paid to Raymond James at the closing.

December 12, 2019
Page 9

    (ix)    Transaction Value shall be based on Transaction Value before payment of any expenses related to the Business Combination Transaction, including payment of the Business Combination Transaction Fee, any costs described in Section 3(a) below, and any transaction fees, management fees or similar remuneration contracted for or paid to any financial sponsor of the Interested Party or the Company at or in anticipation of the Closing.

    (x)    If an Interested Party acquires in a Business Combination Transaction, however effected, fifty percent (50%) or more but less than one hundred percent (100%) of the aggregate value of Company's securities (including preferred securities and debt), business, revenues, income or assets (including, for example, in the case of a portion of the securities held by the Company's securityholders retained or "rolled over" into the Interested Party's or its affiliate's securities), the Business Combination Transaction Fee shall be calculated based upon the total implied Transaction Value, as if all of the aggregate value of Company's assets or securities had been acquired or sold, including the value of any retained or "rolled over" securities.

(e)    In the event that a Transaction qualifies as both a Restructuring Transaction and a Business Combination Transaction, the Company shall pay Raymond James the greater of the Business Combination Fee or the Restructuring Transaction Fee. If more than one of the same type of Transaction closes, such as two or more Business Combination Transactions or two or more Financing Transactions, the Company shall pay to Raymond James the applicable Transaction Fee based on the aggregate Transaction Value or Proceeds, as the case may be, for such Transactions.

3.    **Reimbursement of Expenses and Company Professional Fees** –

(a)    Regardless of whether a Transaction is consummated, the Company shall reimburse Raymond James, upon the earlier of (i) thirty (30) days of its receipt of an invoice from Raymond James or (ii) the closing of any Transaction, by wire transfer of immediately available funds via wire transfer instructions set forth in Raymond James's invoice for such amounts to the Company, for all reasonable, actual, necessary and documented, expenses (including, without limitation, the reasonable, actual, necessary and documented, fees and disbursements of any outside legal counsel retained by Raymond James) incurred by Raymond James in connection with entering into and performing the Services pursuant to this Agreement ("Expenses"); provided, however, if Raymond James seeks reimbursement from the Company for attorney's fees and/or expenses pursuant to this Agreement, (i) Raymond James shall not charge an expense based upon a uniformly applied monthly assessment or percentage of fees due, but rather will only charge for the reasonable, actual, necessary and documented, expenses that are incurred, and (ii) the invoices and supporting time records for the legal counsel's fees and expenses shall be included in Raymond James's own interim and/or final fee applications, and such invoices and time records shall be in compliance with the Bankruptcy Court's guidelines and Local Rules, and, notwithstanding anything to the contrary in this Agreement, these invoices and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, as the case may be, without regard to whether such legal counsel has been retained under section 327 of the Bankruptcy Code, and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

(b)    The Company shall also bear all of its own costs it incurs in connection with any Transaction, including, without limitation, the Company's legal and accounting fees and disbursements, the costs of reproducing any descriptive materials, and any due diligence data room fees or charges.

4.    **Term** - The term of this Agreement shall commence on the date of this Agreement and shall continue until terminated by either Party upon the earlier of (i) thirty (30) days' prior written notice to the other Party or (ii) an order of the Bankruptcy Court. Notwithstanding any termination of this Agreement: (a) Sections 2,

December 12, 2019
Page 10

3, 4, 5 and 6 of this Agreement, and Addendum A attached to this Agreement shall survive any termination of this Agreement, along with any other provisions that expressly or by implication survive termination; and (b) regardless of whether Raymond James actually procured the agreement regarding the Transaction, Raymond James shall be compensated pursuant to Section 2 above if a Transaction is agreed upon or closes within twelve (12) months after any termination of this Agreement (the "Tail Period"). However, if Raymond James has not been fully reimbursed for its Expenses pursuant to Section 3 of this Agreement as of the termination date, the Tail Period shall be deemed extended and shall continue until the date on which Raymond James is fully reimbursed for its Expenses.

5.   **Indemnification** - In consideration of Raymond James signing this Agreement and agreeing to perform Services pursuant to this Agreement, the Company shall indemnify, defend and hold harmless Raymond James and each of its directors, officers, agents, employees, affiliates and controlling persons (within the meaning of the U.S. Securities Act of 1933, as amended, and the U.S. Securities Exchange Act of 1934, as amended), to the extent and as provided in Addendum A attached to this Agreement and incorporated by reference into this Agreement.

