UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,                Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]            (Jointly Administered with
                                               Case No. 9:19-bk-1948)
     Debtors.                                 Chapter 11 Cases
_____/

In re:

BRUCE E. BOZZI, SR.,                           Case No. 9:19-bk-09677-FMD
                                               Chapter 7
     Debtor.
_____/

In re:

WALTER J. GANZI, JR.,                          Case No. 9:19-bk-09680-FMD
                                               Chapter 7
     Debtor.
_____/

**JOINT MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING
PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION,
(III) SCHEDULING A HEARING TO CONSIDER THE TRANSACTION,
(IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V)
APPROVING CONTRACT PROCEDURES, AND (VI) GRANTING RELATED RELIEF**
**(Expedited Hearing Requested on February 25, 2020 at 3:30 p.m.)[2]**
**(Shortened Notice Requested)**

Just One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH"

and together with JOMR, collectively, the "Chapter 11 Debtors") through Gerard A. McHale, Jr.,

---

[1] The last four digits of each Chapter 11 Debtor's (defined herein) federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081). The address of the Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

[2] The Movants (defined herein) respectfully request the Court to set this Motion for a hearing on February 25, 2020 at 3:30 p.m. which is the date and time that the Court has reserved for a hearing in the Debtors' bankruptcy cases to consider this matter.

not in his individual capacity but solely in his capacity as the Chief Restructuring Officer of the Chapter 11 Debtors (the "CRO"), and Robert E. Tardif, Jr., not in his individual capacity but solely in his capacity as the trustee (the "Trustee", and together with the CRO, collectively, the "Movants") appointed in the chapter 7 bankruptcy cases of each of Bruce E. Bozzi, Sr. ("Bozzi") and Walter J. Ganzi, Jr. ("Ganzi" and together with Bozzi, collectively, the "Chapter 7 Debtors"; together, the Chapter 11 Debtors and the Chapter 7 Debtors, collectively, the "Debtors") on behalf of the estates of the Chapter 7 Debtors and each of the business entities listed on the attached **Exhibit "A"** (collectively, the "Palm OpCos"[3] and together with the Chapter 11 Debtors, collectively, the "Company") by the authority granted to the Movants by title 11 of the United States Code (the "Bankruptcy Code") and the Palm OpCos Authorization Orders (defined herein), by and through the undersigned counsel for the Chapter 11 Debtors and the Trustee, file this motion (the "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit "B"** (the "Bidding Procedures Order"): (a) approving the procedures in connection with the solicitation and acceptance of higher and better bids (the "Bidding Procedures") substantially in the form annexed as Exhibit "1" to the Bidding Procedures Order, including the Breakup Fee and Expense Reimbursement as defined and set forth in the Purchase Agreement (the "Agreement")[4] among the Movants, on behalf of the Debtors, and Golden Nugget, LLC (together with its permitted successors, assigns and designees, the "Stalking Horse Bidder") with respect to the proposed sale (the "Sale") of substantially all of the Debtors' interests in the Company (the "Purchased Assets"); (b) scheduling the bid deadlines and the auction; (c) scheduling a hearing to consider the approval

---

[3]   Unless otherwise indicated on **Exhibit "A"**, the Chapter 7 Debtors have reported in their bankruptcy schedules filed with the Court that they own 100% of the equity interests in each of the Palm OpCos.

[4]   A copy of the Agreement is attached as Exhibit "C" to the Sale Motion (defined below) filed contemporaneously with and incorporated herein by reference. Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in the Agreement, the Bidding Procedures, or the Sale Motion, as applicable.

of the Sale (the "Sale Hearing") and setting objection deadlines with respect to the Sale on shortened notice;[5] (d) approving the form and manner of notice of the Sale and related auction (the "Auction") for the Purchased Assets, substantially in the form annexed as Exhibit "3" to the Bidding Procedures Order (the "Sale Notice"); (e) establishing procedures for the assumption and assignment of certain executory contracts of JOMR to the Stalking Horse Bidder (the "Assigned JOMR Contracts"); and (f) granting related relief.   In support of the Motion, the Movants respectfully state as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' bankruptcy cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Movants consent to the entry of a final order on this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.        The statutory predicates for the relief requested herein are (i) sections 105, 363, 365, 503, and 507 of chapter 11 of title 11 of the Bankruptcy Code, (ii) rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iii) rule 2081-1(h) of the Local Bankruptcy Rules for the Middle District of Florida (the "Local Rules").

---

[5]    In addition to the reasons set forth in this Motion in support of the Movants' request for shortened notice, the Movants respectfully direct the Court and parties in interest to the Sale Motion (defined herein) at paragraphs 35-36 for additional reasons in support of the request for shortened notice.

## BACKGROUND

-The Chapter 11 Debtors

3.       On March 7, 2019 (the "Chapter 11 Petition Date"), each of the Chapter 11 Debtors commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.       The Chapter 11 Debtors are managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       On April 9, 2019, the Court entered an order approving the employment of Berger Singerman LLP as counsel to the Chapter 11 Debtors in their bankruptcy cases (Case No. 9:19-bk-01947-FMD, Doc. 121).

6.       On April 16, 2019, the Court entered an order authorizing the Chapter 11 Debtors to appoint Gerard A. McHale, Jr. as the CRO of each of the Chapter 11 Debtors (Case No. 9:19-bk-01947-FMD, Doc. 139).

7.       On May 13, 2019, the United States Trustee filed a notice with the Court indicating that the United States Trustee will not appoint a committee of unsecured creditors.

8.       For a detailed description of the Chapter 11 Debtors, the Chapter 11 Debtors respectfully refer the Court and parties in interest to the *Declaration of Chief Restructuring Officer, Gerard A. McHale, in Support of Chapter 11 Petitions and First Day Pleadings* (Case No. 9:19-bk-01947-FMD, Doc. 7) (the "First Day Declaration") filed on the Chapter 11 Petition Date which the Chapter 11 Debtors incorporate herein by reference.

-The Chapter 7 Debtors

9.       On October 11, 2019 (the "Chapter 7 Petition Date", and together with the Chapter 11 Petition Date, collectively, the "Petition Dates"), each of the Chapter 7 Debtors commenced their cases by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

9502190-22

10.    Robert E. Tardif, Jr. has been appointed the Trustee in each of the cases of the Chapter 7 Debtors.

11.    On December 6, 2019, the Court entered orders granting the Trustee's applications to employ Berger Singerman LLP as transaction counsel to the Trustee (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 54; Ganzi, Case No. 9:19-bk-09677-FMD, Doc. 49).

12.    On December 4, 2019, the Trustee filed in each of the Chapter 7 Cases an *Amended Motion for Entry of an Order Authorizing the Trustee to Exercise the Debtor's Rights and Interests in the Corporate Entity* (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 52; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 47) (collectively, the "Initial Palm OpCos Authorization Motions").

13.    In the Initial Palm OpCos Authorization Motions, the Trustee sought authority to exercise the ownership interests of the Chapter 7 Debtors in, among other entities, the Palm OpCos, but not with respect to JOMR and JOMH.

14.    On December 11, 2019, the Court entered orders granting the Initial Palm OpCos Authorization Motions (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 58; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 55) (collectively, the "Initial Palm OpCos Authorization Orders").

15.    On February 10, 2020, the Trustee filed in each of the Chapter 7 Cases a *Supplemental Motion for Entry of an Order Authorizing the Trustee to Exercise the Debtor's Rights and Interests in Corporate Entity* (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 112; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 94) (collectively, the "Supplemental Palm OpCos Authorization Motions" and together with the Initial Palm OpCos Authorization Motions, collectively, the "Palm OpCos Authorization Motions").

16.    In the Supplemental Palm OpCos Authorization Motions, the Trustee sought authority to exercise the ownership interests in two additional entities which the Trustee's

9502190-22

investigation revealed are owned by the Chapter 7 Debtors—BB Chicago, LLC (an entity owned 100% by Mr. Bozzi) and WG Chicago, LLC (an entity owned 100% by Mr. Ganzi).

17.     At the hearing held on February 13, 2020, the Court approved the Supplemental Palm OpCos Authorization Motions (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 130 (Hearing Proceeding Memo); Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 112 (Hearing Proceeding Memo)).

18.     On February 20, 2020, the Court entered orders granting the Supplemental Palm OpCos Authorization Motions (Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 136; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 117) (collectively, the "Supplemental Palm OpCos Authorization Orders" and together with the Initial Palm OpCos Authorization Orders, collectively, the "Palm OpCos Authorization Orders").

## THE MARKETING OF THE DEBTORS' INTERESTS
## IN THE PALM RESTAURANT GROUP
## AND THE SELECTION OF THE STALKING HORSE BIDDER

19.     On December 20, 2019, the Trustee and the CRO filed a *Joint Application for Entry of an Order Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for (i) Just One Restaurant Corp., (ii) Just One More Holding Corp., and (iii) the Chapter 7 Trustee on Behalf of the Palm OpCos Owned by the Chapter 7 Debtors* (JOMR/JOMH, Case No. 9:19-bk-01947-FMD, Doc. 274; Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 77; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 70) (collectively, the "Raymond James Retention Application").

20.     On December 30-31, 2019, the Court entered separate orders granting the Raymond James Retention Application *nunc pro tunc* to December 12, 2019 (JOMR/JOMH, Case No. 9:19-

6

bk-01947-FMD, Doc. 278; Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 77; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 70) (collectively, the "Raymond James Retention Order").

21.    Consistent with terms of the retention of Raymond James & Associates, Inc. ("Raymond James"), the Movants began a formal marketing process on December 12, 2019 for a sale of the Purchased Assets—i.e., the assets directly and indirectly owned by the Debtors related to the Company.  Since being retained, Raymond James has approached 184 potential purchasers, including both strategic and financing buyers.  Subsequently, the Movants executed confidentiality agreements with 51 potential buyers, who were provided a confidential information memorandum containing significant due diligence information.  Raymond James then held extensive diligence calls with most of these parties to facilitate all diligence needed to submit non-binding financing proposals, and a number of these diligence calls were attended by the undersigned counsel.

22.    The Movants received 14 non-binding purchase proposals.  Of these 14, Raymond James organized and held management presentations with eight of them, having determined that six non-binding purchase proposals offered consideration significantly below the other non-binding purchase proposals.  Subsequently, the Movants received three purchase proposals.  After receiving and analyzing various purchase proposals, the Movants selected the Stalking Horse Bidder in connection with a sale transaction subject to higher or otherwise better bids.

23.    Raymond James continues to market the Debtors' interests in the Company.  The Movants expect that Raymond James' marketing process may result in competing bids being submitted by the proposed Bid Deadline of March 6, 2020.  The Movants believe that, based on consultations with Raymond James, the marketing period, which will have spanned approximately twelve (12) weeks during these bankruptcy cases by the time the proposed Auction is held on March 9, 2020, is a reasonable and sufficient period during which to solicit bids on the Debtors'

interests in the Company.  The Movants believe that the marketing efforts will be sufficient to ensure the highest or otherwise best offer.

24.     The Movants also believe that, based on consultations with Raymond James, the Bidding Procedures negotiated with the Stalking Horse Bidder will result in the highest or otherwise best offer for the Debtors' interests in the Company.

## PROPOSED SALE

25.     The proposed Sale includes all of the Purchased Assets which are those assets directly and indirectly owned by the Debtors that are related to the Company—i.e., the iconic "The Palm" which is one of the most well-known steakhouse brands and restaurant chains in the United States and Mexico.  The Purchased Assets subject to the proposed Sale include, among others: (i) the Chapter 7 Debtors' ownership interests in the Palm OpCos which directly and indirectly, own and manage 21 The Palm restaurants located across the United States; (ii) the ownership of the intellectual property for The Palm—a series of trademarks and service marks, design elements of The Palm (such as its food quality choices and methods of preparation) and the Palm's decor, display of certain photographs, artistic caricatures, sketches, cartoons and other elements (collectively, the "Palm IP"); (iii) the licensing rights with respect to the Palm IP, including licensing rights with respect to three The Palm restaurants, one of which is located at John F. Kennedy International Airport in New York City and two others in Mexico City; and (iv) owned real property located at 838 Second Avenue in New York, New York and 94 Main Street, East Hampton, New York.

26.     The Movants have filed contemporaneously herewith the *Joint Motion for Entry of an Order (i) Approving Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (ii) Authorizing the Sale of Assets Free and*

9502190-22

*Clear of All Claims and Liens Except for Permitted Liens, Encumbrances and Assumed Liabilities, (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts of Chapter 11 Debtor JOMR, and (iv) Granting Related Relief* (the "<u>Sale Motion</u>"), which is incorporated herein by reference.

27.     As described in the Sale Motion, the Movants, in their exercise of the Debtors' reasonable business judgment, have determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their constituents is to sell the Debtors' interests in the Company through a Sale pursuant to Bankruptcy Code section 363.   In order to satisfy the requirements of the DIP Loan Facility and maintain the support of the DIP Lender, customers and vendors, and maintain the Company's employee base, the Movants believe that it is in the best interests of the Debtors and their estates to move expeditiously with a sale process, as discussed herein.

## PROPOSED BIDDING PROCEDURES

28.     The Movants seek to conduct a fair and transparent sale process pursuant to which the winning bidder will enter into an agreement, substantially in the form of the Agreement, for the purchase of substantially all of the Debtors' interests in the Company, free and clear of certain liens, claims, encumbrances, and interests with such liens, claims, encumbrances, and interests attaching to the sale proceeds.

29.     The Bidding Procedures (as summarized below) were developed consistent with the Movants' need to proceed with an expedited sale process to preserve the going-concern value of the Company and the objective of promoting active bidding that will result in the highest or otherwise best offer for the Purchased Assets.   Moreover, the Bidding Procedures reflect the Movants' objective of conducting the Auction in a fair and transparent, fashion that promotes

9502190-22

interest in the Purchased Assets by financially capable, motivated bidders who are likely to close the Sale.

30.     The Movants, on behalf of the Debtors, have developed the Bidding Procedures, attached as Exhibit "1" to the Bidding Procedures Order, to govern the Auction process.  The Movants designed the Bidding Procedures to encourage all qualified entities expeditiously to submit their bids in order to maximize the value of the Debtors' estates through a competitive Auction process.  The Bidding Procedures are intended to permit a fair, efficient, and competitive process, consistent with the timeline of the sale process, to help determine the highest or otherwise best bid for the Purchased Assets.  The Bidding Procedures establish, among other things, the following.[6]

(a)  **Potential Bidders**.  The requirements that a party has to satisfy in order to become a Preliminary Interested Investor and be permitted to participate in the bidding process and to receive access to due diligence information;[7]

(b)  **Due Diligence**. The availability of, access to, and conduct during due diligence by Preliminary Interested Investors;[8]

(c)  **Bid Qualification Process**. The deadlines and requirements for Preliminary Interested Investors to submit competing bids and the method and criteria by which such competing bids are deemed to be "Qualified Bids" sufficient to trigger an Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and the deadline that must be met by any Preliminary Interested Investor (other than the Stalking Horse Bidder) to be considered a "Qualified Bidder";[9]

---

[6]   This summary is qualified in its entirety by the Bidding Procedures attached as Exhibit "1" to the Bidding Procedures Order and incorporated herein by reference.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

[7]   *See* Bid. Proc., "Access to Diligence Materials", pp. 2-4.

[8]   *See* Bid. Proc., "Access to Diligence Materials", pp. 2-4.

[9]   *See* Bid. Proc., "Bid Qualification Process", Parts I-III.

9502190-22

(d)  **Right to Credit Bid**.  The DIP Lender shall have the right to credit bid all or any portion of the aggregate amount of its applicable outstanding secured obligations, pursuant to section 363(k) of the Bankruptcy Code;[10]

(e)  **Qualified Bid Evaluation**.  The manner in which Qualified Bids will be evaluated by the Movants, in consultation with the Consultation Party (i.e., the DIP Lender), to determine the Auction Baseline Bid (i.e., the highest or otherwise best Qualified Bid to commence the Auction);[11]

(f)  **Auction**.  The conditions for having an Auction and procedures for conducting the Auction;[12]

(g)  **Successful Bidder Selection**.  The criteria by which the Successful Bidder will be selected by the Movants, in consultation with the Consultation Party;[13] and

(h)  **Termination Fee**.  The criteria for payment of the Breakup Fee and Expense Reimbursement (collectively defined as the "Termination Fee") (if any) to the Stalking Horse Bidder.[14]

31.    Importantly, the Bidding Procedures recognize the Movants' fiduciary obligations to maximize sale value, and, as such, do not impair the Movants' ability to consider all qualified bid proposals, and, as noted, preserve the Movants' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

32.    Other than expressly set forth in the Bidding Procedures, the Movants (in consultation with the Consultation Party) reserve the right to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii)

---

[10]    *See* Bid. Proc., "Bid Qualification Process", Part IV.

[11]    *See* Bid. Proc., "Bid Qualification Process", Parts V, XI.

[12]    *See* Bid. Proc., "Bid Qualification Process", Part V.

[13]    *See* Bid. Proc., "Bid Qualification Process", PartsV(h), XI.

[14]    *See* Bid. Proc., "Bid Qualification Process", Part VI.

