**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

In re:

| | |
|---|---|
| JUST ONE MORE RESTAURANT CORP., and JUST ONE MORE HOLDING CORP.,[1] | Case No. 9:19-bk-1947-FMD (Jointly Administered with Case No. 9:19-bk-1948-FMD) |
| | Debtors. Chapter 11 Cases |

_______________________________________/

**MOTION OF THE POTENTIAL DISTRIBUTEES TO COMPEL FINAL DISTRIBUTIONS FROM THE CHAPTER 11 ESTATES PURSUANT TO THE UNIVERSAL SETTLEMENT ORDER**

Interested Parties Gary Ganzi and Claire Ganzi Breen, individually and as Attorneys-in-Fact for the Estate of Charles Cook (collectively, the "Minority Shareholders"), by and through their undersigned counsel, RO Law PLLC ("RO Law" ) and Hoguet Newman Regal & Kenney, LLP ("HNRK"), respectfully move this Court (the "Motion") for entry of an order, substantially in the form to be attached hereto as **Exhibit A** (the "Order"), compelling Just One More Restaurant Corp. ("JOMR") and Just One More Holding Corp. ("JOMH," and together with JOMR, collectively, the "Chapter 11 Debtors"), through Soneet R. Kapila, not in his individual capacity but solely in his capacity as the successor Chief Restructuring Officer of the Chapter 11 Debtors (the "Successor CRO"), to make the final distributions from both Chapter 11 estates to the Minority Shareholders and Victor Ganzi, (the "Proposed Distributees") pursuant to the Universal Settlement Order (defined herein).

[1]

[1]The last four digits of each Chapter 11 Debtor's federal tax identification number are Just One More Restaurant Corp. (5070) and Just One More Holding Corp. (6081). The address of the Debtors is c/o Soneet R. Kapila, KapilaMukamal, LLP, 1000 South Federal Highway, #200, Fort Lauderdale, Florida 33316.

In support of this Motion, the Minority Shareholders respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Chapter 11 Debtors' bankruptcy cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. The legal predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (as amended, the "Local Rules"), and the Universal Settlement Order (defined herein).

## PRELIMINARY STATEMENT

3. These Chapter 11 Cases have been pending more than seven years; the underlying litigation that gave rise to the filing of these bankruptcy cases for twice that long. The Palm Restaurants, the primary asset in the case, were sold to Golden Nugget, LLC ("Golden Nugget") more than six and one-half years ago, on March 10, 2020. As the Court may recall, as part of the negotiations, Golden Nugget extracted a last-minute $5 million purchase price reduction to compensate for inadequate due diligence because it was leery of the restaurants' financials, which is germane to this application.

4. The comprehensive agreement of sale, the Purchase Agreement by and Among Golden Nugget, LLC, as Purchaser and Just One More Restaurant Corp. and Robert E. Tardiff, Jr., as trustee for Bruce E. Bozzi, Sr. and Walter J. Ganzi, Jr. as Sellers, dated February 20, 2020, the execution copy of which is part of JOMR/JOMH D.E. # 313 starting at page 72 (Exhibit C to the Motion to Approve) (the "Purchase Agreement"), afforded Golden Nugget the benefit of the Sellers remaining liable for certain defined pre-closing tax liabilities.

Discussions and Negotiations Regarding Distributions

5. This Honorable Court may recall that, in connection with an earlier interim distribution, it was advised that the parties had agreed to wait for the final income tax statutes of limitations for the 2020 income tax year to run, most in September 2024 and a few stragglers in September 2025, approximately one year ago. Since then, the deadlines of 2024 and 2025 have come and gone, and all relevant statutes of limitations for the 2020 income tax year have run, without a single new claim having been made.

6. Starting after September 2025, Counsel for the Proposed Distributees, the Chapter 11 Debtors, and Golden Nugget began to discuss ways to achieve closure of the Chapter 11 cases. On April 8, 2026, counsel for the Chapter 11 Debtors wrote to all parties that the Successor CRO had received the remaining funds from the two Chapter 7 estates and also forwarded a proposed Motion for Final Distribution.

7. Counsel for the Proposed Distributees, the Chapter 11 Debtors and Golden Nugget then began to negotiate in good faith the terms of the proposed Motion for Final Distribution. Despite efforts by all involved, including a conference call on July 16, 2016, and

negotiations through the good offices of Berger Singerman, counsel to the Chapter 11 Estates, at which all participants agreed that "it is time to close this case", one issue apparently remains.