6.   **General Terms**

(a)   Following the closing of a Transaction or public announcement or disclosure thereof (i) in any initial press release or other similar announcement by the Company regarding such Transaction, the Company will seek to include in such press release or announcement a reference to Raymond James's role as investment banking advisor to the Company with respect to such Transaction, and the Company will seek to obtain Raymond James's prior written approval (email sufficing) for such reference, which approval shall not be unreasonably withheld, conditioned or delayed, and (ii) Raymond James may, at its own option and expense, disseminate announcements (such as customary "tombstone" announcements or other advertisements in financial and other newspapers and journals and marketing materials) describing Raymond James's Services under this Agreement, and may use the Company's logos or other identifying marks in any such announcement.

(b)   If Raymond James is legally required or requested by the Company or its counsel to render services directly or indirectly relating to the subject matter of this Agreement in any litigation, arbitration or regulatory proceeding (including, but not limited to, producing documents, answering interrogatories, attending depositions, or testifying at trial, and whether by subpoena, court process or order, or otherwise), the Company shall pay Raymond James's then current hourly rates for the persons involved for the reasonable, actual, necessary and documented, time expended in rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel (billed at one-half actual time incurred), and all related reasonable, actual, necessary and documented, out-of-pocket expenses (including, without limitation, the reasonable, actual, necessary and documented, fees and expenses of Raymond James's legal counsel incurred in connection with such services); provided, however, if Raymond James seeks reimbursement from the Company for attorney's fees and/or expenses pursuant to this Agreement, (i) Raymond James shall not charge an expense based upon a uniformly applied monthly assessment or percentage of fees due, but rather will only charge for the reasonable, actual, necessary and documented, expenses that are incurred, and (ii) the invoices and supporting time records for the legal counsel's fees and expenses shall be included in Raymond James's own interim and/or final fee applications, and such invoices and time records shall be in compliance with the Bankruptcy Court's guidelines and Local Rules, and, notwithstanding anything to the contrary in this Agreement, these invoices and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, as the case may be, without regard to whether such legal counsel has been retained under section 327 of the Bankruptcy Code, and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

December 12, 2019
Page 11

(c)     The Company recognizes and confirms that Raymond James, in the performance of its Services under this Agreement: (i) may rely upon such information received from the Company, Interested Parties or their respective advisors, without independent verification by Raymond James; and (ii) does not assume responsibility for the accuracy or completeness of such information received from the Company, Interested Parties or their respective advisors, whether or not Raymond James makes an independent verification of such information.

(d)     In connection with this Agreement, the term "Confidential Information" means (i) confidential business or technical information or data of the Company that is competitively and commercially valuable to the Company and not generally known, or available by legal means, to the competitors of the Company or (ii) material nonpublic information about the Company. Raymond James agrees that during the term of this Agreement, unless the Company has consented, or unless required by law (including any applicable securities exchange listing rules), a court or agency of the government or a self-regulatory organization (e.g., Financial Industry Regulatory Authority), Raymond James will not reveal or disclose any such Confidential Information to any third-party, except to utilize such Confidential Information in a manner consistent with customary industry practices in connection with the provision of Services under this Agreement. Following the termination of this Agreement and this engagement, at the Company's written request, all such Confidential Information in Raymond James's possession will be promptly returned to the Company or, at Raymond James's option, destroyed, provided that Raymond James may retain a copy of such Confidential Information to the extent required for legal, regulatory and/or internal compliance purposes, provided further that such Confidential Information shall remain subject to the confidentiality and non-disclosure provisions of this Agreement.

Neither the previous paragraph nor any restriction, non-disclosure or use limitation or other obligation contained in this Agreement shall apply to any information, data or item of any kind that is: (i) in the public domain, through no action of Raymond James; (ii) already known by Raymond James; (iii) disclosed to Raymond James by any person or entity not known by Raymond James to be under an obligation of confidentiality to the Company; or (iv) independently developed or derived by Raymond James.