9502190-22

contrary to the best interests of the Company and/or the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) extend the deadlines set forth herein; and (g) continue or cancel the Auction and/or Sale Hearing by filing a notice on the docket or stating so in open court without further notice.

33.     The Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bidder's bid is a Qualified Bid.

## THE TERMINATION FEE

34.     The Stalking Horse Bidder has requested bid protections consisting of the Breakup Fee in the amount of $1,250,000.00, and the Expense Reimbursement of up to $275,000.00 of actual reasonable and documented out-of-pocket costs and expenses in connection with the Sale payable to the Stalking Horse Bidder upon the terms and conditions set forth in Section 7.5(c)(i) of the Agreement to partially defray the substantial out-of-pocket costs the Stalking Horse Bidder has and is expected to incur in this process.  The Termination Fee is warranted here in consideration of the Stalking Horse Bidder's substantial expenditure of time, energy and resources, and the benefits to the Debtors' estates of securing a "stalking horse" or guaranteed minimum bid and setting a floor price at the Auction.  Pursuant to Section 7.5(c)(i), if the Agreement is terminated as a result of the Movants closing an Alternative Transaction, the Termination Fee shall be paid by wire transfer within three (3) business days of the closing of such Alternative Transaction.

## NOTICE OF AUCTION AND SALE

35.     The Movants seek to have the Auction commence on March 9, 2020, subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Auction to a later date.  Within one (1) business days following the entry of the Bidding Procedures Order, the Movants will serve by ECF notification (as applicable) and first class mail, copies of: (i) the Bidding Procedures Order and (ii) the Sale Notice upon the following entities:

(a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee for the Middle District of Florida (Tampa Office); (c) counsel to the Stalking Horse Bidder; (d) counsel to the DIP Lender; (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (f) the landlords for the leased locations at which the Sellers operate restaurants; (g) all counterparties to any executory contract or unexpired lease of the Debtors pertaining to the operation of the Company; and (h) all potential bidders previously identified or otherwise known to the Movants (collectively, the "Sale Notice Parties").[15]

36.    The Movants further request, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court on or before **4:00 p.m. (prevailing Eastern Time) on March 3, 2020** (the "Sale Objection Deadline"); and (e) be served upon: (1) *JOMR and JOMH*, c/o (i) the Chief Restructuring Officer, McHale, P.A., 1601 Jackson Street, Suite 200, Fort Myers, FL 33901 (Attn:  Gerard A. McHale, Jr., jerrym@thereceiver.net and Veronica Larriva, veronical@thereceiver.net) and (ii) *bankruptcy counsel for JOMR and JOMH*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (2) (i) *the Trustee*, Robert E. Tardif, Jr., P.O. Box No. 2140, Fort Myers, FL 33902 (Attn: Robert E. Tardif, Jr., Esq. (rtardif@comcast.net)) and (ii) *transaction counsel for the Trustee*, Berger Singerman LLP, 1450

---

[15]    With respect to serving all potential bidders previously identified or otherwise known to the Movants, these are the investors who entered into non-disclosure agreements with the Movants, and therefore, the Movants respectfully request the Court to grant the Movants authorization to file under seal that part of the service list containing the names and addresses of such entities.

9502190-22

Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (3) counsel for the Stalking Horse Bidder, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com) and Andrew L. Magaziner, Esq. (amagaziner@ycst.com); and (4) *counsel for the DIP Lender*, Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103 (Attn: Scott M. Esterbrook, Esq. (SEsterbrook@ReedSmith.com) and Brian M. Schenker, Esq. (BSchenker@ReedSmith.com); and (5) *the Office of the United States Trustee*, 501 East Polk Street, Room 1200, Tampa, FL 33602 (Attn: Benjamin E. Lambers, Esq. (Ben.E.Lambers@usdoj.gov) and Steven Wilkes, Esq.  (Steven.Wilkes@usdoj.gov)).

**PROVISIONS RELATING TO
EXECUTORY CONTRACTS, INCLUDING
THE DETERMINATION OF CURE COSTS**

37.    Pursuant to the Agreement, (i) JOMR will assume and assign to the Stalking Horse Bidder pursuant to section 365 of the Bankruptcy the License Agreements, comprised of the Master License Agreement[16] and the Mexico License Agreements[17] (as each is defined in the Agreement, collectively, the "Assigned JOMR Contracts") and (ii) the Stalking Horse Bidder has agreed to pay all Cure Costs with respect to such Assigned JOMR Contracts.  The Movants believe that there will be no, or *de minimis*, Cure Costs associated with the assumption and assignment of the Assigned JOMR Contracts.  Accordingly, the Movants request the Court to approve the

---

[16]   "Master License Agreement" means Master License Agreement dated as of January 1, 2007, between JOMR, as licensor, and PMC, as licensee, relating to the JOMR IP, as it may be amended or modified.

[17]   "Mexico License Agreements" means either or both of (i) that certain Palm Restaurant License Agreement dated as of March 15, 1999, between JOMR and Hoteles Presidente, S.A. de C.V., as amended, and (ii) that certain Palm Restaurant License Agreement dated as of May 1, 2012, between JOMR, Hoteles Presidente, S.A. de C.V., Impulsora de Empresas Turisticas, S.A. de C.V., and Forea S.A P. I de C.V., as amended.

9502190-22

proposed assumption and assignment of the Assigned JOMR Contracts per the terms of the Agreement.

## PROVISIONS RELATING TO THE DIP LENDER

38.    On February 10, 2020, the Movants filed the *Joint Motion (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to DIP Lender, in Its Capacity as Assignee of Prepetition Secured Lender, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, and VI) Scheduling a Final Hearing* (JOMR/JOMH, Case No. 9:19-bk-01947-FMD, Doc. 293; Bozzi, Case No. 9:19-bk-09677-FMD, Doc. 116; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 98) (collectively, the "DIP Financing Motion").

39.    In the DIP Financing Motion, the Movants requested authority for (a) the Chapter 11 Debtors and the estates of the Chapter 7 Debtors (collectively, the "DIP Borrowers") to enter into a certain *Global Amendment, Joinder, and Senior Secured, Superpriority Debtor-in-Possession Credit Agreement* (the "DIP Agreement" and together with the related documents, collectively, the "DIP Documents") pursuant to which the DIP Borrowers shall obtain postpetition financing as follows—up to $5,500,000.00 of aggregate post-petition senior secured superpriority debtor-in-possession financing (the "DIP Loan Facility"), consisting of a delayed draw term loan facility in the maximum aggregate principal amount of, upon the entry of an Interim Order (defined below), up to $2,000,000.00 on an interim basis (the "Interim DIP Facility") and, subject to the entry of the Final Order (as defined in the DIP Financing Motion), up to an additional $3,500,000.00 on a final basis, from SF V CLE Lending, LLC, a Delaware limited liability company, as lender (in such capacity, the "DIP Lender"), in accordance with the DIP Documents and pursuant to a Budget (as defined in the DIP Financing Motion); (b) obtain the benefit of the assignment from Bank of America, N.A., as the prepetition secured lender to JOMR and the

9502190-22

Chapter 7 Debtors and assignor, to the DIP Lender, as assignee, of (i) the Prepetition Loan

Documents (as defined in the DIP Financing Motion), and (ii) the Prepetition Secured Obligations

(as defined in the DIP Financing Motion as revised in the Interim Order) in the aggregate amount

of approximately $12,465,081.82, and (iii) the Prepetition Liens (as defined in the DIP Financing

Motion); and (c) grant security interests and liens and accord superpriority administrative expense

claim status in favor of the DIP Lender pursuant to §§ 361, 364(c) and 364(d)(1) of the Bankruptcy

Code in accordance with the DIP Documents.

40.     On February 13, 2020, the Court held a contested hearing on the DIP Financing

Motion and granted the relief requested therein.

41.     On February 14, 2020, the Court entered orders approving the DIP Financing

Motion (JOMR/JOMH, Case No. 9:19-bk-01947-FMD, Doc. 305; Bozzi, Case No. 9:19-bk-

09677-FMD, Doc. 129; Ganzi, Case No. 9:19-bk-09680-FMD, Doc. 111) (collectively, the

"Interim Order").

42.     The Movants have included in the Bid Procedures the right—to the extent approved

by the Interim Order and any final order of the Court granting the DIP Loan Facility—for the DIP

Lender to credit bid the secured amounts due under the DIP Loan Facility as a part of the sale

process. *See* Interim Order, ¶ 18(c).[18]

---

[18]     Victor F. Ganzi (the brother of Ganzi) has filed proofs of claims asserting secured claims against each of the
Chapter 7 Debtors, including against (i) *Bozzi*, for money loaned totaling $3,774,029.79 which is secured by an
alleged mortgage on real property located at 1511 Gulf of Mexico Drive, Unit 202, Longboat Keys, Florida 34228,
of which $2,974,029.79 is asserted as a secured claim (Case No. 9:19-bk-09677-FMD, claim no. 6-1), and (ii)
*Ganzi*, for money loaned totaling $4,369,644.75 secured by an alleged mortgage on real property located at 8941
Bozman Neavitt Road, Saint Michaels, Maryland 21663, of which $3,569,644.75 is asserted as a secured claim
(Case No. 9:19-bk-09680-FMD, claim no. 7-1). As the property against which these alleged liens do not represent
property included as a part of the Assets of the sale, and in the event that Victor F. Ganzi seeks to bid on some or
all of the Assets, the alleged secured claims of Victor F. Ganzi are not subject to the right to credit bid as a part
of the sale process.

16

## **RELIEF REQUESTED**

43.     By this Motion, the Movants seek the entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit "B"**: (a) approving the Bidding Procedures in connection with the solicitation and acceptance of higher and better bids, including the Termination Fee, with respect to the Sale of the Purchased Assets, (b) scheduling on shortened notice the bid deadlines and the Auction, (c) scheduling on shortened notice, if an Auction is to be held, the Sale Hearing on either March 10, 2020 or March 11, 2020 to approve the Sale (subject to the availability of the Court), or alternatively, scheduling on shortened notice, if no Auction is to be held, the Sale Hearing on March 9, 2020 (subject to the availability of the Court), and setting objection deadlines with respect to the Sale, (d) approving the form and manner of notice of the Sale and related Auction for the Purchased Assets, (e) establishing procedures to determine Cure Costs and deadlines for objections to the potential assumption and assignment of the Assigned JOMR Contracts, and (f) granting related relief.

44.     For the reasons stated herein, the Movants request, pursuant to Bankruptcy Rule 2002 and 9006(c), to have this Motion heard on shortened notice.

## **RELIEF REQUESTED SHOULD BE GRANTED**

**A.      Approval of the Bidding Procedures Is Appropriate and in the Best Interests of the Debtors' Estates and Their Creditors.**

45.     Maximization of proceeds received by a debtor's estate is one of the dominant goals of any proposed sale of estate property. *See In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"). In the hope of maximizing the value received by the estate, courts typically establish procedures that are intended to enhance competitive bidding by, among other things, setting forth the rules that will govern the auction process. *See, e.g., In re Fin. News Network, Inc.,* 126 B.R.

9502190-22

152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bid procedures should allow for "an open and fair public sale designed to maximize value for the estate").

46.     The Movants believe that the Bidding Procedures represent a valid exercise of the Debtors' business judgment because they are designed to maximize the value received for the Purchased Assets and prevent any chilling of potential bids by establishing a transparent, competitive and fair bidding process.   Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g., In re Innkeepers USA Trust*, 448 B.R. 131, 146 (Bankr. S.D.N.Y. 2011) ("the Debtors have appropriately exercised their business judgment in determining to . . . propose the revised Bidding Procedures"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *see also In re Ashley Consulting, LLC*, 2015 WL 6848113, at *3 (Bankr. S.D.N.Y. Nov. 6, 2015) (noting, *in dicta*, that proposed bidding procedures are evaluated using the business judgment standard).

47.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by a debtor's estate and therefore are appropriate in the context of bankruptcy transactions.  *See, e.g., In re Ruden McClosky P.A.*, 2012 WL 668019, at *1 (Bankr. S.D. Fla. Feb 23, 2012) (approving bidding procedures that "are reasonably designed to maximize the value to be achieved" for the assets

9502190-22

subject to the sale); *Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Dunhill Entities, L.P.*, 2010 WL 6982623, at *1 (Bankr. S.D. Ala. Apr. 13, 2010) (approving bidding procedures that are "designed to maximize the Debtors' recovery on the Assets"); *In re Robb & Stucky Ltd. LLLP*, 2001 WL 36371214, at *1 (Bankr. M.D. Fla. Feb 18, 2001) (same); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

48.     The Movants believe that the Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of the Purchased Assets for the benefit of the Debtors' estates.  The Bidding Procedures were developed consistent with the Movants' need to proceed with an expedited sale process to preserve the going-concern value of the Company. The process set forth in the Bidding Procedures allows for a timely and efficient auction process given the circumstances facing the Debtors, while providing bidders with ample time and information to submit a timely bid and perform diligence.  The Bidding Procedures will allow the Movants to conduct the Auction in a controlled, fair, and transparent fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Sale.  In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

49.     The Movants also submit that the Bidding Procedures are designed to ensure that the Purchased Assets will be sold for the highest or otherwise best possible purchase price by subjecting the value of the Purchased Assets to market testing and permitting prospective buyers

9502190-22

to bid on the Purchased Assets.  Furthermore, the Debtors and all parties-in-interest can be assured that the consideration received for the Purchased Assets will be fair and reasonable and that the proposed Bidding Procedures will not chill bidding by any potential bidders.  As such, the Movants submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy cases, and are consistent with the controlling legal standard.  Accordingly, the Movants respectfully submit that the Court should approve the Bidding Procedures as a reasonable and valid exercise of the Debtors' business judgment.

50.    The Movants propose to hold the Auction not later than March 9, 2020, a timeline that the Movants believe is workable given their marketing efforts to date, as described herein. Significantly, maximizing the value of the Debtors' estates requires that the Movants proceed swiftly to consummate the Sale, thereby minimizing the incremental costs associated with these bankruptcy cases and preserving the value of The Palm's brand—a critical component of the value of the Debtors' assets.  The Bidding Procedures are designed to—and the Movants believe the Bidding Procedures will operate to—maximize the likelihood of a competitive bidding process for all of the Purchased Assets.

51.    Procedures to dispose of assets, similar to the proposed Bidding Procedures have been approved by bankruptcy courts in other large, complex bankruptcy cases.  *See, e.g., In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018); *Saladworks*, Case No. 15-10327 (LSS) (Bankr. D. Del. Mar. 12, 2015); *In re TLO, LLC*, Case No. 13-20853-PGH (Bankr. S.D. Fla. Oct. 24, 2013); *In re Ruden McClosky P.A.*, Case No. 11-40603-RBR (Bankr. S.D. Fla.  Nov. 8, 2011); *In re Global Energies, LLC*, 10-28935-BKC-RBR (Bankr. S.D.

Fla. Oct. 21, 2010); *In re Fontainebleu Las Vegas Holdings, LLC*, Case No. 09-21481-AJC (Bankr.

S.D. Fla. Nov. 24, 2009)

52.     In sum, the Movants believe that the proposed Bidding Procedures provide an

appropriate framework for expeditiously establishing that the Debtors' estates are receiving the

best or otherwise highest offer for the Purchased Assets.   Accordingly, the proposed Bidding

Procedures are reasonable, appropriate and within the Movants' exercise of the Debtors' sound

business judgment under the circumstances.

**B.     The Overbid Protections Are Appropriate Under the Circumstances**.

53.     The Minimum Overbid Increment (defined in the Bidding Procedures) in the

amount of $100,000.00 is appropriate under the circumstances and will enable the Movants to

simultaneously maximize the value of the Debtors' assets while limiting the chilling effect in the

marketing process. This provision also is consistent with the overbid increments previously

approved by bankruptcy courts in other large, complex bankruptcy cases.  *See, e.g., In re Bertucci's*

*Holdings, Inc*., Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018); *Saladworks*, Case No.

15-10327 (LSS) (Bankr. D. Del. Mar. 11, 2015).

**C.     The Termination Fee, if Approved by the Court, Is an Actual and Necessary Cost of**
**Preserving the Debtors' Estates**.

54.     Bid incentives such as the Termination Fee (comprised of the Breakup Fee and the

Expense Reimbursement) encourage a potential buyer to invest the time, money and effort required

to negotiate with a debtor's representatives, and to perform the necessary due diligence attendant

to the acquisition of a debtor, despite the inherent risks and uncertainties of the chapter 11 process.

The Movants submit that approval of the Termination Fee is justified by the facts and

circumstances of these bankruptcy cases, whether considered under the business judgment rule or

as an administrative expense of the estates.