The Sole Remaining Issue, the Palm Employee Benefit Trust

8. The only issue standing in the way of the final distribution and allowing these cases to be closed is that Golden Nugget posits the hypothetical circumstance in which the Palm Employee Benefit Trust, which was purchased under the Purchase Agreement ***but is not listed as a "Company," as defined by the Purchase Agreement***, may become liable someday for tax as a result of its loss of its tax-exempt status for failure to timely file tax returns in 2017, 2018 and 2019.

9. KapliaMukamal advised counsel to the Minority Shareholders of the loss of tax exempt status in or about February 2025, long after the parties agreed to await the expiration of the 2020 tax year statutes of limitation.

10. Importantly, no audit has been commenced, no assessment has been made, no statute of limitations is running or has yet to run and no tax is due. Yet Golden Nugget asserts a potential liability of the Sellers under the Purchase Agreement, should this hypothetical event ever come to pass.

11. But Golden Nugget's claim that the Sellers may someday be liable to it for any tax that might someday be assessed against the Palm Employee Benefit Trust is entirely misplaced for two reason. Quite simply, under the express and unmistakable terms of the Purchase Agreement, although the Sellers agreed to be liable for ***certain*** pre-closing taxes, their agreement ***did not*** extend to the Palm Employee Benefit Trust. Second, even

if there were to be a tax assessment someday, such tax would be the liability of the trust itself, from trust assets, and not of the trust's owner, Golden Nugget or the Sellers.

The Express Terms of the Purchase Agreement

12. Section 9.3(a) of the Purchase Agreement makes Sellers liable for pre-closing tax liabilities "imposed on the income of the Companies". But the Palm Employee Benefit Trust is not a "Company," as defined by the Purchase Agreement. The Fifth WHEREAS clause defines "Companies." According to the Fifth WHEREAS clause "either or both of the Chapter 7 Debtors own equity interests of each of the entities identified on Annex I attached hereto, (each a "Company" and collectively the "Companies"). (D.E. # 313 at 73.

13. Under the express terms of Purchase Agreement, as agreed between Golden Nugget and the Sellers, the Palm Employee Benefit Trust is not a "Company." Nor was it ever owned by any such "Company." As such, JOMR and JOMH could not be liable to Golden Nugget for any potential liability of the Palm Employee Trust.

Any Liability Would Be Paid from Trust Assets

14. Moreover, contractual language aside, even if a tax were to become due, it would be payable by the trust, through trust assets, and accordingly, none of the Sellers could be liable for them.

15. Counsel for the Proposed Distributees have implored counsel for Golden Nugget to present support for their hypothetical claim. None has been provided, and we do not believe that any exists.

Allowing the Distribution to the Proposed Distributees Would be the Equitable Result

16. Nor would this be an inequitable result. As noted, Golden Nugget, represented by experienced and highly capable counsel, negotiated this agreement at arm's length and demanded and received a $5 million price reduction on the eve of closing precisely because it was unsure about the restaurants' financial record keeping. And a last-minute Amendment was signed shortly before the approval hearing. For its part, Just One More Restaurant did not even have operations or employees after 2014 and had nothing to sell to Golden Nugget but the Palm IP.

17. It was not the Minority Shareholders that failed to timely file the tax returns in question.

18. As agreed by all counsel, it is time for this case to end. Accordingly, the Pthe Minority Shareholders respectfully request that this Honorable Court enter an Order of Final Distribution in the attached form. Alternatively, we respectfully request that a status conference be scheduled to consider this matter.

## BACKGROUND

### A. The Chapter 11 Debtors.

19. On March 7, 2019 (the "Chapter 11 Petition Date"), each of the Chapter 11 Debtors commenced their cases by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (collectively, the "Chapter 11 Cases").[2]

[1]

[2] Hereinafter, the docket of the jointly-administered cases of the Chapter 11 Debtors is referred to as "JOMR/JOMH, Doc. __".

20. On April 16, 2019, the Court entered an order authorizing the Chapter 11 Debtors to appoint Gerard A. McHale, Jr. as the original Chief Restructuring Officer (the "Original CRO") of each of the Chapter 11 Debtors [JOMR/JOMH, DE #139].