(e)     The Company is a sophisticated business enterprise with competent internal financial advisors and legal counsel, and the Company has retained Raymond James for the limited purposes set forth in this Agreement. The Parties acknowledge and agree that (i) Raymond James has been engaged solely as an investment banking advisor to the Company and (ii) the Company's engagement of Raymond James is as an independent contractor and that the Parties' respective rights and obligations as set forth in this Agreement are contractual in nature. Accordingly, the Company disclaims any intention to impose any fiduciary or agency obligations on Raymond James by virtue of the engagement contemplated by this Agreement, and Raymond James shall not be deemed to have any fiduciary or agency duties or obligations to the Company, any Interested Party, any other person or entity, or their respective officers, directors, securityholders, affiliates or creditors, as a result of this Agreement or the Services to be provided under this Agreement. The Definitive Agreement shall contain customary language that reflects that the other parties to the Transaction relied solely upon their own independent investigation and counsel before deciding to enter into the contemplated Transaction.

(f)     This Agreement may be executed in one or more counterparts, each of which shall be an original but all of which shall together constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement, by facsimile, electronic mail in portable document format (.pdf) or by any other electronic means intended to preserve the original graphic and pictorial

appearance of a document, has the same effect as delivery of an executed original of this Agreement for all purposes.

(g)    The Services provided by Raymond James under this Agreement are solely for the benefit of the Company and are not intended to, nor shall they be deemed or construed to, create any duty toward or confer any rights upon any persons or entities not a Party (including, without limitation, securityholders (in their capacities as such), employees or creditors of the Company or any Interested Party) as against Raymond James or its affiliates or their respective directors, officers, agents and employees.

(h)    Subject to the approval of this Agreement by the Bankruptcy Court, each Party to this Agreement represents and warrants to the other Parties that this Agreement has been duly authorized, executed and delivered by it; and assuming due execution by the other Party, that this Agreement constitutes a legal, valid and binding agreement, enforceable against it (as the case may be) in accordance with its terms.

(i)    All amounts payable under this Agreement (including reimbursable Expenses under Section 3 of this Agreement) shall be paid in immediately available funds in U.S. dollars, without set-off and without deduction for any withholding, value-added or other similar taxes, charges, fees or assessments.

(j)    The Company acknowledges and agrees that:

    (i)    Raymond James and its parent company and affiliated entities (collectively, the "RJ Group") is a comprehensive, international financial services firm involved in a wide range of commercial banking, investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research). As a result, the RJ Group may have previously provided services, may be currently engaged to provide, or may have solicited to provide investment banking, lending, financial advisory or other services, and may solicit or provide services in the future, to other companies in the Company's industry and related industries or other third parties, including Interested Parties, from which conflicting interests or duties may arise. In addition, during the term of this Agreement, the RJ Group may solicit or provide investment banking, lending, financial advisory or other services unrelated to a Transaction to other companies in the Company's industry or related industries or other third parties, including Interested Parties. The Company agrees that the RJ Group may do so without any duty to notify the Company or to disclose to the Company information that Raymond James may obtain about such companies in the course of any business relationship. However, during the term of this Agreement, Raymond James shall not provide investment banking services to any Interested Party in connection with a Transaction involving the Company, provided, however, that nothing in this Agreement shall prohibit the facilitation or provision of services regarding Transaction-related financing by RJ Group personnel who are not assigned to render Services to the Company under this Agreement.

    (ii)    Information which is held elsewhere within the RJ Group, but which none of the individuals in Raymond James's Investment Banking Department involved in providing the Services under this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Raymond James's responsibilities to the Company under this Agreement. In the ordinary course of business, one or more members of the RJ Group may, from time to time, make a market in, have a long or short position in, buy and sell or otherwise effect transactions for customer accounts and for its own accounts in the securities of, or perform other services for institutional investors or other Interested Parties that Raymond James may be contacting on behalf of the Company, and/or

December 12, 2019
Page 13

any other entities who may be the subject of the engagement contemplated by this Agreement (including the Company), and the Company agrees that, subject to the first paragraph of this Section 6(j), none of those activities will conflict with the duties of Raymond James under this Agreement or shall be disclosable to the Company as a result of this Agreement.

(iii)    Raymond James and other members of the RJ Group may have business relationships with the Company and may be creditors of the Company and may act as financial advisors to clients as to which the Company is a creditor, securityholder or have other business relationships in connection with such clients' borrowings or other obligations to the Company. The Company waives any conflict of interest the RJ Group may have in connection with such business relationships. Raymond James believes that it has the requisite independence to perform the Services contemplated by this Agreement and affirms that the personnel assigned to this engagement will be subject to policies and procedures intended to prevent the unauthorized disclosure of confidential or non-public information to employees responsible for managing Raymond James's own creditor positions in relation to the Company and any third parties.