55.    The Movants believe that granting authority to pay the Termination Fee represents a reasonable exercise of the Debtors' business judgment and will maximize the proceeds from the sale process.  "A breakup fee is a 'fee paid by a seller to a prospective purchaser in the event that a contemplated transaction is not consummated'".  *In re Antaramian Properties, LLC*, 564 B.R. 762, 766 (M.D. Fla. 2015) (citations omitted) (affirming order of the bankruptcy court (Delano, J.) approving bidding procedures which awarded the stalking horse bidder a "break up" fee award in the form of an expense reimbursement of up to $200,000).[19]  "The fee is intended to compensate the bidder for the time, effort, and risk of being the stalking horse, and to encourage the bidder to do the necessary due diligence with the assurance that its efforts will be compensated if it is unsuccessful."  *Id.*  "In a normal case, a debtor and a prospective bidder agree on certain bid procedures, including a breakup fee if the parties feel it is necessary, and present the court with a motion requesting approval of those procedures."  *Id.*  "If the court approves the fee, then if the conditions precedent are met, and the bidder is unsuccessful, the fee is paid."  *Id.*

56.    "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . [i]n fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value."  *Integrated Resources*, 147 B.R. at 659-60 (emphasis added).  Specifically, bid protections like the [Breakup Fee] "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking."  *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted); *see also Integrated Resources*,

---

[19]    *See In re Antaramian Properties, LLC.*, Case No. 9:14-bk-1014-CED (Bankr. M.D. Fla., Doc. 390) (bidding procedures order).

147 B.R. at 660-61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

57.    Courts have generally considered three questions in connection with analyzing breakup fees: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?"  *Integrated Res.*, 147 B.R. at 657.  The answer to each of these questions in this instance is emphatically "no."

58.    *First*, the Movants propose to pay the Breakup Fee only in the event that a Qualified Bidder provides materially higher consideration to the Debtors' estates than the Stalking Horse Bid by providing an Overbid that, at a minimum, (a) proposes a purchase price equal to or greater than the aggregate of the sum of (i) the value of the Bid set forth in the Agreement executed by the Stalking Horse Bidder; *plus* (ii) the dollar value of the Termination Fee in cash, *plus* (iii) $100,000.00 (the initial overbid amount).  Rather than in any way being somehow tainted by self-interest or manipulation, the amount of the Termination Fee was negotiated at arms-length and the Bidding Procedures provide that should an overbid by a different Qualified Bidder be chosen as the Successful Bid, the Debtors' estates will still receive significantly more consideration compared to the Stalking Horse Bid.

59.    The Movants and the Stalking Horse Bidder each have acted in good faith throughout this process.  The amount of the Breakup Fee, $1,250,000.00, and up to $275,000.00 Expense Reimbursement, collectively represent three and one-half percent (3.05%) of the Purchase Price (exclusive of the value of the assumption of the Assumed Liabilities), and is not so high that it would cause any chilling effect on other prospective buyers, and will have no adverse effect on any creditors.

9502190-22

60.     Pursuant to Section 7.5(c)(i) of the Agreement, if the Movants close on an Alternative Transaction, the Termination Fee shall be paid by wire transfer of immediately available funds three (3) business days following closing of such Alternative Transaction - in which case the Stalking Horse Bidder's participation will have necessarily created value for the Debtors' estate in excess of the amount of the Termination Fee. Absent authorization of the payment of the Termination Fee, the Movants might lose the opportunity to obtain the highest or otherwise best available offer for the Purchased Assets and the downside protection that will be afforded by the Agreement.

61.     *Second*, the Breakup Fee would encourage, rather than hamper, bidding given it falls well within the range considered reasonable by bankruptcy courts.  Granting the Movants authority to pay Breakup Fee sends a strong signal to the market that the Movants, on behalf of the Debtors, are serious about running a competitive auction process to maximize the value of the Debtors' estates.  Furthermore, the Movants believe that the Breakup Fee is fair and reasonable in amount in light of the size and nature of the Purchased Assets, and the efforts that will have been expended by any Stalking Horse Bidder in connection with its efforts to facilitate a sale of the Purchased Assets, which will serve as the baseline for other bids for the Purchased Assets.

62.     Moreover, the payment of the Expense Reimbursement, like that proposed here, in a bidding process for sales is appropriate under section 363(b) of the Bankruptcy Code so long as such payment is a valid exercise of a debtor's business judgment by providing a benefit to a debtor's estate.  *Antaramian Properties,* 564 B.R. at 766.  Under section 363(b), the debtors may use, sell, or lease estate property outside of the ordinary court of business so long as they articulate a sound business reason for doing so.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A.*

24

*Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983).

63.     *Third*, the aggregate amount of the Termination Fee will total three and one-half

percent (3.05%) of the proposed Purchase Price for the Purchased Assets, an amount that is well

within market for transactions of this type.  *See, e.g., In re Antaramian Properties*, 564 B.R. at 768

(*citing In re Sea Island Co.* 2010 WL 4393269, at *3 (Bankr. S.D. Ga. Sept. 15, 2010), for the

proposition that a 3% breakup fee "constituted a fair and reasonable percentage of the proposed

purchase price"); *In re HRI Holding Corp.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Dec. 5,

2019) (authorizing break-up fee and expense reimbursement of approximately 3.75% of purchase

price related to the sale of the Houlihan's restaurant chain); *In re RM Holdco LLC*, Case No. 18-

11795 (MFW) (Bankr. D. Del. Sept. 6, 2018) (authorizing break-up fee of 3% of the purchase

price in the chapter 11 bankruptcy case involving one of the largest full service Mexican casual

dining restaurant chains with 80 restaurants located throughout the United States); *In re Bertucci's*

*Holdings, Inc*., Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018) (authorizing break-up

fee and expense reimbursement of approximately 5.0% of purchase price).  The Movants submit

the amounts of break-up fees and expense reimbursements approved by these courts are consistent

with general recent caselaw on this issue, and probative of whether a breakup fee provides a benefit

to the Debtors' estates.

64.     The Stalking Horse Bidder has provided a material benefit to the Debtors and their

creditors by increasing the likelihood that the Debtors will receive the best possible price for the

Purchased Assets.  Furthermore, approval of the Bidding Procedures, including the Termination

Fee, is required by the Agreement as a condition to the Stalking Horse Bidder's obligation to

proceed with the transaction contemplated in the Agreement. *See In re Reliant Energy*

*Channelview, L.P.*, 594 F.3d 200 (3d Cir. 2010).

9502190-22

65.     Moreover, the Termination Fee is a material inducement for, and condition of, the Stalking Horse Bidder's entry into the Agreement.  The Stalking Horse Bidder has put forth considerable time and resources to negotiate the Agreement, which will serve as a floor price at the Auction and, regardless of whether other Qualified Bids are received, will benefit the Debtors' estates.  The Movants believe that the Termination Fee is fair and reasonable in view of (a) the analysis and negotiation undertaken by the Stalking Horse Bidder in connection with the transaction and (b) the fact that, if the Termination Fee is triggered, the Stalking Horse Bidder's efforts will have influenced the chances that the Debtors will receive the highest or otherwise best offer for the Purchased Assets to the benefit of all of the Debtors' stakeholders.

66.     In light of the benefit to the Debtors' estates that will be realized by having a signed purchase agreement, enabling the Movants to preserve the value of the Debtors' estates and promote more competitive bidding, ample support exists for the approval of the Termination Fee. The estates' payment of the Termination Fee under the circumstances described herein is (i) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of Bankruptcy Code section 503(b), (ii) of substantial benefit to the Debtors' estates and (iii) reasonable and appropriate in light of the efforts and the significant due diligence costs and expenses that have been and will be expended by the Stalking Horse Bidder.  Thus, the Movants request that the Court approve and authorize payment of the Termination Fee pursuant to the terms of the Agreement.

**D.      The Form and Manner of the Notice Should Be Approved**.

67.     Pursuant to Bankruptcy Rule 2002(a), the Movants, on behalf of the Debtors, are required to provide creditors with twenty-one days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein.

9502190-22

68.     The Movants believe that sufficient cause exists to shorten the notice period for a hearing on this Motion.  In view of the need to immediately pursue a value-maximizing transaction to protect the value of the Debtors' interests in the Company, and at the same time, ensure sufficient time to explore market interest and conduct a competitive bidding process, the Movants believe that the proposed timeline for the bidding and sale process is both reasonable and necessary under the circumstances.  Additionally, commencing the bidding process and conducting the Auction on the proposed timeline is necessary to comply with the Milestones under the DIP Loan Facility.  Absent the bidding and sale process on the timeline contemplated by the Bidding Procedures, the Movants believe they will be unable to maximize the value of the business as a going concern for the benefit of all stakeholders.  Accordingly, the Movants submit that the prompt approval of the Bidding Procedures and the occurrence of the Auction are critical.

69.     The Movants also submit that the Sale Objection Deadline is reasonable and appropriate under the circumstances.  The Movants further submit that the notice to be provided through the Sale Notice and the method of service proposed herein fully complies with the requirements set forth in Bankruptcy Rule 2002 and constitute good and adequate notice of the Bidding Procedures and the subsequent proceedings related thereto, including the proposed dates for (a) the Bid Deadline; (b) the Sale Objection Deadline; and (c) the Sale Hearing.  Therefore, the Movants respectfully request the Court approve the proposed notice procedures.

**E.      The Assumption and Assignment of the Assigned JOMR Contracts, and Payment of All Cure Costs (If Any) by the Stalking Horse Bidder, Should be Approved**.

70.     Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a).  The Movants respectfully submit that the proposed assumption and assignment of the three Assigned JOMR Contracts and the agreement

27

by the Stalking Horse Bidder to pay all related Cure Costs (if any), as set forth in Sections 2.3(b) and (c) of the Agreement, should be approved. The proposed assumption and assignment comport with the requirements of Bankruptcy Code section 365 and Bankruptcy Rule 6006. Thus, the Movants submit that the assumption and assignment of the three Assigned JOMR Contracts, and the payment of all Cure Costs (if any) by the Stalking Horse Bidder, should be approved.

### REQUEST FOR RELIEF UNDER BANKRUPTCY RULES 6004(h) AND 6006(d)

71.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Movants request that the Bidding Procedures Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

72.     The primary purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* 10 COLLIER ON BANKRUPTCY ¶ 6004.11  (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) ("COLLIER"). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, COLLIER suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." *See id.* Furthermore, COLLIER provides that if an objection is filed and overruled, and the objecting party informs the Court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *See id.*

## **RESERVATION OF RIGHTS**

73.     Nothing contained in this motion or any actions taken by the Movants or the Debtors pursuant to relief granted in the order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against any Debtor; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code other than the Assigned JOMR Contracts; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**WHEREFORE**, the Chapter 11 Debtors, through the Chief Restructuring Officer, and the Trustee on behalf of the estates of the Chapter 7 Debtors and the Palm OpCos, respectfully request the Court (a) grant this Motion, (b) enter the Bidding Procedures Order substantially the form attached hereto as **Exhibit "B"**, (c) approve the Bidding Procedures in connection with the solicitation and acceptance of higher or otherwise better bids, including the Termination Fee, with respect to the Sale of the Purchased Assets, (d) schedule on shortened notice the bid deadlines and

9502190-22

the Auction, (e) schedule on shortened notice the Sale Hearing and setting objection deadlines with respect to the Sale, (f) approve the form and manner of notice of the Sale and related Auction, (g) approving the procedures for the assumption and assignment of the Assigned JOMR Contracts, and (h) granting such other and further relief as the Court deems just and proper.

Dated:  February 20, 2020                    Respectfully submitted,

                                           BERGER SINGERMAN LLP
*Counsel for JOMR, JOMH and*
*Transaction counsel for the Trustee*
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:  *Christopher Andrew Jarvinen*
        Paul Steven Singerman
        Florida Bar No. 0378860
        singerman@bergersingerman.com
        Christopher Andrew Jarvinen
        Florida Bar No. 021745
        cjarvinen@bergersingerman.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice in this case as reflected on the attached Electronic Mail Notice List and via U.S. Regular Mail, postage prepaid, upon all parties on the attached Creditor Matrix and Additional Service List, unless otherwise served electronically through the Court's CM/ECF system on this 20th day of February, 2020.

                                     *Christopher Andrew Jarvinen*
                                     Christopher Andrew Jarvinen

9502190-22

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Andrew T. Jenkins     ajenkins@bushross.com, mlinares@bushross.com;ksprehn@bushross.com
- Benjamin E. Lambers     Ben.E.Lambers@usdoj.gov
- Brenda E Carpenter     FLMD.bankruptcy@phelanhallinan.com, Stefan.Beuge@phelanhallinan.com
- Christopher A Jarvinen     cjarvinen@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- Eric D Jacobs     ejacobs@gjb-law.com, gjbecf@ecf.courtdrive.com;gjbecf@gjb-law.com;chopkins@gjb-law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;mrodriguez-salva@gjb-law.com
- Fredric S. Newman     fnewman@hnrklaw.com, docket@hnrklaw.com
- Gerard A McHale     jerrym@thereceiver.net
- Gregg A Steinman     gregg.steinman@dlapiper.com, tennille.wilson@dlapiper.com
- J Steven Wilkes     steven.wilkes@usdoj.gov
- Joshua D Rievman     jrievman@drdllplaw.com
- Julia A May     juliamay@mvalaw.com
- Marian G Kennady     mkennady@reedsmith.com, khernandez@reedsmith.com
- Megan Preusker     mpreusker@mwe.com
- Paul A Avron     pavron@bergersingerman.com, efile@bergersingerman.com;efile@ecf.inforuptcy.com;mday@bergersingerman.com
- Paul Steven Singerman     singerman@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com
- Robert A. Schatzman     robert.schatzman@gray-robinson.com, Amador.Ruiz-Baliu@gray-robinson.com;Ana.Marmanillo@gray-robinson.com
- Robert E Tardif     rtardif@comcast.net, graceheidkamp@gmail.com;blkenney2@comcast.net;rtardif@ecf.axosfs.com;ecf.alert+Tardif@titlexi.com
- Robert E Tardif, Attorney for Trustee     rtardif@comcast.net, graceheidkamp@gmail.com;blkenney2@comcast.net
- Robert F Elgidely     relgidely@foxrothschild.com, mmiller-hayle@foxrothschild.com;rsolomon@foxrothschild.com;AngelaTerrell@foxrothschild.com
- Steven J Solomon     steven.solomon@gray-robinson.com, Ana.Marmanillo@gray-robinson.com;Amador.Ruiz-Baliu@gray-robinson.com
- United States Trustee - TPA7/13     USTPRegion21.TP.ECF@USDOJ.GOV

## Exhibit "A"

### The Palm OpCos[20]

Atlanta Palm Food Corporation
Atlantic City Palm, LLC
BB Chicago, LLC[21]
B.W. Associates, Inc.[22]
Boston Palm Corporation
Charlotte Palm Corporation
Chicago Palm, Inc.[23]
Denver Palm Corporation
DGMB Associates, Inc.[24]
LA Downtown Palm, LLC
Miami Palm Restaurant, Inc.
Nashville Palm Restaurant, LLC
Palm Airport, LLC
Palm Beverly Hills Restaurant, LLC[25]
Palm Beverly Hills Restaurant Manager, LLC
Palm Management Corporation
Palm New York Downtown, LLC
Palm Orlando Corporation
Palm Philadelphia Investor, LLC
Palm Philadelphia Manager, LLC
Palm Philadelphia Restaurant, LLC[26]
Palm Restaurant, Inc.
Palm Restaurant of Houston, Inc.
Palm Restaurant of Las Vegas, Inc.
Palm Tysons Too, Inc.
Palm West Corporation
San Antonio Palm Restaurant, Inc.
The Washington Palm, Inc.
WG Chicago, LLC[27]

---

[20]  Sources: (a) Schedules filed in the United States Bankruptcy Court for the Middle District of Florida by Bozzi (Case no. 9:19-bk-09677-FMD, Doc. 85, pp. 7-8 out of 62) and Ganzi (Case no. 9:19-bk-09680-FMD, docket no. 76, pp. 9-10 out of 56); (b) Hearing proceeding memos entered by the Court with respect to BB Chicago, LLC (Bozzi; Case no. 9:19-bk-09677-FMD, Doc. 130) and WG Chicago, LLC (Ganzi; case no. 9:19-bk-09680-FMD, Doc. 112); and (c) information provided by bankruptcy counsel to Messrs. Bozzi and Ganzi.

[21]  Mr. Bozzi owns 100% of the interests in BB Chicago, LLC.

[22]  BW Associates, Inc. is a wholly-owned entity of Palm Restaurant of Houston, Inc.

[23]  81.62% of the equity of Chicago Palm, Inc. is indirectly owned by Messrs. Ganzi and Bozzi through their respective 100% direct ownerships of BB Chicago, LLC (Mr. Bozzi) and WG Chicago, LLC (Mr. Ganzi).

[24]  DGMB Associates, Inc. is a wholly-owned entity of San Antonio Palm Restaurant, Inc.

[25]  50% of the equity of Palm Beverly Hills Restaurant, LLC is indirectly owned by Messrs. Bozzi and Ganzi through their collective 100% direct ownership of Palm Beverly Hills Restaurant Manager, LLC.

[26]  50% of the equity of Palm Philadelphia Restaurant, LLC is indirectly owned by Messrs. Bozzi and Ganzi through their collective 100% direct ownership of Palm Philadelphia Investor, LLC.

[27]  Mr. Ganzi owns 100% of the interests in WG Chicago, LLC.