21. On May 13, 2019, the United States Trustee filed a notice with the Court indicating that the United States Trustee would not appoint a committee of unsecured creditors.

22. On December 20, 2024, the Court approved the employment of Soneet R. Kapila as the Successor CRO for the Chapter 11 Debtors pursuant to its order (Doc. 832) (the "Successor CRO Approval Order"). The Original CRO, Berger Singerman LLP (counsel for the Chapter 11 Debtors), KapilaMukamal, LLP (tax accountants to the Chapter 11 Debtors), and the Successor CRO are collectively referred to herein as the "Chapter 11 Debtors' Professionals."

**B. The Purchase and the Universal Settlement Order.**

23. On March 10, 2020, the Court entered an order (the "Purchase Order," JOMR/JOMH Doc. 346) approving the sale of the interests of JOMR and Bruce E. Bozzi, Sr. ("Bozzi") and Walter J. Ganzi, Jr. ("Ganzi," and together with Bozzi, collectively, the "Chapter 7 Debtors") in The Palm restaurant group to Golden Nugget, LLC, a Nevada limited liability company (the "Purchaser"), pursuant to the Purchase Agreement dated February 20, 2020 as amended by the First Amendment dated March 9, 2020 (the "Purchase Agreement"). The sellers under the Purchase Agreement were JOMR and Robert E. Tardif Jr., as Trustee (the "Trustee") of the Chapter 7 estates.

24. On July 14, 2020, the Court entered an order granting the Universal Settlement Motion (filed June 6, 2020, JOMR/JOMH, Doc. 394) and approving the Universal Settlement

Agreement [JOMR/JOMH, Doc. 417] (the "Universal Settlement Order"). Final distributions from the Chapter 11 estates are governed by paragraphs 9, 13, and 14 of the Universal Settlement Order.

## C. Prior Interim Distributions.

25. This Court has previously approved four interim distributions from the Chapter 11 estates, totaling $16,560,482.98, including distributions to HNRK (in its capacity as counsel for the Minority Shareholders), the Minority Shareholders, and Victor F. Ganzi. The Court has previously directed the Chapter 11 estates to make distributions on motion of the Minority Shareholders, including pursuant to the First Interim Distribution Order (JOMR/JOMH Doc. 467) and the Second Interim Distribution Order (JOMR/JOMHDoc. 535).

## D. The Trustee's Final Reports.

26. On or about January 26, 2026, the Trustee filed Trustee's Final Reports ("TFRs") in each Chapter 7 case (Bozzi, Doc. 664; Ganzi, Doc.. 585), reflecting proposed final distributions from the Chapter 7 estates to the Chapter 11 Debtors totaling $1,769,737.57 (JOMR to receive $1,014,492.07 from the Bozzi estate and $386,921.90 from the Ganzi estate; JOMH to receive $133,739.91 from the Bozzi estate and $234,583.69 from the Ganzi estate).

27. The Notice of Trustee's Final Report set an objection deadline of February 17, 2026. No objections to the TFRs were filed. The condition precedent to the final distributions—approval of the TFRs and receipt of the Chapter 7 distributions—has been satisfied.

**E. <u>No Remaining Creditors and Sufficient Cash on Hand.</u>**

28. Other than the current and future accrued and unpaid professional fees of the Chapter 11 Debtors' Professionals (the Successor CRO, Berger Singerman LLP, and KapilaMukamal, LLP), there are no other remaining claims by any creditor against either of the Chapter 11 Debtors. We anticipate that Berger Singerman LLP and KapilaMukamal, LLP will file final fee applications on negative notice. The Successor CRO is paid monthly pursuant to prior court orders.

29. Cash on hand as of August 31, 2026 is **$1,672,657.82** in the JOMR case (JOMR/JOMH D.E. 913) and **$464,801.88** in the JOMH case (JOMR/JOMH D.E. 914), more than sufficient to make the final distributions after payment of professional fees, the U.S. Trustee quarterly fees, and a closing reserve. No other party has a valid claim to the money remaining in either Chapter 11 estate.

## ARGUMENT

### The Court Should Compel the Final Distributions

30. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This broad grant of authority affords the Court "considerable discretion in administering" these Chapter 11 Cases. *See In re City of Detroit, Michigan*, 519 B.R. 673, 679 (Bankr. E.D. Mich. 2014). The Court also has the inherent authority to enforce and implement its own orders, including the Universal Settlement Order.