(k)    All notices, requests, consents, claims, demands, waivers and other communications under this Agreement shall be in writing and shall be deemed to have been given (i) when delivered by hand (with written confirmation of receipt); (ii) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (iii) on the date sent by e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day (in the jurisdiction in which the recipient is located) if sent after normal business hours of the recipient; or (iv) on the third (3rd) day after the date mailed, by certified or registered mail (in each case, return receipt requested, postage pre-paid). Such communications must be sent to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this Section 6(k)):

If to the            Just One More Restaurant Corp and Just One More Holding Corp.
Company:            c/o Gerard A. McHale, Jr.
                    Chief Restructuring Officer
                    McHale, P.A.
                    1601 Jackson Street, Suite 200
                    Fort Myers, FL 33901
                    Tel: 239.337.0808
                    Fax: 239.337.1178
                    Email: jerrym@thereceiver.net

                    -and-

                    Each of the business entities listed on the attached Addendum C

                    c/o Robert E. Tardif, Jr.
                    Trustee
                    P.O. Box No. 2140
                    Fort Myers, FL 33902
                    Tel: 239.362.2755
                    Fax: 239.362.2756
                    Email: rtardif@comcast.net

                    -with copy to

December 12, 2019
Page 14

> Paul Steven Singerman, Esq. and
> Christopher Andrew Jarvinen, Esq.
> Berger Singerman LLP
> 1450 Brickell Avenue, Suite 1900
> Miami, FL 33131
> Tel: 305.755.9500
> Fax: 305.714.4340
> Email: singerman@bergersingerman.com and
> cjarvinen@bergersingerman.com

If to Raymond   Raymond James & Associates, Inc.
James:          880 Carillon Parkway
                St. Petersburg, FL  33716
                E-mail: tom.donegan@raymondjames.com
                Attention: Thomas Donegan, General Counsel, Investment Banking –
                Equity Capital Markets
                Tel: 727.567.1009
                Fax: None
                Email: Tom.donegan@raymondjames.com

(l)     This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without regard to conflicts of laws principles thereof or of any other jurisdiction that would require the application of the laws of another jurisdiction. The Parties to this Agreement voluntarily submit to the jurisdiction of the Bankruptcy Court and all claims and disputes arising out of the interpretation, application or enforcement, or otherwise relating to the subject matter, of this Agreement, including, without limitation, any breach of this Agreement, shall be settled by final order of the Bankruptcy Court. TO THE EXTENT PERMITTED BY LAW, EACH OF RAYMOND JAMES AND THE COMPANY VOLUNTARILY AND IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THIS AGREEMENT, THE ENGAGEMENT OF RAYMOND JAMES PURSUANT TO, OR THE PERFORMANCE BY RAYMOND JAMES OF, THE SERVICES CONTEMPLATED BY THIS AGREEMENT.

(m)     This Agreement (and any addenda or schedules attached to this Agreement) constitute the entire agreement between the Parties regarding the subject matter of this Agreement and supersede any prior agreements or understandings, written or oral, between them. No representations, arrangements, understandings or agreements, written or oral, relating to the subject matter of this Agreement exist between the Parties except as expressed in this Agreement. No modification or amendment of this Agreement shall be binding unless in writing and signed by the Parties.

(n)     If any provision of this Agreement is determined by a court having jurisdiction to be unenforceable to any extent, the rest of that provision (if applicable) and the balance of this Agreement shall remain enforceable to the fullest extent permitted by law.

(o)     This Agreement (including any addenda or schedules attached to this Agreement) is binding upon and inures to the benefit of the Parties and their respective successors and assigns. Nothing expressed or mentioned in this Agreement is intended or shall be construed to give any person or corporation, other than the Parties hereto and their respective successors and assigns and the controlling persons, officers

December 12, 2019
Page 15

and directors and counsel referred to in this Agreement, any legal or equitable right, remedy or claim under or in respect to this Agreement or any provision of this Agreement.

(p) This Agreement has been reviewed by each of the Parties and their respective counsel. There shall be no construction of any provision against Raymond James because this Agreement was drafted by Raymond James or its counsel, and the Parties waive any statute or rule of law to such effect.