## Exhibit "B"

**Proposed  Order**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,        Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]     (Jointly Administered with
                                        Case No. 9:19-bk-1948)
     Debtors.                          Chapter 11 Cases
_____/

In re:

BRUCE E. BOZZI, SR.,                    Case No. 9:19-bk-09677-FMD
                                        Chapter 7
     Debtor.
_____/

In re:

WALTER J. GANZI, JR.,                   Case No. 9:19-bk-09680-FMD
                                        Chapter 7
     Debtor.
_____/

---

[1]    The last four digits of each Chapter 11 Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081).  The address of the Chapter 11 Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

9501108-23

**ORDER APPROVING
JOINT MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING
PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION,
(III) SCHEDULING A HEARING TO CONSIDER THE TRANSACTION,
(IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V)
APPROVING CONTRACT PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court in Tampa, Florida on Tuesday, February 25, 2020

at 3:30 p.m. (the "Hearing") upon the *Joint Motion for Entry of an Order (I) Approving Bidding*

*Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling a Hearing to*

*Consider the Transaction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving*

*Contract Procedures, and (VI) Granting Related Relief* (Doc. ___) (the "Motion")[2] filed by Just

One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH" and together

with JOMR, collectively, the "Chapter 11 Debtors") through Gerard A. McHale, Jr., not in his

individual capacity but solely in his capacity as the Chief Restructuring Officer of the Chapter 11

Debtors (the "CRO"), and Robert E. Tardif, Jr., not in his individual capacity but solely in his

capacity as the trustee (the "Trustee", and together with the CRO, collectively, the "Movants")

appointed in the chapter 7 bankruptcy cases of each of Bruce E. Bozzi, Sr. ("Bozzi") and Walter

J. Ganzi, Jr. ("Ganzi" and together with Bozzi, collectively, the "Chapter 7 Debtors"; together, the

Chapter 11 Debtors and the Chapter 7 Debtors, collectively, the "Debtors") on behalf of the estates

of the Chapter 7 Debtors and each of the business entities listed on Exhibit "A" attached to the

Motion (collectively, the "Palm OpCos" and together with the Chapter 11 Debtors, collectively,

the "Company") by the authority granted to the Movants by title 11 of the United States Code (the

"Bankruptcy Code") and the Palm OpCos Authorization Orders.  The Motion requests the entry

of an order: (a) approving the Bidding Procedures attached hereto as **Exhibit "1"** (the "Bidding

---

[2]    Any capitalized term not explicitly defined herein shall have the meaning ascribed to it, as applicable, in (i) the
Motion, (ii) the Bidding Procedures attached hereto as **Exhibit "1"**, or (iii) the Agreement (as such term is
defined in the Motion).

9501108-23

Procedures") in connection with the solicitation and acceptance of higher and better bids, including the Termination Fee, with respect to the Sale of the Purchased Assets, (b) scheduling on shortened notice the bid deadlines and the Auction, (c) scheduling on shortened notice the Sale Hearing to approve the Sale, and setting objection deadlines with respect to the Sale, (d) approving the form and manner of notice of the Sale and related Auction for the Purchased Assets, (e) establishing procedures for the assumption and assignment of certain executory contracts of JOMR to the Stalking Horse Bidder (the "Assigned JOMR Contracts"), and (f) granting related relief, all as more fully set forth in the Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Movants' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Hearing; and after due deliberation and sufficient cause appearing therefor, does for the reasons stated in the Motion and on the record of the Hearing, all of which are incorporated herein:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

9501108-23

B.      This Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are: (i) sections 105, 363, 365, 503 and 507 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014; and (iii) rule 2081-1(h) of the Local Bankruptcy Rules for the Middle District of Florida (the "Local Rules").

D.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required except as set forth herein with respect to the hearing to be conducted to approve the transactions contemplated by the Agreement (the "Sale Hearing").  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

E.      The Movants' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of substantially all of the Debtors' interests in the Company (the "Purchased Assets"), the auction (the "Auction") for the Purchased Assets, and the Bidding Procedures to be employed in connection therewith.

F.      The Movants have articulated good and sufficient reasons on behalf of the Debtors' estates for the Court to: (i) approve the Bidding Procedures; (ii) set the Sale Hearing on shortened notice and approve the manner of notice of the Motion and the Sale Hearing; (iii) approve the procedures for the assumption and assignment of the Assigned JOMR Contracts per the procedures

set forth in the Agreement; and (iv) grant the Breakup Fee and the Expense Reimbursement (together, the "Termination Fee") as provided in the Agreement and in this Order.

G.      The entry of this Order is in the best interests of the Debtors, their estates, creditors and other parties in interest.

H.      The Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value to be achieved for the Purchased Assets.  The Bidding Procedures were negotiated by the parties at arms' length and in good faith by the Movants and the Stalking Horse Bidder.

I.      The Movants have demonstrated a compelling business justification for the payment of the Termination Fee under the circumstances set forth in the Agreement. The Termination Fee: (i) is payable as provided in Section 7.5(c)(i) of the Agreement; (ii) shall be deemed an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; (iii) is of substantial benefit to the Debtors' estates; (iv) is reasonable and appropriate, including in light of the size and nature of the sale and the efforts that have been or will be expended by the Stalking Horse Bidder notwithstanding that the proposed sale is subject to higher or otherwise better offers for the Purchased Assets; (v) was negotiated by the parties at arm's length and in good faith; and (vi) is necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed acquisition of the Purchased Assets contemplated by the Agreement.  The Termination Fee is a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Agreement.

J.      The Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value to be achieved for the Purchased Assets.

9501108-23

K.    The procedures for the assumption and assignment of the Assigned JOMR Contracts are fair, reasonable, and appropriate, and comply with the provisions of section 365 of the Bankruptcy Code.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is **GRANTED** to the extent set forth herein.

2.    Except as explicitly provided herein to the contrary, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

3.    The Bidding Procedures, attached hereto as **Exhibit "1",** are hereby approved in their entirety, are incorporated herein by reference and shall govern the bids and proceedings related to the sale and the Auction.  The Bidding Procedures Key Dates, attached hereto as **Exhibit "2",** are hereby approved in their entirety.  The failure to recite or reference any particular provision of the Bidding Procedures in this Order shall not diminish the effectiveness of such provision, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

4.    The Movants are authorized to take any and all actions necessary to implement the Bidding Procedures.

5.    Golden Nugget, LLC, together with its permitted successors, assigns and designees, is approved as the Stalking Horse Bidder for the Purchased Assets, pursuant to the terms of the Agreement attached as Exhibit "C" to the Sale Motion and the Agreement, in substantially such form, is hereby approved; provided, that the rights of all parties to object to the Sale contemplated by the Agreement are preserved.

6.    The Bid Deadline is **March 6, 2020 at 5:00 p.m. (prevailing Eastern Time)**.

9501108-23

7.      If the Movants receive more than one Qualified Bid (as defined in the Bidding Procedures) by the Bid Deadline, an Auction shall take place on **March 9, 2020 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Berger Singerman LLP, located at 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, or such other place and time as the Movants shall notify all Qualified Bidders, including the Stalking Horse Bidder, counsel for the Stalking Horse Bidder and other invitees in accordance with the Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Auction to a later date.  The Auction shall be conducted in accordance with the Bidding Procedures.  Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, (b) has reviewed, understands and accepts the Bidding Procedures, and (c) has consented to the core jurisdiction of this Court.

8.      In the event a party other than the Stalking Horse Bidder is the Successful Bidder for the Purchased Assets, subject to the terms of the Agreement, notwithstanding anything contrary in the Motion, the Debtors' estates shall pay the Breakup Fee to the Stalking Horse Bidder in an amount equal to $1,250,000.00 and shall reimburse the Stalking Horse Bidder for the actual and reasonable, documented out-of-pocket expenses up to a cap of $275,000.00 incurred by the Stalking Horse Bidder in performance of the Stalking Horse Bidder's due diligence investigation, review, research, and analysis regarding the Company's assets and the negotiations and documentation of the Agreement.  The Termination Fee shall constitute an allowed administrative expense claim against the Debtors' bankruptcy estates under section 503(b) of the Bankruptcy Code.  The obligation of the Debtors to pay the Termination Fee shall survive termination of the Agreement.

9501108-23

9.      The Termination Fee shall be payable by the Debtors' estates out of the proceeds of an Alternative Transaction within three (3) business days following the closing thereof, and shall be paid to the Stalking Horse Bidder prior to the payment of the proceeds of such sale to any third party asserting a Lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Termination Fee).  No further or additional order from this Court shall be required in order to give effect to such provisions relating to the terms of payment of the Termination Fee and the Stalking Horse Bidders' professional advisors are not obligated to comply with any provisions of the Bankruptcy Code regarding Court approval of professional fees payable by the Debtors' estates and included in the Expense Reimbursement.

10.     Notwithstanding anything herein to the contrary, prior to payment of the Expense Reimbursement, the Stalking Horse Bidder shall provide the Movants with invoices detailing its documented, out-of-pocket expenses and the Movants shall have three (3) business days to object (the "Expense Reimbursement Objection Deadline") to the reasonableness of the expenses incurred.  The Expense Reimbursement shall be paid within three (3) business days following the expiration of the Expense Reimbursement Objection Deadline if no objections are received.

11.     In the event the Purchased Assets are acquired in an Alternative Transaction by the DIP Lender pursuant to a credit bid authorized by this Court, such DIP Lender shall be responsible for the payment of the Breakup Fee and the Expense Reimbursement in cash at a closing on such sale.

12.     If no Auction is to be held, the Sale Hearing shall be held before this Court on **March 9, 2020 at _____a.m./p.m. (prevailing Eastern Time)** and may be adjourned from time to time by the Movants, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the

8

Sale Hearing to a later date, subject to the availability of the Court.  If there is no Auction, the Movants will file serve and file a notice with this Court not later than **March 6, 2020 at 8:00 p.m. (prevailing Eastern Time)** stating that there will be no Auction and the Movants are moving forward with the Sale Hearing on **March 9, 2020 at _____a.m./p.m. (prevailing Eastern Time)** with the Stalking Horse Bidder, subject to the proviso in the immediately preceding sentence.

13.     If an Auction is to be held, the Sale Hearing shall be held before this Court on **March 10/11, 2020 at _____a.m./p.m. (prevailing Eastern Time)** and may be adjourned from time to time by the Movants, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Sale Hearing to a later date, subject to the availability of this Court.

14.     Objections, if any, to the sale of the Purchased Assets and the Sale contemplated by the Agreement, or the relief requested in the Sale Motion must: (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with this Court on or before **4:00 p.m. (prevailing Eastern Time) on March 3, 2020** (the "Sale Objection Deadline"); and (e) be served upon: (1) *JOMR and JOMH*, c/o (i) the Chief Restructuring Officer, McHale, P.A., 1601 Jackson Street, Suite 200, Fort Myers, FL 33901 (Attn: Gerard A. McHale, Jr., jerrym@thereceiver.net and Veronica Larriva, veronical@thereceiver.net) and (ii) *bankruptcy counsel for JOMR and JOMH*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (2) (i) *the Trustee*, Robert E. Tardif, Jr., P.O. Box No. 2140, Fort Myers, FL 33902 (Attn: Robert E. Tardif, Jr., Esq. (rtardif@comcast.net)) and (ii) *transaction counsel for the Trustee*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL

33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (3) counsel for the Stalking Horse Bidder, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com) and Andrew L. Magaziner, Esq. (amagaziner@ycst.com); and (4) *counsel for the DIP Lender*, Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103 (Attn: Scott M. Esterbrook, Esq. (SEsterbrook@ReedSmith.com) and Brian M. Schenker, Esq. (BSchenker@ReedSmith.com); and (5) *the Office of the United States Trustee*, 501 East Polk Street, Room 1200, Tampa, FL 33602 (Attn: Benjamin E. Lambers, Esq. (Ben.E.Lambers@usdoj.gov) and Steven Wilkes, Esq. (Steven.Wilkes@usdoj.gov)).

15.    The sale notice, substantially in the form attached hereto as **Exhibit "3"** (the "Sale Notice"), is hereby approved.

16.    The proposed procedures related to the assumption and assignment of the Assigned JOMR Contracts, and the payment by the Stalking Horse Bidder of any related Cure Costs, as set forth in the Agreement, are approved.

17.    On or before one (1) business days after the entry of this Order, the Movants will cause the Sale Notice and this Order to be served by ECF notification (where applicable) and by first-class mail, to the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest, or encumbrance of record against all or any portion of the Purchased Assets; (b) the Office of the United States Trustee for the Middle District of Florida (Tampa Office); (c) counsel to the Stalking Horse Bidder; (d) counsel for the DIP Lender; (e) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (f); the landlords for the leased locations at which the Sellers operate the restaurants; (g) all

counterparties to any executory contract or unexpired lease of the Chapter 11 Debtors; and (h) all potential bidders previously identified or otherwise known to the Movants.[3]

18.     For the reasons stated in the Motion and at the Hearing, the Court grants the Movants' request for shortened notice with respect to the relief requested in the Motion. Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtors' proposed sale of the Purchased Assets free and clear of certain liens, claims, interests and encumbrances as set forth in the Agreement, pursuant to Bankruptcy Code section 363(f) and otherwise, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Movants.

19.     The Stalking Horse Bidder is entitled to make any additional bids at the Auction in compliance with the Bidding Procedures.  For purposes of any Overbid, the Stalking Horse Bidder shall be entitled to a credit in the amount of the Termination Fee.

20.     The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or announced by the Movants in open court.

21.     Section 7.5(c)(i) of the Agreement is hereby approved.  In connection therewith, the obligation of the Debtors' estates to pay the Termination Fee, as provided by the Agreement, is hereby approved and shall survive termination of the Agreement and shall be payable out of the proceeds of an Alternative Transaction as provided in Section 7.5(c)(i) of the Agreement.

---

[3]   With respect to serving all potential bidders previously identified or otherwise known to the Movants, these are the investors who entered into non-disclosure agreements with the Movants, and the Movants are authorized to file under seal that part of the service list providing the names and mailing addresses for all such parties which are served with the Sale Notice and this Order.

22.     Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Purchased Assets or a Qualifying Bid shall be entitled to any expense reimbursement, breakup, termination, or similar fee or payment.

23.     Except as otherwise provided in the Agreement or this Order, the Movants further reserve the right as they may reasonably determine to be in the best interests of the Debtors' estates (in consultation with the Consultation Party (i.e., the DIP Lender)) to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Company, the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; and (g) continue or cancel the Auction and/or Sale Hearing in open court without further notice or by filing a notice on the docket.  Before extending any deadline, the Movants shall consult with the Stalking Horse Bidder and the Consultation Party.

24.     All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Purchased Assets, the Auction and any transaction contemplated herein.

25.     To the extent that any order confirming any chapter 11 plan in the Chapter 11 Debtors' cases or any other order in these cases (including any order entered after any conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control.  The

9501108-23

Movants' obligations under this Order, the provisions of this Order and the portions of the Agreement pertaining to the Bidding Procedures shall survive conversion of the cases of the Chapter 11 Debtors to cases under chapter 7 of the Bankruptcy Code, confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, any chapter 7 trustee, the reorganized or reconstituted debtors, as the case may be, after the effective date of a confirmed plan or plans in the Chapter 11 Debtors' cases (including any order entered after any conversion of the cases of the Chapter 11 Debtors to cases under chapter 7 of the Bankruptcy Code).

26.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Order.

27.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28.     The Movants are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

29.     In the event there is any inconsistency between the Motion, the Bidding Procedures, or this Order, this Order shall govern.  The rights and obligations of the Stalking Horse Bidder and the Movants and/or the Debtors are subject to the full terms and conditions of the Agreement, which shall control in the event of any conflict between this Order and the Agreement.

30.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order. All matters arising from or related to the implementation of this

9501108-23

Order may be brought before the Court as a contested matter, without the necessity of commencing

an adversary proceeding.

*(Christopher Andrew Jarvinen, Esq. is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of the order.)*

9501108-23

## EXHIBIT "1"

**Bidding Procedures**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,                    Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]                (Jointly Administered with
                                                   Case No. 9:19-bk-1948)
          Debtors.                                 Chapter 11 Cases
_____/


In re:

BRUCE E. BOZZI, SR.,                               Case No. 9:19-bk-09677-FMD
                                                   Chapter 7
          Debtor.
_____/


In re:

WALTER J. GANZI, JR.,                              Case No. 9:19-bk-09680-FMD
                                                   Chapter 7
          Debtor.
_____/


## BIDDING PROCEDURES[2]

On March 7, 2019 (the "Chapter 11 Petition Date"), each of Just One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH" and together with JOMR, collectively, the "Chapter 11 Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"). On October 11, 2019 (the "Chapter 7 Petition Date", and together with the Chapter 11 Petition Date, collectively, the "Petition Dates"), each of Bruce E. Bozzi, Sr. ("Bozzi") and Walter J. Ganzi, Jr.

---

[1]    The last four digits of each Chapter 11 Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081). The address of the Chapter 11 Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

[2]    Any capitalized term not explicitly defined herein shall have the meaning ascribed to it in, as applicable, the Bidding Procedures Motion or the Bidding Procedures Order (as each is defined herein).