31. The Minority Shareholders and Victor Ganzi are entitled to the final distributions from both Chapter 11 estates under paragraphs 9, 13, and 14 of the Universal Settlement Order. All conditions precedent to the final distributions have been satisfied or will imminently be satisfied: (a) there are no remaining creditors of either Chapter 11 estate (other than the Chapter 11 Debtors' Professionals, whose fees will be satisfied prior to distribution); (b) the Chapter 11 estates hold more than sufficient cash on hand to make the final distributions after paying professional fees, U.S. Trustee quarterly fees, and establishing a closing reserve; and (c) the final distributions are among the last acts required to complete the liquidation and administration of the Chapter 11 estates.

32. With respect to the JOMH estate, after the payment of administrative expense claims, 100% of the final distribution should be paid to the Minority Shareholders, as there are no remaining creditors and no other party has any claim to the funds in that estate under the Universal Settlement Order. Significantly, JOMH was not a Seller, had no physical or

intellectual property at the time of the sale, never had any employees at any time in decades-long life, and Golden Nugget could have no claim against it.

33. With respect to the JOMR estate, the same basis applies: there are no remaining creditors and no other party has any legitimate claim to the funds in that estate. After the payment of administrative expense claims, the final distribution from the JOMR estate should be paid to the Minority Shareholders (86%) and Victor F. Ganzi (14%) in accordance with the Universal Settlement Order.

34. This Court has previously granted the Minority Shareholders' motions to direct distributions from the Chapter 11 estates on four prior occasions. There is no basis to withhold or further delay the final distributions now that all conditions have been met.

**GOLDEN NUGGET'S CONCERN ABOUT THE PALM EMPLOYEE BENEFIT TRUST DOES NOT IMPEDE THE FINAL DISTRIBUTIONS**

35. The Purchaser, Golden Nugget, has raised a concern that no tax returns were timely filed for the Palm Employee Benefit Trust for 2017-2019 and that the Trust has lost its tax-exempt status. But this concern does not give rise to any claim against the Chapter 11 Estates and provides no basis to withhold, reserve against, or delay the final distributions.

36. Quite simply, the Palm Employee Benefit Trust is not one of the "Companies" listed on Annex I, nor was it ever owned by any such "Company" as defined by the Purchase Agreement. Because Sellers are responsible only for income tax for any of the "Companies" listed on Annex I, JOMR cannot be liable for any taxes that could be, theoretically, someday imposed.

37. JOMH is not even a Seller under the Purchase Agreement, owned nothing at the time of the Chapter 11s and cannot have any liability here. The Purchaser's concern simply does not give rise to any claim against either Chapter 11 estate.

38. Second, even if any tax were ever assessed against the Palm Employee Benefit Trust for its failure to file returns or any loss of tax-exempt status, only the Trust itself would be liable for such tax—not the Chapter 11 Debtors, their estates, the Minority Shareholders or Victor Ganzi. Non-Debtor the Palm Employee Benefit Trust is a separate legal entity, and any tax liability arising from the Trust's own failure to file returns falls on the Trust assets themselves.

39. Federal courts and IRS guidance consistently confirm that the trust itself must file the returns and pays any non-exempt taxes from its own assets. The IRS Code and IRS Manuel are clear, and federal courts are in alignment supporting the plain language of the Code and Manuel.

40. The IRS Internal Revenue Manual, which is the internal operations manual for IRS employees, confirms that the trust is responsible for filing the tax returns and for paying any non-exempt taxes, with unmistakable clarity. IRM 4.70.12.3.8.6 states:

> (6) Once a plan is no longer qualified under IRC § 401(a), realized income earned by the trust becomes taxable.
> (a.) the *trust* must file a Form 1041 for those years during which the plan is disqualified and the statute of limitations is open.
> (b.) The Form 1041 is filed on *behalf of the trust by the trustee*.
> (c.) The *trust* is responsible for *paying the tax*.
> (d) The trustee is responsible for making sure that the Form 1041 is filed and the taxes are paid.

IRM 4.70.12.3.8.6 (emphasis added). It cannot be disputed that under the IRS Manuel the trust and only the trust is liable for the payment of any non-exempt taxes. JOMR, which

stopped operating after 2014, did not even have employees during the years in concern, never owned the Palm Employee Benefit Trust and cannot be liable for payment of such taxes, nor is Golden Nugget or any other party to this motion.