(q) If either Party does not seek compensation for breach or insist upon strict performance of any covenant or condition of this Agreement, that Party is not prevented from seeking compensation or insisting upon strict performance for a future breach of the same or other provision.

**[Signature Page Follows]**

December 12, 2019
Page 16

If this Agreement conforms to your understanding of the terms of our engagement, please sign and return this Agreement to us.

Very truly yours,

**RAYMOND JAMES & ASSOCIATES, INC.**


By: *Geoffrey Richards*                                              12/16/19
       Geoffrey Richards – Investment Banking              Signature Date


**AGREED AND ACCEPTED:**

**JUST ONE MORE RESTAURANT CORP. AND
JUST ONE MORE HOLDING CORP.**


By: _____                    _____
       Gerard A. McHale - Chief Restructuring Officer         Signature Date


**THE COMPANIES LISTED ON THE ATTACHED ADDENDUM "C"**


By: _____                    _____
       Robert E. Tardif, Jr – Chapter 7 Trustee                  Signature Date


Attachments

December 12, 2019
Page 16

If this Agreement conforms to your understanding of the terms of our engagement, please sign and return this Agreement to us.

Very truly yours,

**RAYMOND JAMES & ASSOCIATES, INC.**

By: *Geoffrey Richards*                                                    12/16/19
    Geoffrey Richards – Investment Banking                      Signature Date

**AGREED AND ACCEPTED:**

**JUST ONE MORE RESTAURANT CORP. AND
JUST ONE MORE HOLDING CORP.**

By: _____                              12/17/19
    Gerard A. McHale - Chief Restructuring Officer            Signature Date

**THE COMPANIES LISTED ON THE ATTACHED ADDENDUM "C"**

By: _____                              _____
    Robert E. Tardif, Jr – Chapter 7 Trustee                   Signature Date

Attachments

9471816-5

December 12, 2019
Page 16

If this Agreement conforms to your understanding of the terms of our engagement, please sign and return this Agreement to us.

Very truly yours,

**RAYMOND JAMES & ASSOCIATES, INC.**

By: *Geoffrey Richards*
Geoffrey Richards – Investment Banking

12/16/19
Signature Date

**AGREED AND ACCEPTED:**

**JUST ONE MORE RESTAURANT CORP. AND JUST ONE MORE HOLDING CORP.**

By: _____
Gerard A. McHale - Chief Restructuring Officer

Signature Date

**THE COMPANIES LISTED ON THE ATTACHED ADDENDUM "C"**

By: _____
Robert E. Tardif, Jr – Chapter 7 Trustee

12|17|19
Signature Date

Attachments

9471816-5

December 12, 2019
Page 17

**ADDENDUM A**

*Pursuant to the foregoing letter agreement dated December 12, 2019 (the "Agreement"), (i) Just One More Restaurant Corp. ("JOMR"), (ii) Just One More Holding Corp. ("JOMH") and (iii) the business entities listed on the attached Addendum "C" (as further described in the Agreement, the "Company"), shall indemnify, defend and hold harmless Raymond James & Associates, Inc. and Raymond James Financial, Inc. (collectively, "Raymond James") and their respective affiliates, together with their and their affiliates' respective officers, directors, managers, members, partners, securityholders, employees and agents, and each Person (as defined below), if any, who controls Raymond James or any of its affiliates within the meaning of the U.S. Securities Act of 1933, as amended, or the U.S. Securities Exchange Act of 1934, as amended (all of the foregoing are referred to collectively as "Indemnified Parties" and individually as an "Indemnified Party"), from and against any and all (a) claims, actions (including securityholder claims or actions, derivative or otherwise), demands, investigations and proceedings of any kind or nature (collectively, "Proceedings") threatened, brought or established against any Indemnified Party by any natural or non-natural person, association, governmental agency or regulatory body, including any securityholder of the Company ("Person"), and (b) losses, claims, judgments, penalties, fines, charges, costs (including professional or legal fees and other costs of litigation or other proceedings), damages, taxes, liabilities of any kind or nature, whether joint or several (collectively, "Losses"), which such Indemnified Party may suffer or incur under any statute, common law, contract, tort or otherwise (including, without limitation, all such Losses suffered or incurred in considering, preparing for, responding to, disputing, or otherwise dealing with any actual or potential Proceedings, including any Proceeding brought in connection with any Indemnified Party's right to be indemnified pursuant to this Addendum A), directly or indirectly arising out of, relating to or in connection with (i) the Agreement, the services provided in connection with the Agreement, or the exercise of Raymond James's rights under the Agreement (including this Addendum A), or (ii) any transaction referred to in the Agreement or any transaction arising out of the transactions contemplated by the Agreement (each an "Indemnified Claim"), except solely to the extent that any such Indemnified Claim is found, in a final, unappealable judgment by a court of competent jurisdiction, to have resulted solely and exclusively and as a direct and proximate cause from said Indemnified Party's willful misconduct or gross negligence (other than an action or failure to act undertaken or refrained from being undertaken at the written or express request of or with the written or express consent of the Company) (an "Excluded Act").*