("Ganzi" and together with Bozzi, collectively, the "Chapter 7 Debtors") (together, the Chapter 11 Debtors and the Chapter 7 Debtors, collectively, the "Debtors") filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

On February 20, 2020, the *Joint Motion for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling a Hearing to Consider the Transaction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Procedures, and (VI) Granting Related Relief* (Doc. ___) (the "Bidding Procedures Motion") was filed by the Chapter 11 Debtors through Gerard A. McHale, Jr., not in his individual capacity but solely in his capacity as their Chief Restructuring Officer ("CRO"), and Robert E. Tardif, Jr., not in his individual capacity but solely in his capacity as the trustee (the "Trustee" and together with the CRO, collectively, the "Movants") appointed in the chapter 7 bankruptcy cases of each of the Chapter 7 Debtors on behalf of each of the business entities listed on Exhibit "A" attached to the Motion (collectively, the "Palm OpCos" and together with the Chapter 11 Debtors, collectively, the "Company") by the authority granted to the Movants by the Bankruptcy Code and the Palm OpCos Authorization Orders.

The Bidding Procedures Motion sought approval of, among other things, the procedures though which the Movants, in the exercise of the Debtors' business judgment, will determine the highest or otherwise best price for the sale of some, substantially all, or all of the Debtors' interests in the Company's assets (collectively, the "Purchased Assets") described in that certain Purchase Agreement (the "Agreement") by and among Golden Nugget, LLC, as purchaser (together with its permitted successors, assigns and designees, the "Stalking Horse Bidder") and the Movants, on behalf of the Debtors' estates, as sellers, a copy of which is attached as Exhibit "C" to the Sale Motion.

On February __, 2020, the Bankruptcy Court entered an order approving the Bidding Procedures Motion (Doc. ___) (the "Bidding Procedures Order" and the procedures set forth herein, the "Bidding Procedures"), which, among other things, authorized the Movants to determine the highest or otherwise best price for the Purchased Assets through the process and procedures set forth in these Bidding Procedures.

Unless expressly indicated, the following Bidding Procedures apply to all bidders regardless of the phase of the Auction in which the bidder intends to participate.

## Access to Diligence Materials.

To participate in the bidding process and to receive access to due diligence information, including access to the electronic data room being maintained by Raymond James & Associates, Inc. ("Raymond James"), the investment banker retained by the Chapter 11 Debtors and the Trustee on behalf of the Chapter 11 Debtors and the Palm OpCos, and to additional non-public information regarding the Company and the Debtors (collectively, the "Diligence Materials"), a party must deliver to the Movants an executed confidentiality agreement in the form and substance satisfactory in the sole discretion of the Movants (the "Confidentiality Agreement") and evidence demonstrating a party's financial capability to close a transaction involving some, substantially

all, or all of the Purchased Assets (a "Alternative Transaction"), as determined by the Movants, in consultation with DIP Lender (the "Consultation Party").[3]

A party who qualifies for access to Diligence Materials (each, a "Preliminary Interested Investor") may proceed to conduct due diligence and ultimately submit a Bid as defined in the Bidding Procedures. Only Preliminary Interested Investors may submit Bids.

All due diligence requests must be directed to Raymond James. To the extent reasonably practicable, Raymond James will also facilitate meetings between any interested Preliminary Interested Investor and the Company's management team, which meetings will proceed in a manner determined by the Movants, in their sole discretion.

The due diligence period will end on the Bid Deadline, as defined below, and, subsequent to the Bid Deadline, the Movants and their representatives, including but not limited to the Debtors' Advisors, will have no obligation to furnish any due diligence information to any party. For the avoidance of doubt, no due diligence will continue after the Bid Deadline.

Neither the Movants nor any of their respective representatives, including the Debtors' Advisors, will be obligated to furnish any information relating to the Purchased Assets other than to Preliminary Interested Investors. The Movants and the Debtors' Advisors make no representations or warranty as to the information to be provided through this due diligence process or otherwise, accept to the extent set forth in the Agreement or in any other definitive agreement a Successful Bidder executed and delivered to the Movants.

The Movants and the Debtors' Advisors will coordinate all reasonable requests from Preliminary Interested Investors for additional information and due diligence access; provided that the Movants may decline to provide such information to Preliminary Interested Investors who, at such time and in the Movants' exercise of the Debtors' business judgment, have not established, or who have raised doubt, that such Preliminary Interested Investor intends in good faith to, or has the capacity to, consummate an Alternative Transaction.

**For any Preliminary Interested Investor or Qualified Bidder who is a competitor of the Company or is affiliated with any competitor of the Company, the Movants reserve the right to withhold, or to delay providing, in their sole discretion, <u>any</u> Diligence Materials that the Movants determine are business-sensitive or otherwise inappropriate for disclosure to such Preliminary Interested Investor or Qualified Bidder, at any such time**.

**<u>All parties, Preliminary Interested Investors, and Qualified Bidders are prohibited from communicating with any of the Company's employees, directors, officers, landlords, vendors, suppliers, agents, existing lender(s) (including, but not limited to, the DIP Lender) or with any other potential bidder, Preliminary Interested Investor, or Qualified Bidder with respect to any Bid or Alternative Transaction absent the prior written consent of the Movants; provided that if such consent is given a representative of the Movants shall be</u>**

---

[3]   Notwithstanding anything in the Bidding Procedures to the contrary, the Movants will not consult with or provide copies of any bids or confidential information to the DIP Lender if the DIP Lender becomes an active bidder at any time for any of the Purchased Assets.

9501108-23

**present for or party to any such communications (unless otherwise agreed by the Movants in their sole discretion).**

Each Preliminary Interested Investor and Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Movants or the Debtors' Advisors regarding such Preliminary Interested Investor or Qualified Bidder.

Notwithstanding anything to the contrary herein, the DIP Lender and the Stalking Horse Bidder shall each be a Preliminary Interested Investor and a Qualified Bidder.

### Bid Qualification Process

I. **Bid Deadline**.

A Preliminary Interested Investor that desires to make a proposal, solicitation, or offer for some or all of the Purchased Assets (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be actually received by the following parties on or before **March 6, 2020, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"):

   a.   *Bankruptcy Counsel to JOMR and JOMH and transaction counsel to the Trustee*: Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, Attn: Paul Steven Singerman (singerman@bergersingerman.com) and Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com);

   b.   *The CRO for the Chapter 11 Debtors:* McHale, P.A., 1601 Jackson Street, Suite 200, Fort Myers, Florida 33901, Attn: Gerard A. McHale, Jr. (jerrym@thereceiver.net);

   c.   *The Trustee*: Robert E. Tardif, Jr., P.O. Box No. 2140, Fort Myers, Florida 33902 (rtardif@comcast.net); and

   d.   *The Investment Banker for the Chapter 11 Debtors and the Trustee:* Raymond James & Associates, Inc., 880 Carillon Parkway, St. Petersburg, Florida 33716, Attn: Geoffrey Richards (Geoffrey.Richards@RaymondJames.com) and Robert Arnold (Rob.Arnold@RaymondJames.com) (as defined, Raymond James, and together with Berger Singerman LLP, collectively, the "Debtors' Advisors").

II. **Bid Requirements**.

To be eligible to participate in the Auction (defined below), each Bid by a Preliminary Interested Investor (a "Bidder") must be submitted in writing and satisfy each of the following requirements (collectively, the "Bid Requirements") as determined by the Movants (in consultation with the Consultation Party):

   a.   Same or Better Terms:  The Bid must be on terms that are substantially the same or better than the terms of the Agreement, as determined by the Movants in their sole discretion (in consultation with the Consultation Party) and the Bid must identify which assets the Bidder intends to purchase and include executed transaction

4

documents (as defined herein, an Alternative Transaction). A Bid shall include both a clean version (in MS-Word) and a blackline against the Agreement marked to show all changes requested by the Bidder.  A Bid will not be considered qualified for the Auction if: (i) such Bid contains additional material representations and warranties, covenants, closing conditions, termination rights, financing, or due diligence contingencies other than as may be included in the Agreement (it being agreed and understood that such Bid shall modify the Agreement as needed to comply in all respects with the Bidding Procedures Order (including removing any termination rights in conflict with the Bidding Procedures Order) and will remove provisions that apply only to the Stalking Horse Bidder, as the stalking horse bidder, such as the Termination Fee); (ii) such Bid is not received by the Movants in writing on or prior to the Bid Deadline, and (iii) such Bid does not contain evidence that the Bidder(s) has/have received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof that the Earnest Money Deposit (defined below) has been made.

b.     <u>Amount of Bid</u>:  Each Bid may be for all or a portion of the Purchased Assets and shall clearly show the amount of the purchase price.  In addition, a Bid (a) must propose a purchase price equal to or greater than the aggregate of the sum of (i) the value of the Bid set forth in the Agreement  executed by the Stalking Horse Bidder, as determined by the Movants in their sole discretion (in consultation with the Consultation Party); <u>*plus*</u> (ii) the dollar value of the Termination Fee in cash, <u>*plus*</u> (iii) $100,000.00 (the initial overbid amount), in cash, and (b) must obligate the Bidder to pay, to the extent provided in the Agreement, all amounts which the Stalking Horse Bidder under the Agreement has agreed to pay, including all Assumed Liabilities; *provided that* any Bid for Purchased Assets that constitute collateral subject to the DIP Loan Facility must (a) provide for payment solely in cash, unless and until the obligations subject to the DIP Loan Facility (as defined in any interim or final order approving the DIP Loan Facility), have been, or, pursuant to such Bid, will be, indefeasibly paid in cash in full, or (b) have the consent of the DIP Lender.

c.     <u>Earnest Money Deposit</u>:   Each Bid, other than the Agreement, must be accompanied by a cash deposit in the amount equal to ten (10%) percent of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow account to be identified and established by the Movants (the "<u>Earnest Money Deposit</u>"), *provided that* the DIP Lender will not be required to provide a deposit with respect to the portion of any Bid that is a Credit Bid.

d.     <u>Proof of Financial Ability to Perform</u>:  The Bid must include written evidence that the Movants conclude in their sole discretion demonstrates that the Bidder has the necessary financial ability to close the Alternative Transaction and to provide adequate assurance of future performance under all contracts to be assumed and assigned in such Alternative Transaction.

e.  <u>Identity</u>:  Each Bid must fully disclose the identity of each person and entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder, including if such Bidder is an entity formed for the purpose of consummating the proposed Alternative Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Preliminary Interested Investors from submitting a joint Bid, subject to the Movants' prior written consent to such submission and the disclosure requirements set forth herein.

f.  <u>Authorization</u>:  Each Bid must contain written evidence acceptable to the Movants in their sole discretion that the Bidder has obtained appropriate authorization or approval from its board of directors (or a comparable governing body) with respect to the submission of its Bid and the consummation of the Alternative Transaction contemplated in such Bid.

g.  <u>Contingencies</u>:  A Bid will not be considered qualified for the Auction if it (i) contains any of the contingencies set forth above in sub-paragraph "a", or (ii) is conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

h.  <u>Irrevocable</u>:  A Bid must be irrevocable through the Auction, <u>provided</u>, <u>however</u>, that if such Bid is accepted as the Successful Bid or a Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

i.  <u>Adequate Assurance of Future Performance</u>:  To the extent applicable, each Bid must contain evidence that the Bidder has the ability to comply with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code (the "<u>Adequate Assurance Information</u>").  Such Adequate Assurance Information may include: (i) information about the Bidder's financial condition, such as federal tax returns for two (2) years, a current  financial statement, or bank account statements; (ii) information demonstrating (as determined by the Movants in their exercise of the Debtors' reasonable business judgment (in consultation with the Consultation  Party)) that the Bidder has the financial capacity to consummate the proposed Alternative Transaction, (iii) evidence that the Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with  respect to the submission of its Bid, (iv) the identity and exact name of the Bidder (including any equity holder or other financial backer if the Bidder is an entity formed for the purpose of consummating the proposed Alternative Transaction, (v) such additional information regarding the Bidder as the Bidder may elect to include, and (vi) such other documentation that the Movants may request.  By submitting a Bid, the Bidder(s) agree that the

6

Movants may disseminate their Adequate Assurance Information to affected landlords and contract counterparties in the event that the Movants determine such Bid to be a Qualified Bid.

j.   <u>As-Is, Where-Is</u>: Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the assets prior to making its Bid; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the asset(s) in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's mark-up of the Agreement.

k.   <u>Affirmative Statement</u>: Each Bid shall be accompanied by an affirmative statement in which the Bidder explicitly agrees that (i) it has and will continue to comply with these Bidding Procedures; (ii) the Bid it submits does not entitle such Bidder (and if it becomes a Qualified Bidder) to any breakup fee, termination fee, expense reimbursement, or similar type of payment or reimbursement; and (iii) it waives any substantial contribution administrative expense claims under Bankruptcy Code section 503(b) related to bidding for the Purchased Assets.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures, including but not limited to, refraining from, after the conclusion of the Auction, either submitting a Bid or seeking to reopen the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Purchased Assets (or assets) as reflected in such Bid**.

### III.   <u>Designation of Qualified Bidders</u>.

The Movants will review each Bid received from a Bidder. A Bid will be considered a "<u>Qualified Bid</u>," and each Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Movants determine, in their sole discretion and in the exercise of the Debtors' business judgment (in consultation with the Consultation Party), that such Bid was received before the Bid Deadline and satisfies the Bid Requirements set forth above.

Notwithstanding anything herein to the contrary, the Agreement submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder for each phase of the Auction.

No later than two (2) business days after the receipt of a Bid, the Movants will notify the relevant Bidder whether or not its Bid has been designated as a Qualified Bid. Notwithstanding anything to the contrary herein, and without limiting the provisions of Section IV ("Right to Credit Bid") herein with respect to credit bids, the DIP Lender shall be a Qualified Bidder, and to the extent that the DIP Lender submits a Bid that is received by the Bid Deadline, such Bid shall be a Qualified Bid.

Upon the receipt of any competing Bid(s), the Movants shall immediately provide counsel for the Stalking Horse Bidder copies of any blackline of the Agreement received by the Movants from such Bidder(s).

If any Bid is determined by the Movants not to be a Qualified Bid, the Movants will refund such Bidder's Earnest Money Deposit on the date that is three (3) business days after the Movants inform the Bidder that its Bid is not a Qualified Bid, or as soon as is reasonably practicable thereafter.

Between the date that the Movants notify a Bidder that it is a Qualified Bidder and the Auction, the Movants may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Movants, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the purchase price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## IV.    **Right to Credit Bid**.

The DIP Lender shall have the right to credit bid all or a portion of the value of such DIP Lender's secured claims pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline.

In the event the DIP Lender submits a Bid (whether it be a Qualified Bid, a credit bid or otherwise), the DIP Lender shall no longer be a Consultation Party and shall automatically be deemed excluded from the definition of Consultation Party.

## V.    **The Auction**.

If one or more Qualified Bids (other than the Agreement submitted by the Stalking Horse Bidder) are received by the Bid Deadline, the Movants will conduct an auction (the "Auction") to determine the highest or otherwise best Qualified Bid. If no Qualified Bid (other than the Agreement) is received by the Bid Deadline, no Auction shall be conducted and the Agreement shall be deemed to be the Successful Bid and the Stalking Horse Bidder shall be deemed to be the Successful Bidder. Only Qualified Bidders may participate in the Auction.

No later than **March 8, 2020 at 5:00 p.m. (prevailing Eastern Time)**, the Movants will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined by the Movants in their exercise of the Debtors' business judgment, in consultation with the Consultation Party (the "Auction Baseline Bid"), and will provide copies of the documents supporting the Auction Baseline Bid to all Qualified Bidders.

The determination of which Qualified Bid constitutes the Auction Baseline Bid and which Qualified Bid constitutes the Successful Bid (defined herein) shall take into account any factors that the Movants deem in their sole discretion to be relevant to the value of the Qualified Bid to the Debtors' estates and the Company, including, among other things: (a) the type and amount of

Purchased Assets (or assets) sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Auction Baseline Bid; (e) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; and (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed, including the assumption of collective bargaining agreements (collectively, the "Bid Assessment Criteria").

The Auction (if any) shall take place on **March 9, 2020 at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, or such other date and time and/or place as selected by the Movants (in consultation with the Consultation Party) shall notify all Qualified Bidders, including the Stalking Horse Bidder, counsel for the Stalking Horse Bidder and other invitees in accordance with these Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Auction to a later date.

The Auction shall be conducted according to the following procedures:

a.      The Movants Shall Conduct the Auction.

The Movants and their professionals, including but not limited to the Debtors' Advisors, shall direct and preside over the Auction.  At the start of the Auction, the Movants shall announce which Qualified Bid(s) is/are deemed to be the Auction Baseline Bid.