41. The analysis is the same under the Internal Revenue Code. Under IRC § 6012(b)(4), returns of trusts must be made by the fiduciary, in this case on the trustees of the Palm Employee Benefit Trust -- discharged Chapter 7 Debtors or a third individual -- not JOMR or Golden Nugget. See 26 U.S.C.A. § 6012. The trust's taxable income is computed in the same manner as an individual's, and the trust pays tax at the trust tax rates under IRC § 1(j)(2)(E), 26 U.S.C.A. § 1. The practical effect is that the tax is paid from trust assets — reducing the corpus available to pay benefits to participants.

42. The federal courts are uniform in confirming the statutory and regulatory provisions. The Court of Claims gave effect to this doctrine in *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Tr. v. United States*, 20 Cl. Ct. 674 (1990). Faced with the question of whether a Voluntary Employees' Beneficiary Association ("VEBA") Trust was entitled to a refund of tax that the trust itself paid, the United States Court of Claims, held that the trust was not tax-exempt under IRC § 501(c)(9) and therefore denied the *trust's* claim for a refund of income taxes it had paid after the IRS denied its application for tax-exempt VEBA status. The Federal Circuit affirmed, holding that the Plan's benefits did not qualify as permissible VEBA benefits — and that the trust, *which had paid the income taxes at issue from its own assets* -- was not entitled to their return. *Lima Surgical Assocs., Inc., Voluntary Employees' Beneficiary Ass'n Plan Tr., Huntington Nat. Bank v. United States*, 944 F.2d 885 (Fed. Cir. 1991). *See also, Sherwin-Williams Co. v. United States*, 403 F.3d 793 (6th Cir. 2005) (a VEBA organized as a trust

was itself the taxpayer, paid the tax and brought action seeking refund);. *Marprowear Profit-Sharing Tr. v. Comm'r of Internal Revenue*, 74 T.C. 1086 (1980) (Tax Court) (action brought by Trust seeking to itself pay lower tax rate).

43. Accordingly, the Purchaser's concern regarding the Palm Employee Benefit Trust is misplaced. Not only is the Trust clearly not an entity to which Sellers' obligation to pay taxes attaches, but even if tax were to be someday imposed, it would be due from trust assets. In either case, no claim would arise against the JOMR or JOMH estates, and there should be no impediment to final distribution, nor any reserve or holdback thereto (aside from professional expenses and US Trustee fees) from the final distributions.

**RELIEF REQUESTED**

**WHEREFORE**, the Minority Shareholders respectfully request that this Court enter the Order:

(a) Compelling the Chapter 11 Debtors, through the Successor CRO, to make the final distributions from both Chapter 11 estates pursuant to the terms of the Universal Settlement Order;

(b) Directing that after payment of all administrative expenses, final distribution from the JOMH estate be paid 100% to the Minority Shareholders, there being no remaining creditors and no other party having a claim to the funds;

(c) Directing that after payment of all administrative expenses, the final distribution from the JOMR estate be paid 86% to the Minority Shareholders and 14% to

Victor F. Ganzi, in accordance with the Universal Settlement Order, there being no remaining creditors and no other party having a claim to the funds;

(d) Determining that the Purchaser's concern regarding the Palm Employee Benefit Trust does not give rise to any claim against the Chapter 11 estates and does not warrant any reserve, holdback, or delay of the final distributions; and

(e) Granting such other and further relief as this Court deems just and proper.

Dated: New York, NY
September 25, 2026

Respectfully submitted,

Joshua D. Rievman (*pro hac vice*)

____________________________
RO LAW PLLC
1250 Broadway, FL 36
New York, NY 10001
917-922-7988

Fredric S. Newman (*pro hac vice*)

s/Fredric S. Newman
HOGUET NEWMAN REGAL & KENNEY, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
212-689-8808

*Counsel for Interested Parties Minority Shareholders*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 25, 2026, a true and correct copy of the foregoing Motion was served via CM/ECF on all parties entitled to notice and/or service in the above-captioned cases, including the following:

Soneet R. Kapila, Successor CRO, c/o KapilaMukamal, LLP

Berger Singerman LLP, counsel for the Chapter 11 Debtors

Golden Nugget, LLC (the Purchaser)

Office of the United States Trustee

__________________________

Joshua D. Rievman