*No Proceeding will be brought against any Indemnified Party to recover any Losses that the Company, its securityholders, officers, directors/managers or creditors, or any other Person in connection with any Indemnified Claim, may suffer or incur by reason of or in connection with any Indemnified Claim, and no Indemnified Party shall have any liability to the Company, its securityholders, officers, directors/managers or creditors, or any other Person by reason of or in connection with any Indemnified Claim, whether such Loss arises under any statute, common law, contract, tort or otherwise, except solely to the extent that any such Losses or liability is found, in a final, unappealable judgment by a court of competent jurisdiction, to have resulted solely and exclusively and as a direct and proximate cause from said Indemnified Party's Excluded Act. Nothing in the Agreement (including this Addendum A) shall be construed as rendering Raymond James or any other Indemnified Party liable, under any circumstances and under any theory of law, to the Company, the Company's securityholders, officers, directors/managers or creditors, or any other Person in respect of any indirect, incidental, special, consequential or punitive damages even if Raymond James or any other Indemnified Party have been advised as to the possibility thereof. The aggregate liability of all Indemnified Parties to the Company, the Company's securityholders, officers, directors/managers or creditors, and any other Person, under any statute, common law, contract, tort or otherwise, for any Loss suffered by such party arising from or in connection with the services provided under the Agreement, however the Loss is caused, shall be limited to 50% of the amount of the Transaction Fee actually received by Raymond James.*

*Raymond James or the applicable Indemnified Party will promptly notify the Company in writing if an Indemnified Party receives written notice of the commencement of any Proceeding or other Indemnified Claim*

December 12, 2019
Page 18

*against such Indemnified Party (provided, that no failure or delay by Raymond James or such Indemnified Party to so notify the Company shall relieve the Company from its obligations under this Addendum, except as and to the extent it is found, in a final, unappealable judgment by a court of competent jurisdiction, that such failure or delay actually and materially prejudiced the Company), and the Company shall immediately assume the full defense of such Proceeding or other Indemnified Claim (including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and expenses of such counsel), other than any Proceeding or other Indemnified Claim brought by the Company. In any such event the Indemnified Party may employ its own counsel and participate in the defense of such Proceeding or other Indemnified Claim, provided, that the Company shall be required to pay the fees and expenses of such counsel of the Indemnified Party only if the Company has failed to assume the defense and promptly defend such Proceeding or other Indemnified Claim using counsel reasonably satisfactory to the Indemnified Party, or such Indemnified Party is advised by counsel that a conflict of interest exists or may exist which makes representation by counsel chosen by the Company not advisable or that representation of both Parties by common counsel would be inappropriate due to actual or potential differing interests between them.*

*If for any reason (other than as specifically provided in this Addendum A) the foregoing indemnity is unavailable to an Indemnified Party or is insufficient to fully hold any Indemnified Party harmless, the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such unavailability or insufficiency in such proportion as is appropriate to reflect the relative benefits received by and fault of the Company on the one hand, and the relative benefits received by and fault of the Indemnified Party on the other hand, as well as any relevant equitable considerations. The relative benefits to the Company on the one hand and an Indemnified Party on the other hand shall be deemed to be in the same proportion as the total value paid or received or contemplated to be paid or received by the Company and its securityholders, as the case may be, whether or not the transaction contemplated by the Agreement closes, bears to the fees actually received by Raymond James pursuant to the Agreement, and the relative fault of the Company on the one hand and an Indemnified Party on the other hand shall be determined by reference to, among other things, whether any untrue or alleged untrue statement of a material fact or incorrect opinion or conclusion or the omission or alleged omission to state a material fact related to information supplied by the Company or its agents, advisors or affiliates on the one hand or by the Indemnified Party on the other hand, as well as the Parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement, opinion, conclusion or omission. Notwithstanding anything in this Addendum A to the contrary the aggregate contribution of all of the Indemnified Parties for all Indemnified Claims shall be limited to 50% of the amount of the Transaction Fee actually received by Raymond James.*