Only (i) the Movants, (ii) the Stalking Horse Bidder, (iii) any other Qualified Bidder, (iv) the Consultation Party (i.e., the DIP Lender), and (v) with respect to (i) through (iv), each of their respective representatives and legal and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.

b.      No Collusion; Good-Faith *Bona Fide* Offer

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding or sale of the Purchased Assets, and (ii) its Qualified Bid is a good-faith bona fide offer and it intends to consummate the proposed transaction for the Purchased Assets if selected as the Successful Bidder.

c.      Terms of Overbids

An "Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Movants' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i)      Minimum Overbid Increment.    Any Overbid following the Auction

9

Baseline Bid shall be no less than the value of the $100,000.00 as determined by the Movants in their exercise of the Debtors' business judgment. Additional consideration in excess of the amount set forth in an Auction Baseline Bid may include cash and/or noncash consideration. For purposes of the Overbid, the Stalking Horse Bidder shall be entitled to credit in the amount of the Termination Fee.

(ii)    <u>Remaining terms are the same as for Qualified Bids</u>. Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Movants accept a higher Overbid. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Company and/or the Debtors' estates than any prior Qualified Bid or Overbid, as determined by the Movants in their exercise of the Debtors' business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

d.    <u>Consideration of Overbids</u>

The Movants reserve the right, in their exercise of the Debtors' business judgment and in consultation with the Consultation Party, to adjourn the Auction one or more times, to, among other things, to (i) facilitate discussions between the Movants and the Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Movants with such additional evidence as the Movants, in their exercise of the Debtors' business judgment, may require, that the relevant Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed purchase of the Purchased Assets at the prevailing Overbid amount.

Upon the solicitation of each round of Overbids, the Movants may announce a deadline (as the Movants may, in their exercise of the Debtors' business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Movants.

Subsequent to each Overbid Round Deadline, the Movants shall announce whether the Movants have identified, (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Auction Baseline Bid, or, (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Movants as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>"). The Movants shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Movants as the Prevailing Highest Bid as well as the value attributable by the Movants to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

e.    <u>Backup Bidder</u>

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as

determined by the Movants, in their exercise of the Debtors' business judgment (in consultation with the Consultation Party), will be designated as the backup bidder (the "Backup Bidder"). Subject to the Agreement, including Section 7.5(c)(ii) of the Agreement, the Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 4:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the conclusion of the Auction (the "Outside Backup Date") or the closing of the Alternative Transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, the Movants may designate (in consultation with the Consultation Party) the Backup Bidder to be the new Successful Bidder, and the Movants will be authorized, but not required, to consummate the transaction, with the Backup Bidder.  A hearing to authorize a sale to the Backup Bidder will be held by the Bankruptcy Court on no less than three (3) days' notice, with supplemental objections due at least two (2) days prior to such hearing (the "Backup Sale Hearing").  For the avoidance of doubt, only parties who timely filed an objection to the Sale by the Sale Objection Deadline may supplement their objection to the Backup Bidder and all such issues shall be limited to issues relating to the identity of the Backup Bidder.  In such case, the defaulting Successful Bidder's Earnest Money Deposit shall be forfeited to the Movants on behalf of the Debtors' estates, and the Movants, on behalf of the Debtors, specifically reserve the right to seek all available damages from the defaulting Successful Bidder.  The Earnest Money Deposit of the Backup Bidder shall be held by the Movants until the earlier of one (1) business day after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

f.    Additional and Modified Procedures

The Movants (in consultation with the Consultation Party) may announce at the Auction additional or modified rules and procedures that are reasonable under the circumstances (e.g., limitations on the amount of time to make subsequent Overbids, changes in minimum Overbid increments, etc.) for conducting the Auction so long as such rules are not inconsistent with the Bidding Procedures or the Agreement.

g.    Consent to Jurisdiction as Condition to Bidding

The Stalking Horse Bidder and all Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection any disputes relating to these Bidding Procedures, the Auction, or the construction and enforcement of any documents relating to an Alternative Transaction.

h.    Closing the Auction

The Auction shall continue until the Movants determine, in their exercise of the Debtors' reasonable business judgment (in consultation with Consultation Party), that there is a highest or otherwise best Qualified Bid or Qualified Bids at the Auction for some, substantially all, or all of the Purchased Assets (each a "Successful Bid" and each Bidder submitting such Successful Bid, a

11

"Successful Bidder").  The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbids and the Successful Bidder has submitted fully executed sale and transaction documents memorializing the terms of the Successful Bid.  Within six (6) hours following the conclusion of the Auction, the Movants shall file a notice on the Bankruptcy Court's docket in each of the cases of the Chapter 7 Debtors and in the lead case for the Chapter 11 Debtors identifying (with specificity) the Successful Bidder for the Purchased Assets and any applicable Backup Bidders.  The Movants shall not consider any Bids submitted after the conclusion of the Auction and any and all such Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

Such acceptance by the Movants, on behalf of the Debtors, of the Successful Bid is conditioned upon approval by the Bankruptcy Court of the Successful Bid.

The Movants shall maintain a written transcript of all Bids made and announced at the Auction, including the Auction Baseline Bid, all Overbids, all Prevailing Highest Bids, the Successful Bid and any Backup Bid.

## VI.   **Termination Fee**.

The Stalking Horse Bidder is entitled to payment of its Termination Fee pursuant to the terms of the Agreement.

The Movants recognize the value and benefits that the Stalking Horse Bidder has provided to the Debtors' estates by entering into the Agreement, as well as the Stalking Horse Bidder's expenditure of time, energy and resources.  Therefore, subject to the terms of the Agreement, the Movants shall pay the Breakup Fee and the Expense Reimbursement out of the proceeds of an Alternative Transaction to the Stalking Horse Bidder by wire transfer of immediately available funds to the account specified by the Stalking Horse Bidder to the Movants  in writing and shall be paid to the Stalking Horse Bidder prior to the payment of the proceeds of such sale to any third party asserting a lien on the Purchased Assets (and no Lien of any third party shall attach to the portion of the sale proceeds representing the Breakup Fee and the Expense Reimbursement.)

The Breakup Fee shall be paid three (3) business days following the closing of an Alternative Transaction. Prior to payment of the Expense Reimbursement, the Stalking Horse Bidder shall provide the Movants with invoices detailing its documented, out-of-pocket expenses and the Movants shall have three (3) business days to object (the "Expense Reimbursement Objection Deadline") to the reasonableness of the expenses incurred.  The Expense Reimbursement shall be paid within three (3) business days following the expiration of the Expense Reimbursement Objection Deadline if no objections are received.

The Termination Fee shall constitute an allowed administrative expense claim against the Debtors' bankruptcy estates.

Except for the Stalking Horse Bidder, no other party submitting an offer or Bid for the Purchased Assets or a Qualifying Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

In the event no Qualified Bid, other than the Stalking Horse Bid, is received, the Movants reserve the right to request (in consultation with the Consultation Party) that the Bankruptcy Court advance the date of the Sale Hearing and provide notice of such new date to those parties in interest entitled to notice thereof.

The Sale Hearing may be adjourned or rescheduled from time to time.

**VII.** **Sale Hearing**.

Objections, if any, to the Sale and/or the sale of the Purchased Assets to the Successful Bidder and the transaction contemplated by the Agreement must be in writing and filed with the Bankruptcy Court no later than **4:00 p.m. (prevailing Eastern Time) on March 3, 2020** (the "Sale Objection Deadline") and be served such that they are actually received by the following parties prior to the Sale Objection Deadline: (1) *JOMR and JOMH*, c/o (i) the Chief Restructuring Officer, McHale, P.A., 1601 Jackson Street, Suite 200, Fort Myers, FL 33901 (Attn:  Gerard A. McHale, Jr., jerrym@thereceiver.net and Veronica Larriva, veronical@thereceiver.net) and (ii) *bankruptcy counsel for JOMR and JOMH*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (2) (i) *the Trustee*, Robert E. Tardif, Jr., P.O. Box No. 2140, Fort Myers, FL 33902 (Attn: Robert E. Tardif, Jr., Esq. (rtardif@comcast.net)) and (ii) *transaction counsel for the Trustee*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (3) counsel for the Stalking Horse Bidder, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com) and Andrew L. Magaziner, Esq. (amagaziner@ycst.com); and (4) *counsel for the DIP Lender*, Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103 (Attn: Scott M. Esterbrook, Esq. (SEsterbrook@ReedSmith.com) and Brian M. Schenker, Esq. (BSchenker@ReedSmith.com); and (5) *the Office of the United States Trustee*, 501 East Polk Street, Room 1200, Tampa, FL 33602 (Attn: Benjamin E. Lambers, Esq. (Ben.E.Lambers@usdoj.gov) and Steven Wilkes, Esq. (Steven.Wilkes@usdoj.gov)).

If no Auction is to be held, the Movants will file a notice **no later than 8:00 p.m. (prevailing Eastern Time) on March 6, 2020** with the Court in each of the Debtors' bankruptcy cases stating that there will be no Auction (the notice will be posted at the Court's website https://ecf.flmb.uscourts.gov/ which requires a court-issued login and passcode to access the notice).

In the event that no Auction is to be held, the Movants will seek a hearing (the "Sale Hearing") on **March 9, 2020 at _____ am/pm (prevailing Eastern Time)**, at which the Movants will seek approval of the transactions contemplated by the Agreement with the Successful Bidder, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.  In the event that an Auction is to be held, the Movants will seek a Sale Hearing on **March 10/11, 2020 at _____ am/pm (prevailing Eastern Time)**, at which the Movants will seek approval of the transactions contemplated by the Agreement with the Successful Bidder, and for the avoidance of any doubt, the Sale Hearing is subject to the right of

13

the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.

**The Sale Hearing may be continued to a later date by the Movants by either filing a notice with the Bankruptcy Court prior to, or making an announcement in open court at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

The approved Sale shall close not later than March 31, 2020, unless the Movants, in the exercise of the Debtors' reasonable business judgment, agree to a later date.

## VIII.    <u>Return of Earnest Money Deposit</u>.

The Earnest Money Deposits for each Qualified Bidder (i) shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Movants in their sole discretion on behalf of the Debtors' estates, (ii) shall not become property of the Debtors' estates absent further order of the Bankruptcy Court, and (iii) shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on the date that is three (3) business days after the Sale Hearing, or as soon as is reasonably practicable thereafter.

The Earnest Money Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of one (1) business day after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.  If the Successful Bidder timely closes its winning transaction, its Earnest Money Deposit shall be credited towards its purchase price.

Upon the return of the Earnest Money Deposit, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Movants will not have any obligation to return the Earnest Money Deposit deposited by such Successful Bidder, which may be retained by the Debtors' estates as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Movants on behalf of the Debtors, and the Movants shall be free to consummate the proposed Alternative Transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## IX.    <u>Free and Clear Sale</u>.

Except as otherwise provided in the Agreement, the applicable purchase agreement of a different Successful Bidder, or the Sale Order, all of the Debtors' rights, title, and interests in the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "<u>Encumbrances</u>") in accordance with section 363 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the sale of the Purchased Assets.

## X.    **Fiduciary Duties**.

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Movants, on behalf of the Debtors, from exercising their respective fiduciary duties under applicable law.

## XI.    **Reservation of Rights**.

Except as otherwise provided in Agreement, the Bidding Procedures Order or the Sale Order, the Movants further reserve the right as they may reasonably determine at any time, whether before, during or after the Auction, in the exercise of the Debtors' business judgment (in consultation with the Consultation Party) to: (a) determine which Bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids and reject any or all Bids or Qualified Bids; (c) determine which  Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Company or the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders other than the Stalking Horse Bidder; (f) modify these Bidding Procedures and/or implement additional procedural rules that the Movants determine will better promote the goals of the bidding process, including but not limited to adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (g) extend the deadlines set forth in these Bidding Procedures; and (h) adjourn or cancel the Auction at the Auction and/or the Sale Hearing in open court without further notice or by filing a notice on the docket (in consultation with the Stalking Horse Bidder and the Consultation Party).

For the avoidance of doubt, the Movants shall not be required to consult with the Consultation Party if it submits a Bid for so long as such Bid remains open, including any credit bid, if the Movants, in the exercise of the Debtors' reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection or determination is (a) likely to have a chilling effect on the potential bidding or (b) otherwise contrary to the goal of maximizing value from the sale process for the Debtors' estates, their creditors and all other interested parties.

**EXHIBIT "2"**

**Bidding Procedures Key Dates**

| Event | Date |
|---|---|
| Hearing on the Motion for Bidding Procedures | February 25, 2020 at 3:30 p.m. (prevailing Eastern Time) |
| Service of Bidding Procedures Order | Within one (1) business day after the Bankruptcy Court's entry of the Bidding Procedures Order |
| Sale Objection Deadline | March 3, 2020 at 4:00 p.m. (prevailing Eastern Time) |
| Bid Deadline | March 6, 2020 at 5:00 p.m. (prevailing Eastern Time) |
| Notice of No Auction to be Held (if applicable) | March 6, 2020 at 8:00 p.m. (prevailing Eastern Time) |
| Notification of Auction Baseline Bid to all Qualified Bidders | March 8, 2020 at 5:00 p.m. (prevailing Eastern Time) |
| Auction | March 9, 2020 at 10:00 a.m. (prevailing Eastern Time), subject to the right of the Movants, in their exercise of the reasonable business judgment of the Debtors, to adjourn the Auction to a later date.  If an Auction is to be held, it shall take place at the offices of the Escrow Agent (Berger Singerman LLP, 1450 Brickell Avenue, 19th Floor, Miami, Florida 33131). |
| Sale Hearing | *If no Auction is to be held*, March 9, 2020 at _____ a.m./p.m. (prevailing Eastern Time), subject to the right of the Movants, in their exercise of the reasonable business judgment of the Debtors, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. <br><br> *If an Auction is to be held*, March 10/11, 2020 at _____ a.m./p.m. (prevailing Eastern Time), subject to the right of the Movants, in their exercise of the reasonable business judgment of the Debtors, to adjourn the Sale Hearing to a later date, subject to the availability of the Court. |
| Deadline to Close the Sale | March 31, 2020, subject to the right of the Movants, in their exercise of the reasonable business judgment of the Debtors, to agree to a later date. |

## EXHIBIT "3"

**Notice of Sale of Certain Assets at Auction**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

JUST ONE MORE RESTAURANT CORP.,                 Case No. 9:19-bk-1947
and JUST ONE MORE HOLDING CORP.,[1]             (Jointly Administered with
                                                Case No. 9:19-bk-1948)
     Debtors.                                  Chapter 11 Cases
_____/

In re:

BRUCE E. BOZZI, SR.,                            Case No. 9:19-bk-09677-FMD
                                                Chapter 7
     Debtor.
_____/

In re:

WALTER J. GANZI, JR.,                           Case No. 9:19-bk-09680-FMD
                                                Chapter 7
     Debtor.
_____/

### NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

     1.     Pursuant to the *Order Approving Joint Motion for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Scheduling a Hearing to Consider the Transaction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Procedures, and (VI) Granting Related Relief* (Doc. ___) (the "Bidding Procedures Order")[2] entered by the United States Bankruptcy Court for the Middle District of Florida (the "Court") on February __, 2020, Just One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH" and together with JOMR, collectively, the "Chapter 11 Debtors") through Gerard A. McHale, Jr., not in his individual capacity but solely in his capacity as the Chief Restructuring Officer of the Chapter 11 Debtors (the "CRO"), and Robert E. Tardif,

---

[1]    The last four digits of each Chapter 11 Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081).  The address of the Chapter 11 Debtors is 8955 Fontana Del Sol Way, 2nd Floor, Naples, FL 34109.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them, as applicable, in the Bidding Procedures Order, the Motion (as defined in the Bidding Procedures Order) or the Agreement (as defined in the Bidding Procedures Order).

Jr., not in his individual capacity but solely in his capacity as the trustee (the "Trustee", and together with the CRO, collectively, the "Movants") appointed in the chapter 7 bankruptcy cases of each of Bruce E. Bozzi, Sr. ("Bozzi") and Walter J. Ganzi, Jr. ("Ganzi" and together with Bozzi, collectively, the "Chapter 7 Debtors"; together, the Chapter 11 Debtors and the Chapter 7 Debtors, collectively, the "Debtors") on behalf of the estates of the Chapter 7 Debtors and each of the business entities listed on Exhibit "A" attached to the Motion (collectively, the "Palm OpCos" and together with the Chapter 11 Debtors, collectively, the "Company") by the authority granted to the Movants by title 11 of the U.S. Code (the "Bankruptcy Code") and the Palm OpCos Authorization Orders, have entered into a Purchase Agreement (the "Agreement") with Golden Nugget, LLC (together with its permitted successors, assigns and designees, the "Stalking Horse Bidder") for the sale of substantially all of the Debtors' interests in the Company's assets subject to a competitive bidding process as set forth in the Bidding Procedures Order. Capitalized terms used but not otherwise defined in this notice have the meanings ascribed to them, as applicable, in the Bidding Procedures Order or the Agreement.

2.      Copies of (i) the Motion, (ii) the Agreement, (iii) the proposed Sale Order, (iv) the Bidding Procedures, and (v) the Bidding Procedures Order can be obtained by contacting the Movants at either (i) *the investment banker retained by the Chapter 11 Debtors and the Trustee on behalf of the Palm OpCos*, Raymond James & Associates, Inc., 880 Carillon Parkway, St. Petersburg, FL 33716 (Attn: Geoffrey Richards (Geoffrey.Richards@RaymondJames.com) and Rob Arnold (Rob.Arnold@RaymondJames.com), or (ii) *the bankruptcy counsel for the Chapter 11 Debtors and transaction counsel for the Trustee*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman (singerman@bergersingerman.com) and Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com).