*The Company shall reimburse each Indemnified Party for all reasonable costs and expenses (including, without limitation, fees and expenses of outside counsel) incurred by the Indemnified Parties (including all such costs and expenses incurred to enforce the terms of this Addendum A) as they are incurred in connection with investigating, preparing, defending or settling or otherwise relating to any threatened or pending Proceeding for which indemnification or contribution has or could be sought by the Indemnified Party, whether or not in connection with a Proceeding in which any Indemnified Party is a named party; provided, that, if any such reimbursement is for expenses relating to a Loss that is found, in a final, unappealable judgment by a court of competent jurisdiction, to have resulted solely and exclusively and as a direct and proximate cause from said Indemnified Party's Excluded Act, such Indemnified Party shall promptly repay such amount to the Company.*

*The indemnity, contribution and expense reimbursement agreements and obligations set forth in this Addendum shall be in addition to any other rights, remedies or indemnification as to which any Indemnified Party may have or be entitled at common law or otherwise, shall survive any termination of the Agreement or completion of services under the Agreement, shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Party.*

9471816-5

December 12, 2019
Page 19

*The Company shall offer and provide such indemnification and expense advance and reimbursement as it is permitted to offer or provide pursuant to its Bylaws, Charter, Articles of Incorporation, or insurance, in each case to the fullest extent permitted by applicable law. The Company further agrees that the indemnification and expense advance and reimbursement obligations set forth in this Addendum A shall apply whether or not Raymond James or any other Indemnified Party is a formal party in any such Indemnified Claim.*

*The Company shall not settle, compromise or consent to judgment with respect to any Indemnified Claim without the prior consent of Raymond James or any Indemnified Party involved in such Indemnified Claim if any admission of wrongdoing, negligence or improper activity of any kind of or by Raymond James or such Indemnified Party is a part of such settlement, compromise or consent. The Company shall not settle, compromise or consent to judgment with respect to any pending or threatened action, suit or proceeding in respect of which indemnity could have been or could be sought under this Addendum A by any Indemnified Party, unless such settlement, compromise or consent includes an unconditional release of all Indemnified Parties from all liability on claims that are the subject matter of or arise out of such Proceeding.*

*This Addendum A shall survive any termination or completion of the engagement provided by the Agreement.*

December 12, 2019
Page 20

## ADDENDUM B

## AML/CDD FORM

## [PLEASE SEE ATTACHED]

December 12, 2019
Page 21

## ADDENDUM C [1]

Atlanta Palm Food Corporation

Atlantic City Palm, LLC

Boston Palm Corporation

Charlotte Palm Corporation

Chicago Palm, Inc. [81.62% of the equity of this entity is collectively owned by Messrs. Ganzi and Bozzi]

Denver Palm Corporation

LA Downtown Palm, LLC

Miami Palm Restaurant, Inc.

Nashville Palm Restaurant, LLC

Palm Airport, LLC

Palm Beverly Hills Restaurant Manager, LLC

Palm Management Corporation

Palm New York Downtown, LLC

Palm Orlando Corporation

Palm Philadelphia Manager, LLC

Palm Restaurant, Inc.

Palm Restaurant of Las Vegas, Inc.

Palm Restaurant of Houston, Inc.

Palm Tysons Too, Inc.

Palm West Corporation

San Antonio Palm Restaurant, Inc.

Washington Palm, Inc.

Palm Philadelphia Investor, LLC

---

[1]    Sources: Schedules filed separately in the Bankruptcy Court by Bruce E. Bozzi, Sr. (case no. 9:19-bk-09677-FMD, docket no. 35, pp. 11-13 out of 64) and Walter J. Ganzi, Jr. (case no. 9:19-bk-09680-FMD, docket no. 27, pp. 9-10 out of 58).

9471816-5