3.      All interested parties are invited to make an offer to purchase the Purchased Assets in accordance with the terms and conditions approved by the Court (the "Bidding Procedures") by **5:00 p.m. (prevailing Eastern Time) on March 6, 2020**. Pursuant to the Bidding Procedures, the Movants may conduct an Auction for the Purchased Assets (the "Auction") beginning at **10:00 a.m. (prevailing Eastern Time) on March 9, 2020** at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, or such later time or other place as the Movants notify all Qualified Bidders who have submitted Qualified Bids, and for the avoidance of any doubt, the Auction is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Auction to a later date. Interested bidders are encouraged to read the Bidding Procedures carefully and, for further information, are invited to contact the bankruptcy counsel for the Chapter 11 Debtors and transaction counsel for the Trustee at Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131 (Attn: Paul Steven Singerman (singerman@bergersingerman.com) and Christopher Andrew Jarvinen (cjarvinen@bergersingerman.com)), or the investment banker retained by the Chapter 11 Debtors and the Trustee on behalf of the Palm OpCos, Raymond James & Associates, Inc., 880 Carillon Parkway, St. Petersburg, FL 33716 (Attn: Geoffrey Richards (Geoffrey.Richards@ RaymondJames.com) and Rob Arnold (Rob.Arnold@RaymondJames.com)).

4.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.

5.      If no Auction is held, the Movants will file a notice **no later than 8:00 p.m. (prevailing Eastern Time) on March 6, 2020** with the Court in each of the Debtors' bankruptcy cases stating that there will be no Auction (the notice will be posted at the Court's website https://ecf.flmb.uscourts.gov/ which requires a court-issued login and passcode to access the notice).  In the event that an Auction is not held, the Movants will seek approval of the Sale of the Purchased Assets to the Stalking Horse Bidder at a hearing before the Court proposed to be held, in Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, FL 33602, before the Honorable Caryl E. Delano, United States Bankruptcy Judge, at _____ **a.m./p.m. (prevailing Eastern Time) on March 9, 2020** (the "Sale Hearing").  On the other hand, in the event that an Auction is held, the Movants will seek a Sale Hearing, at _____ **a.m./p.m. (prevailing Eastern Time) on March 10/11, 2020**.  The Sale Hearing may be adjourned without notice other than adjournment in open court or as identified on the agenda, and for the avoidance of any doubt, the Sale Hearing is subject to the right of the Movants, in the exercise of the reasonable business judgment of the Debtors, to adjourn the Sale Hearing to a later date, subject to the availability of the Court.  Any party opposing the relief sought at the Sale Hearing must appear at the Sale Hearing or any objections or defenses may be deemed waived.  You are reminded that Local Rule 5073-1 restricts the entry of cellular telephones and, except in Orlando, computers into the Courthouse absent a specific order of authorization issued beforehand by the presiding judge, a valid Florida Bar identification card, or *pro hac vice* order.  Please take notice that as an additional security measure a photo ID is required for entry into the courthouse.

6.      **Objections, if any, to the proposed Sale must (a) be in writing; (b) state the basis of such objection with specificity; (c) comply with the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court no later than March 3, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") and be served such that they are actually received by the following parties prior to the Sale Objection Deadline: (1) *JOMR and JOMH*, c/o (i) the Chief Restructuring Officer, McHale, P.A., 1601 Jackson Street, Suite 200, Fort Myers, FL 33901 (Attn:     Gerard   A.   McHale,   Jr.,   jerrym@thereceiver.net   and   Veronica   Larriva, veronical@thereceiver.net) and (ii) *bankruptcy counsel for JOMR and JOMH*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com)    and    Christopher    Andrew    Jarvinen,    Esq. (cjarvinen@bergersingerman.com)); (2) (i) *the Trustee*, Robert E. Tardif, Jr., P.O. Box No. 2140, Fort Myers, FL 33902 (Attn: Robert E. Tardif, Jr., Esq. (rtardif@comcast.net)) and (ii) *transaction counsel for the Trustee*, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Paul Steven Singerman, Esq. (singerman@bergersingerman.com) and Christopher Andrew Jarvinen, Esq. (cjarvinen@bergersingerman.com)); (3) counsel for the Stalking Horse Bidder, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq. (mnestor@ycst.com) and Andrew L. Magaziner, Esq. (amagaziner@ycst.com); and (4) *counsel for the DIP Lender*, Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia, PA 19103 (Attn: Scott M. Esterbrook, Esq. (SEsterbrook@ReedSmith.com) and Brian M. Schenker, Esq. (BSchenker@ReedSmith.com); and (5) *the Office of the United States Trustee*, 501 East Polk Street, Room 1200, Tampa, FL 33602 (Attn: Benjamin E. Lambers, Esq. (Ben.E.Lambers@usdoj.gov) and Steven Wilkes, Esq. (Steven.Wilkes@usdoj.gov)).

7.      This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: February __, 2020          **BERGER SINGERMAN LLP**
Miami, Florida                    *Counsel for the Chapter 11 Debtors and*
                                  *Transaction Counsel for the Trustee*
                                  1450 Brickell Avenue, Suite 1900
                                  Miami, Florida 33131
                                  Telephone: (305) 755-9500
                                  Facsimile: (305) 714-4340

                                  By:    Christopher Andrew Jarvinen
                                         Paul Steven Singerman
                                         Florida Bar No. 0378860
                                         singerman@bergersingerman.com
                                         Christopher Andrew Jarvinen
                                         Florida Bar No. 021745
                                         cjarvinen@bergersingerman.com

9501108-23

Label Matrix for local noticing
113A-9
Case 9:19-bk-09677-FMD
Middle District of Florida
Ft. Myers
Thu Feb 20 13:09:37 EST 2020

Bank of America, N.A.
Bush Ross PA
c/o Andrew T. Jenkins, Esq.
PO Box 3913
Tampa, FL 33601-3913

Bank of America, N.A.
Phelan Hallinan Diamond & Jones, PLLC
2001 NW 64th Street
Suite 100
Ft. Lauderdale, FL 33309-1844

Bruce E. Bozzi Sr.
2161 Gulf of Mexico Drive
Longboat Key, FL 34228-5230

Douglas Elliman
20 Main Street
East Hampton, NY 11937-2745

Scott Esterbrook
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762

Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 E. 42nd Street
48th Floor
New York, NY 10165-3003

Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Soneet Kapila
1000 South Federal Highway
Suite 200
Ft. Lauderdale, FL 33316-1237

Raymond James & Associates, Inc
880 Carillon Parkway
St. Petersburg, FL 33716-1100

SF V CLE Lending, LLC
c/o Reed Smith LLP
1001 Brickell Bay Dr.
Suite 900
Miami, FL 33131-4937

Atlanta Palm Food Corp.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

B.W. Associates, Inc.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Bank of America
Global Commercial Banking
1301 Gervais Street, Suite 2020
SC3-230-20-02
Columbia, SC 29201-3354

Bank of America
PO Box 660576
Dallas, TX 75266-0576

Bank of America, N.A.
c/o Andrew T. Jenkins
Post Office Box 3913
Tampa, Florida 33601-3913

Boston Palm Corporation
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Briargrove Retail LP
One Riverway, Suite 100
Houston, TX 77056-1962

Charlotte Palm Corp.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Chicago Palm, Inc.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Claire Breen
c/o Frederic Newman, Esq.
Hoguett Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Cooley LLP
101 California Street, 5th F
San Francisco, CA 94111-5800

DGMB Associates, Inc.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Denver Palm Corporation
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Estate of Charles Cook
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60E. 42nd St., 48th Floor
New York, NY 10165-3003

Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Gary Ganzi
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Home Tech
6400 Techster Blvd.
Fort Myers  FL 33966-4721

INTERNAL REVENUE SERVICE
P O BOX 7346
PHILADELPHIA,PA 19101-7346

Just One More Rest. Corp.
8955 Fontana del Sol Way
2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Holdings
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Kasowitz Benson Torres LLP
16 Broadway
New York, NY 10004-1703

LA Downtown Palm, LLC
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Mary Ann Bozzi
2161 Gulf of Mexico Drive
Longboat Key FL 34228-5230

Mercedes-Benz Credit Corp.
PO Box 5209
Carol Stream  IL  60197-5209

Mercedes-Benz Financial Services USA
PO Box 5260
Carol Stream  IL  60197-5260

Miami Palm Restaurant, Inc.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Nashville Palm Restaurant
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Airport, LLC
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Beverly Hills Rest. Mgr
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm New York Downtown
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Orlando Corp.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Philadelphia Investor
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Philadelphia Manager
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Restaurant Inc.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Restaurant of Houston
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Restaurant of Las Vegas
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm Tysons Too Inc.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Palm West Corp.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

San Antonio Palm Restaurant
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Sparkling Pools
PO Box 1280
Sag Harbor  NY  11963

The Washington Palm, Inc.
c/o Palm Management Corp.
7380 West Sand Lake Road
Suite 450
Orlando, FL 32819-5251

Victor Ganzi
126 East 56th Street, 14th Floor
New York, NY 10022-3077

W.B. Associates, Inc.
7380 West Sand Lake Road
Suite 450
Orlando FL 32819-5251

Walter J. Ganzi
8171 Bay Colony Drive
#1902
Naples FL 34108-7567

Weber & Grahn
216 E. Montauk Hwy.
Hampton Bays  NY  11946-1902

Robert E Tardif Jr.+
Trustee
Post Office Box 2140
Fort Myers, FL 33902-2140

Benjamin E. Lambers +
Timberlake Annex
501 E. Polk Street, Suite 1200
Tampa, FL 33602-3945

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Steven J Solomon +
GrayRobinson, PA
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Robert E Tardif, Attorney for Trustee +
Robert E. Tardif, Jr., P.A.
Post Office Box 2140
Fort Myers, FL 33902-2140

United States Trustee - TPA7/13 +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Robert F Elgidely +
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131-1833

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Marian G Kennady +
Reed Smith LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131-4937

J Steven Wilkes +
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602-3949

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Gregg A Steinman +
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131-5340

Brenda E Carpenter +
Phelan Hallinan Diamond & Jones, PLLC
2001 NW 64th Street, Suite 100
Fort Lauderdale, FL 33309-1844

Joshua D Rievman +
Dunning Rievman & Davies, LLP
434 West 33rd Street
New York, NY 10001-2601

Fredric S. Newman +
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165-3003

Megan Preusker +
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Claire Breen

(u)Gary Ganzi

(u)Victor F. Ganzi

(u)Gary Ganzi and Claire Breen as Attorneys-i

(u)MCP II Jefferson, LLC

(d)Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

(d)Just One More Restaurant Corp.
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

End of Label Matrix
Mailable recipients     75
Bypassed recipients      7
Total                   82

Label Matrix for local noticing
113A-9
Case 9:19-bk-09680-FMD
Middle District of Florida
Ft. Myers
Thu Feb 20 13:08:59 EST 2020

Bank of America, N.A.
Bush Ross PA
c/o Andrew T. Jenkins, Esq.
PO Box 3913
Tampa, FL 33601-3913

Tom Crouch
Benson & Mangold
116 N. Talbot Street, Suite A
Saint Michaels, MD 21663-2144

Scott Esterbrook
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762

Walter J. Ganzi Jr
8171 Bay Colony Drive
#1902
Naples, FL 34108-7567

Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 E. 42nd Street
48th Floor
New York, NY 10165-3003

Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Soneet R Kapila
Kapila & Company
1000 S. Federal Highway
Suite 200
Ft. Lauderdale
FL, FL 33316-1237

SF V CLE Lending, LLC
c/o Reed Smith LLP
1001 Brickell Bay Dr.
Suite 900
Miami, FL 33131-4937

Bank of America
Global Commercial Banking
1301 Gervais Street, Suite 2020
SC3-230-20-02
Columbia, SC 29201-3354

Bank of America
PO Box 660576
Dallas, TX 75266-0576

Briargrove Retail LP
One Riverway, Suite 100
Houston, TX 77056-1962

Claire Breen
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Cooley LLP
101 California Street, 5th F
San Francisco, CA 94111-5800

Estate of Charles Cook
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Gary Ganzi
c/o Frederic Newman, Esq.
Hoguet Newman Regal & Kenney
60 E. 42nd St., 48th Floor
New York, NY 10165-3003

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Just One More Holding Corp.,
1450 Brickell Avenue
Ste 1900
Miami FL 33191-0001

Just One More Restaurant Holdings
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Land Rover Financial Group
1820 East Sky Harbour Circle #150
Phoenix, AZ 85034-4875

Verizon
by American InfoSource as agent
PO Box 4457
Houston, TX 77210-4457

Victor Ganzi
126 Eaast 56th Street, 14th Floor
New York, NY 10022

Robert E Tardif Jr.+
Trustee
Post Office Box 2140
Fort Myers, FL 33902-2140

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Steven J Solomon +
GrayRobinson, PA
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

Robert E Tardif, Attorney for Trustee +
Robert E. Tardif, Jr., P.A.
Post Office Box 2140
Fort Myers, FL 33902-2140

United States Trustee - FTM7/13 +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Robert F Elgidely +
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131-1833

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Marian G Kennady +
Reed Smith LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131-4937

J Steven Wilkes +
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602-3949

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Gregg A Steinman +
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131-5340

Joshua D Rievman +
Dunning Rievman & Davies, LLP
434 West 33rd Street
New York, NY 10001-2601

Fredric S. Newman +
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East, 42nd Street, 28th Floor
New York, NY 10165-3003

Megan Preusker +
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Claire Breen

(u)Gary Ganzi

(u)Victor F. Ganzi


(u)Gary Ganzi and Claire Breen as Attorneys-i

(u)MCP II Jefferson, LLC

(u)Raymond James & Associates, Inc.


(d)Just One More Restaurant Corp.
8955 Fontana del Sol Way, 2nd Floor
Naples, FL 34109-4428

End of Label Matrix
Mailable recipients    39
Bypassed recipients     7
Total                  46

Label Matrix for local noticing
113A-9
Case 9:19-bk-01947-FMD
Middle District of Florida
Ft. Myers
Thu Feb 20 13:10:11 EST 2020

Michele L. Angell
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Bank of America, N.A.
c/o Andrew T. Jenkins, Esq.
Bush Ross, PA
PO Box 3913
Tampa, FL 33601-3913

Bruce E Bozzi, Sr.
Robert A. Schatzman, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Ave., #3200
Miami, FL 33131-2191

David L. Eades
Moore & Van Allen, PLLC
100 North Tryon Street
Suite 4700
Charlotte, NC 28202-4003

Scott Esterbrook
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762

Walter J Ganzi, Jr.
c/o Robert A. Schatzman, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Ave., #3200
Miami, FL 33131-2191

Stephen E. Gruendel
Moore & VanAllen
100 North Tryon St., Ste. 4700
Charlotte, NC 28202-4003

Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 E. 42nd Street
48th Floor
New York, NY 10165-3003

Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

Just One More Restaurant Corp.
Just One More Holding Corp.9:19-bk-01948
Jointly Administered
8955 Fontana Del Sol Way, 2nd Floor
Naples, FL 34109-4428

Marc E Kasowitz
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Sarmad M. Khojasteh
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Raymond James & Associates, Inc.
880 Carillon Parkway
St Petersburg, FL 33716-1100

David S. Rosner
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

SF V CLE Lending, LLC
c/o Reed Smith LLP
1001 Brickell Bay Dr.
Suite 900
Miami, FL 33131-4937

Adam L. Shiff
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Adam L. Shiff, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Alan Levine, Esq.
Cooley LLP
1114 Avenue of the Americas
46th Floor
New York, NY 10036-7703

Atlanta Palm Food Corp.
c/o The Palm Atlanta
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Atlantic City Palm, LLC
c/o The Palm Atlantic City
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Bank of America, N.A.
P.O. Box 448
Location Code SC3-240-03-05
Columbia, SC 29202-0448

Bank of America, National Association
c/o Andrew T Jenkins, Esq
Bush Ross, PA
PO Box 3913
Tampa, FL  33601-3913

Boston Palm Corporation
c/o The Palm Boston
1730 Rhode Island AVe., N.W.
#900
Washington, DC 20036-3113

Bruce E Bozzi, Jr and Walter J Ganzi, Jr
c/o David S Rosner
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr
c/o Robert A Schatzman, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Bruce E Bozzi, Sr
c/o Steve J Solomon, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Bruce E Bozzi, Sr & Walter J Ganzi Jr
c/o Michele L Angell
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr and Walter J Ganzi, Jr
c/o Adam L Shiff
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr and Walter J Ganzi, Jr
c/o Marc E Kasowitz
1633 Broadway
New York, NY 10019-6708

Bruce E Bozzi, Sr and Walter J Ganzi, Jr
c/o Sarmad M Khojasteh
1633 Broadway
New York, NY 10019-6708

Bruce E. Bozzi, Sr.
2161 Gulf of Mexico Drive
Apt. 3B-1
Longboat Key, FL 34228-5230

Charlotte Palm Corporation
c/o The Palm Charlotte
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Chicago Palm, Inc.
c/o The Palm Chicago
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Claire Breen
7 Ryan Street
Syosset, NY 11791-2129

Cooley LLP
Attn:  Alan Levine, Esq.
1114 Avenue of the Americas
16th Floor
New York, NY 10036-7772

Cooley LLP
Attn:  Alan Levine, Esq.
1114 Avenue of the Americas
46th Floor
New York, NY 10036-7703

Cooley LLP
attn: J. Michael Kelly
101 California St., 5th Fl
San Francisco, CA 94111-5800

Coral Gables Palm Restaurant
4425 Ponce de Leon Blvd.
Ste. 140
Miami, FL 33146-1837

(c)CORPORATE CREATIONS
11380 PROSPERITY FARMS RD STE 221
PALM BEACH GARDENS FL  33410-3465

David Rosner, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

David S. Rosner, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019-6708

Denver Palm Corporation
c/o The Palm Denver
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Department of Revenue
PO Box 6668
Tallahassee FL 32314-6668

Estate of Charles Cook
c/o Meridithe Shields
58 Bluestone Court
Kingston, NY 12401-4323

Frederic S. Newman, Esq.
Hoguet Newman Regal & Kenney
10 East 40th Street
35th Floor
New York, NY 10016-0304

Gary Ganzi
74 Valleyfield Street
Lexington, MA 02421-7939

Gary Ganzi and Claire Breen
c/o Eric D. Jacobs, Esq.
 Genovese Joblove & Batista, P.A.
100 N. Tampa Street, Suite 2600
Tampa, FL 33602-5810

Gary Ganzi and Claire Breen
c/o Michael A. Friedman, Esq.
Genovese Joblove & Batista, P.A.
100 N. Tampa Street, Suite 2600
Tampa, FL 33602-5810

Gary Ganzi and Claire Breen
c/o Robert F Elgidely, Esq
Genovese Joblove & Batista, PA
200 East Broward Blv, Suite 1110
Fort Lauderdale, FL 33301-3535

Hoguet Newman Regal & Kenney, LLP
c/o Fredric S. Newman, Esq.
60 E. 42nd Street, 48th Floor
New York, NY 10165-3003

Hoteles Presidente, S.A.
Campos Eliseos 218 - 11th Fl
Polanco, CP 11560
Mexico

Ian Shapiro, Esq.
Cooley LLP
1114 Avenue of the Americas
46th Floor
New York, NY 10036-7703

Ian Shapiro, Esq.
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036-7703

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Just One More Restaurant Cor
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

LA Downtown Palm, LLC
c/o The Palm Los Angeles
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Los Angeles Palm, Inc.
c.o The Los Angeles Palm
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Miami Palm Restaurant Inc.
c/o The Palm Miami
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

NY Department of Finance
P.O. Box 3933
New York, NY 10008-3933

NYC Department of Finance
P.O. Box 3922
New York, NY 10085

NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

NTD Dept. of Health and
Mental Division of Permits
Church Street Station
P.O. Box 4081
New York, NY 10261-4081

NYS Department of Taxation
and Finance
WA Harrington Campus
Albany, NY 12227-0001

Nashville Palm Restaurant LL
c/o The Palm Nashville
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

New York State Department of Taxation &
New York State Tax & Finance Bankruptcy
Bankruptcy Section
P O Box 5300
Albany, NY 12205-0300

Northbrook Palm, LLC
2000 Northbrook Court
Northbrook, IL 60062-1411

PMC d/b/a Hedges Inn
c/o the James Lane Cafe Rest
73 James Lane
East Hampton, NY 11937

PMC d/b/a Huntting Inn
c/o The Palm East Hampton
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Beverly Hills
Restaurant, LLC
1730 Rhode Island Ave., N.W.
Suite 900
Washington, DC 20036-3113

Palm Management Corporation
1730 Rhode Island Ave., N.W.
Ste. 900
Washington, DC 20036-3113

Palm Management Corporation
1730 Rhode Island Avenue, NW
Ste. 900
Washington, DC 20036-3113

Palm New York Downtown LLC
c/o The Palm Tribeca
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Orlando Corporation
c/o The Palm Orlando
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant Puerto Rico
c/o The San Juan Palm Restau
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant of Houston
c/o The Palm Houston
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant of Las Vegas
c/o The Palm Las Vegas
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Restaurant of Philadel
c/o The Palm Philadelphia
1730 Rhode Island Ave., N.W.
Washington, DC 20036-3101

Palm Restaurant, Inc.
c/o The Palm Too
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm Troy Company, LLC
c/o The Troy Palm Restaurant
5600 Crooks Road
Troy, MI 48098-2811

Palm Tysons Too, Inc.
c/o The Palm Tysons Corner
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Palm West Corporation
c/o The Palm West Side
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Robert A. Schatzman, Esq.
GrayRobinson P.A.
333 S.E. 2nd Ave., Ste. 3200
Miami, FL 33131-2191

San Antonio Palm Restaurant
c/o The Palm San Antonio
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

San Diego Palm, LLC
c/o The San Diego Palm Resta
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Steven J. Solomon, Esq.
GrayRobinson P.A.
333 S.E. 2nd Ave., Ste. 3200
Miami, FL 33131-2191

Tampa Palm Restaurant, LLC
c/o The Tampa Palm Restauran
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

The Dallas Palm Restaurant
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

The Washington Palm, Inc.
c/o The Palm Washington DC
1730 Rhode Island Ave., N.W.
#900
Washington, DC 20036-3113

Walter J Ganzi, Jr
c/o Robert A Schatzman, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Walter J Ganzi, Jr
c/o Steve J Solomon, Esq
GrayRobinson, PA
333 SE 2nd Ave, Suite 3200
Miami, FL 33131-2191

Walter J. Ganzi, Jr.
8171 Bay Colony Drive
Apt. 1902
Naples, FL 34108-7567

Benjamin E. Lambers +
Timberlake Annex
501 E. Polk Street, Suite 1200
Tampa, FL 33602-3945

Robert A. Schatzman +
Gray Robinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131-2191

United States Trustee - FTM +
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, FL 33602-3949

Andrew T. Jenkins +
Bush Ross, PA
Post Office Box 3913
Tampa, FL 33601-3913

Robert F Elgidely +
Fox Rothschild LLP
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131-1833

Paul Steven Singerman +
Berger Singerman, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Paul A Avron +
Berger Singerman LLP
One Town Center Road
Suite 301
Boca Raton, FL 33486-1014

Marian G Kennady +
Reed Smith LLP
1001 Brickell Bay Drive, Suite 900
Miami, FL 33131-4937

J Steven Wilkes +
Office of United States Trustee
501 East Polk Street
Tampa, FL 33602-3949

Christopher A Jarvinen +
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131-5319

Gerard A McHale Jr+
McHale PA
1601 Jackson St. Suite 200
Fort Myers, FL 33901-2968

Eric D Jacobs +
Genovese Joblove & Batista, P.A.
100 North Tampa Street, Suite 2600
Tampa, FL 33602-5810

Joshua D Rievman +
Dunning Rievman & Davies, LLP
434 West 33rd Street
New York, NY 10001-2601

Fredric S. Newman +
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165-3003

Julia A May +
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Corporate Creations
11380 Prosperity Farms Road
#221E
Palm Beach Gardens, FL 33410

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Claire Breen

(u)Gary Ganzi

(u)Gary Ganzi and Claire Breen as Attorneys-i

(d)Cooley LLP
Attn: Alan Levine, Esq.
1114 Avenue of the Americas, 46th Floor
New York, NY 10036-7703

(d)Frederic S. Newman, Esq.
Hoguet Newman Regal & Kenney
10 East 40th Street, 35th Fl
New York, NY 10016-0304

(d)Just One More Holding Corp.
8955 Fontana Del Sol Way
2nd Floor
Naples, FL 34109-4428

End of Label Matrix
Mailable recipients    106
Bypassed recipients      6
Total                  112

## ADDITIONAL SERVICE LIST

**Atlanta**
CCSH Atlanta, LLC
c/o Swissotal Atlanta
3391 Peachtree Road, N.E.
Atlanta, GA  30326

**Atlantic City**
Adamar of New Jersey, Inc.
c/o Kravco Company
P.O. Box 1528
King of Prussia, PA  19406

Tropicana Atlantic City Corp.
Brighton Avenue and the Boardwalk
Atlantic City, NJ  08401-6390

**Beverly Hills**
267 North Canon Drive, LLC
Attn:  Peter Strauss
621 N. Beverly Drive
Beverly Hills, CA  90210

Garfield & Hecht, P.C.
Attn:  Ronald Garfield, Esq.
601 E. Hyman Avenue
Aspen, CO  81611

**Boston**
Fort Hill Square 1 Owner, LLC
c/o The Chiofaro Company, Inc.
One International Place, 46th Floor
Boston, MA  02110

Fort Hill Square 1 Owner LLC
c/o Prudential Real Estate Investors
8 Campus Drive, 4th Floor
Parsippany, NJ  07054

DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA  02110
Attn:  William B. Forbush, III

**Charlotte**
The Harris Group of Carolinas, Inc.
d/b/a The Harris Group
Rotunda, Ste. 175
4201 Congress Street
Charlotte, NC  28209
Attn:  John W. Harris

Charles O. DuBose, Esq.
Kennedy Covington Lobdell & Hickman
100 North Tyron Street, Ste. 4200
Charlotte, NC  28202-4006

Phillips Place Partners, LLC
c/o Harris Group Partners – Phillips Place,
LLC
Attn:  J. Patrick Clayton
4725 Piedmont Row Drive, Ste. 800
Charlotte, NC  28210-4284

**Chicago**
SNH Chicago, Inc.
323 East Wacker Drive
Chicago, IL  60601

Andreas T. Meinhold, Senior VP
Swissotel Management Corporation
The Drake Hotel
440 Park Avenue
New York, NY  10022

Arnall Golden & Gregory
2800 One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3400
Attn:  Jeffrey B. Berg, Esq.

CCSH Chicago LLC
c/o Host Hotels & Resorts, Inc.
6903 Rockledge Drive, Ste. 1500
Bethesda, MD 20817
Attn:  Law Dept./Asset Mgmt.

**Denver**
Tabor Center Associates, L.P.
c/o The Yarmouth Group Property
Management, Inc.
P.O. Box 10363
Newark, NJ  07193-0363

The Shops at Tabor Center
1201 – 16th Street, Ste. 120
Denver, CO  80202

EOP-Tabor, L.L.C.
c/o Equity Office Properties
1201 – 16th Street, Ste. 120
Denver, CO  80202
Attn:   Building Manager

Equity Office Properties
Two North Riverside Plaza
Ste. 2200
Chicago, IL  60606
Attn:  Regional Counsel – Denver Region

Urban Retail Properties Company
900 North Michigan Avenue, Ste. 1300
Chicago, IL  60611-1575
Attn:  David Kattar, Exec. VP

CCP/MS SSIII Denver Tabor Center 1
Property Owner LLC
3203 Paysphere Circle
Chicago, IL  60674

SITQ BST-REIT LP
1001, rue du Square-Victoria, bureau C-500
Montreal (Quebec) H2Z 2B5

Callahan Capital Partners
Attn:  Tom Gershman
10 S. Riverside Plaza, Ste. 1250
Chicago, IL  60606

**Houston**
Briargrove Shopping Center Joint Venture
2000 Crawford
Houston, TX  77002

Briargrove Retail, L.P.
c/o Unilev Management Corporation
One Riverway, Ste. 100
Houston, TX  77056

**LA Downtown**
Flower Holdings, LLC
1100 South Flower Street, Ste. 3100
Los Angeles, CA  90015
Attn:  Ted Tanner

Flower Holdings, LLC
1111 South Figueroa Street, Ste. 3100
Los Angeles, CA  90015
Attn:  Ted Fikre

PSP Investment Group, LLC
425 East Pico Boulevard, Ste. 206
Los Angeles, CA  90015
Attn:  Messrs. George and Jake Peykar

PSP Investment Group, LLC
c/o Wall Street Investment Group
425 East Pico Boulevard, Ste. 206
Los Angeles, CA  90015

**Las Vegas**
Forum Developers Limited Partnership
c/o M.S. Management Associates Inc.
One Merchants Plaza
P.O. Box 7033
Indianapolis, IN  46207

Caesars Palace Realty Corp.
1801 Century Park East, Ste. 2600
Los Angeles, CA  90067
Attn:  General Counsel

9594273-1

Forum Shops, LLC
c/o M.S. Management Associates, Inc.
225 West Washington Street
Indianapolis, IN  46204-3438

Caesars Palace Realty
c/o Harrah's Entertainment, Inc.
One Caesars Palace Drive
Las Vegas, NV 89109-8969
Attn:  General Counsel

Forum Shops, LLC
867011 Reliable Parkway
Chicago, IL  60686-0070

**Miami**
The Sand Joint Venture
9560 E. Bay Harbor Drive
Bay Harbor Islands, FL  33154

CSL Sand Leasing, Inc.
88 W. Riverside Drive
Jupiter, FL  33469
Attn:  Alexander M. Lankler, President

Johnson & Wales University
1701 N.E. 127 Street
North Miami, FL  33181
Attn:  Donald M. McGregor, President

BHI Hotel, LLC
2138 Rose Theatre Circle
Olney, MD  20832
Attn:  Samuel M. Spiritos

**Nashville**
Turnberry/Nashville Arena Hotel, LP
c/o 19501 Biscayne Blvd., Ste. 400
Aventura, FL  33180
Attn:  Jeffrey Soffer

Turnberry Development, LLC
19501 Biscayne Blvd., Ste. 400
Aventura, FL  33180
Attn:  Legal Department

**New York - Downtown**
West-Chambers Street Associates, LLC
c/o Jack Resnick & Sons, Inc.
110 East 59th Street, 34th Floor
New York, NY  10022

200 Chambers, LLC
c/o Jack Resnick & Sons, Inc.
110 East 59th Street, 34th Floor
New York, NY  10022

**Orlando**
UFC Hotel Venture
1000 Universal Studios Plaza
Orlando, FL  32819
Attn:  Mr. Thomas Williams

UFC Hotel Venture
6800 Lakewood Plaza Drive
Orlando, FL  32819
Attn:  Director of Administration

Loews Hotels Holding Corporation
667 Madison Avenue, 8th Floor
New York, NY  10021-8087
Attn:  Corporate Secretary

Hughes Hubbard & Reed LLP
201 S. Biscayne Blvd., Ste. 2500
Miami, FL 33131
Attn: William A. Weber, Esq.

**Palm Too**
Katherine Seidner
836 Second Avenue
New York, NY  10017

Mandell Mandell LLP
80-02 Kew Gardens Road, Ste. 606
Kew Gardens, NY  11415
Attn:  Mark, J. Mandell, Esq.

**Palm West**
Resnick Eighth Avenue Associates, LLC
110 East 59th Street
New York, NY  10022

3

AvalonBay Communities, Inc.
Attn: Senior Director, Retail
671 N. Glebe Road, Ste. 800
Arlington, VA 22203

**Philadelphia**
Bellevue Associates
200 South Broad Street, 3rd Floor
Philadelphia, PA 19103
Attn: Ronald Rubin

**San Antonio**
Street Retail San Antonio, LP
c/o Federal Realty Investment Trust
1626 East Jefferson Street
Rockville, MD 20852-4041
Attn: Legal Department

GrayStreet Houston – 229 E. Houston, LLC
P.O. Box 461406
San Antonio, TX 78246-1406

GrayStreet Houston Management, LLC
c/o Kevin Covey, Manager
Caliburn Capital, LLC
4515 San Pedro Avenue
San Antonio, TX 78212

**Palm Management Corporation**
MSC Sand Lake IV, Inc.
c/o Washington Capital Management, Inc.
260 Franklin Street, Ste. 1900
Boston, MA 02110
Attn: Asset Management

Foundry Commercial, LLC
420 S. Orange Avenue, Ste. 950
Orlando, FL 32801
Attn: Property Manager

MSC Sand Lake IV, Inc.
7280 Sand Lake Road, Ste. 150
Orlando, FL 32819

**Tysons Too**
MDM Development Company, LLC
c/o Lerner Corporation, Managing Agent
1150 Huff Court
North Bethesda, MD 20895-1094
Attn: Legal Department

Tye Development Company, LLC
200 Tower Oaks Bl;vd., 8th Floor
Rockville, MD 20852

**Washington**

Metropolitan Life Insurance Company
c/o CPP 1125 DC LLC
c/o Core Plus Properties LLC
One Dock Street, Ste. 408
Stamford, CT 06902
Attn: Mr. James C. B. Millard

Metropolitan Life Insurance Company
c/o BlackRock Realty Advisors, Inc.
300 Campus Drive, 3rd Floor
Florham Park, NJ 07932
Attn: Tower Fund – Asset Manager

Metropolitan Life Insurance Company
c/o BlackRock Realty Advisors, Inc.
300 Campus Drive, 3rd Floor
Florham Park, NJ 07932
Attn: Tower Fund – Counsel

Duane Morris LLP
227 West Monroe Street, Ste. 3400
Chicago, IL 60606
Attn: David B. Allswang, Esq.

9594273-1